As they did. We then walked in Room 3 found a few more product spills in aisles 3AN, 3LN and 3FA noted them down, towards the end of the tour in room 3 by end of the rack aisle is a drain between aisles LN &KN there the FDA found a couple droppings. During the tour they asked about lizards, Bats and other pest that we may have had here or do have. I said last year we did have Bats outside here and one inside that our pest control took care of. But we have not had any since Kenco has been here. It sounded a little far fetched, that even they thought was.

We then went back to David's office for exit interview I asked Len to join us. We had just started when I was called by Mike that I was needed by OSHA.

The FDA & State said that was fine. So I left them with Len, The OSHA inspector asked me several questions about the building. Asked how long it was and how wide it is. I told him 960 X 528' He then asked more questions, about Lock out tag out. Changing light bulbs, How our Generator power back up works and about

A power issue we had earlier in the year. I answered him about all the questions he had. I asked him the I needed to get back the other inspectors that were

Waiting for me. He said to stay unless you want fines. I said no Sir and sat down. He asked more about the last power failure. Ask if the place went black. I said

Not to my knowledge as I came out for that issue. I then stated that our IT guy Dustin was here during that time when the power went out and Dustin confirmed that we did not loose all of the lights. He then asked him Questions about that evening and about what he did and how the generator works and our UPS station. Dustin answered his questions then he said he was good on that. He then asked about records from who changed the light bulbs and pest control invoices. I gave him record that Girard Electric had changed a light and ballast here recently and a copy of Orkin & River Valley last Invoice. That he wanted.

He also stated if I did not provide this he would go back to work inspecting the building and possible fines along with. I gave the man the three documents.

And he was happy and asked Dustin that he needed to be walked down with Management and himself. By this time it was close to 2:00PM I checked on The state and FDA. Len said they did not ask any questions and left at about 1:20 or so. We then Walked the OSHA inspector out and then he talked with Dustin.

I asked him what he said, just asked if we pressured him at all.

Issues with OSHA are;

1) He is looking at to see if more exits in room 1 are needed. He said the west wall maybe too far with only two exits. He will let us know.

If that is so, Room three will need to be done also, This would be an easy fix. Use one rail door and the center door in room Three, construct exit doorways

From overhead doors. ( He did not look at Room 3 Wall)

2) Confined space he wants a copy of our site SOP that we do not do confined spare or policy we may have that we use.

3) Signage on Injector pump in room 1 labeling confined space.

He will be mailing that out and from the mailing date he said we have 15 days to act. Mike has his info.

I will be on Vacation next week. Mike and David should be able to take care of these issues. Orkin knows I will be gone and will be seeing Mike or David.

I had them install more traps in all these locations where these droppings were found.

If you have questions you could phone me but I may not be available due to traveling out of state.

Regards,

**William Schwerin**
Facility Maintenance, Quality Engineer
1125 Sycamore St. • Manteno, IL 60950
Office: 815-468-4462 • Mobile: 815-954-8570



CONFIDENTIAL

DEF001355

William.Schwerin@Kencogroup.com





*The information contained in this electronic communication and any accompanying document is confidential and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this communication and all copies of it, including all attachments.*



DEF001356

P.O. Box 1607
2001 Riverside Drive (37406)
Chattanooga, TN 37401

Phone 423-622-1113
Fax 423-643-3325
www.kencogroup.com



**KENCO**

April 2, 2013

LEONARD SZPLETT
3421 W. 1500 N. Rd
Kankakee, IL 60901

Dear Leonard:

It is a pleasure to confirm our offer of employment to you. You will be employed at our KENCO Mars facility in Manteno, IL as the Office Manager working on the 1st Shift.

Below are the details of the offer:

- Your start date is April 21, 2013.
- Your starting base salary will be $2750.00, paid semi-monthly.
- You will be eligible for a bonus of up to $1,000.00 per year, based on performance to defined goals and objectives. This amount will be prorated for the remainder of 2013.
- You are eligible for a transition bonus of $1300.00, to be paid out in $433.33 increments following your 30th, 60th and 90th day of employment. If your employment ends within 90 days, the increments that the transition bonus is paid will not be paid in a prorated amount.
- For the remainder of 2013, you will have 10 vacation days available to you. Beginning in 2014, you will have 15 vacation days available to you annually.

Kenco will be paying for temporary health coverage during the first 90 days of employment through Starbridge. You will have 30 days to elect the coverage level, but regardless of when you enroll, both the coverage and the premium are retroactive to your start date. Enrollment in Starbridge will take place during your new hire orientation. Your temporary health care coverage will end on your 90th day of employment.

On your 91st day of employment you will be eligible for the following company benefits: medical, prescription drug coverage, dental, vision, short and long-term disability coverage, group life insurance, long term care coverage, employer-matched 401(k) plan. On your start date you will be eligible for vacation and paid holidays.

The offer of employment is contingent upon the completion of a pre-employment drug screen analysis and criminal background check. We reserve the right to withdraw this offer if the drug screen analysis result or the background check is unfavorable. Your employment with Kenco is at-will and either party can terminate the relationship at any time, with or without cause and with or without notice.

**Exhibit 20**



Leonard, we are excited about you joining us at Kenco. Please indicate your acceptance of this offer by signing at the bottom of the letter. Please retain a copy for your records.

Sincerely,

*Eddy Poguil* 4-2-13

Paula Hise
VP, Operations

Offer Accepted:

*Leonard Szplett*        4-2-13
LEONARD  SZPLETT              Date

_____        _____
Director of Recruiting and Development              Date



| Document Number:<br>**CP-HR-1002** | Title:<br>**Exempt Hiring Procedure** | |
|---|---|---|
| Revision Date:<br>**10/30/14** | Revision #:<br>**01** | Effective Date:<br>**11/15/14** |

| Approval: Author, Date | |
|---|---|
| Marti Tanova  10 - 30 - 14 | |
| Approval: QC, Date | Approval: Author Group, Date |
| aubry 10.30.14 | Eddy Rquits 10-31-14 |

**PURPOSE**

This document defines Kenco's procedure for posting, recruiting and filling exempt-level positions.

**SCOPE**

This procedure applies to all Kenco facilities that hire exempt-level employees. This procedure does not apply to the hiring of non-exempt employees.

**DEFINITIONS**

N/A

**PROCEDURE**

1. **Roles and Responsibilities**

   a. **Executive Management** – perform approval authority duties for job openings and responsible for nominating candidates for Vice President levels and above.

   b. **CFO** – performs approval authority duties as described in this procedure.

   c. **Kenco Management Services (KMS) – Director of Recruiting and Development** – performs approval authority duties throughout the exempt hiring process and responsible for the overall implementation and enforcement of this policy for the company.

   d. **KMS – Human Resources (HR) Recruiting Assistant** – performs duties outlined in this procedure to assure sites are notified of exempt job openings and that the exempt hiring process is followed through successful placement of a candidate.

   e. **KMS – Human Resources Employee Relations (ER) Administrative Assistant** – enters all exempt level background investigations into the company approved vendor's system.

   f. **EmployBridge Search (EBS) Recruiter** – provides third party recruiting services.

   g. **Hiring Manager** – person responsible for hiring at the site and responsible for following the exempt hiring process outlined in this procedure.

   h. **Site Human Resources (HR) Administrator** – responsible for posting all internal openings at the site, scheduling interviews when necessary, and arranging pre-employment drug screens. In Canada, no drug screens will be performed.

   i. **Site Management** – responsible for the overall implementation and enforcement of this policy at their assigned site(s). Performs duties as described in this procedure.

**Exhibit 21**

j. **All Kenco Employees** – abide by the procedures outlined when applying for an exempt level job posting.

2. The KMS-HR Recruiting Assistant is responsible for creating all exempt-level job postings.

3. Exempt employees must have twelve (12) months tenure in their current position to be considered for positions up to and including the Director level. Exceptions must be approved by the Group President or Senior Vice President and the Director of Recruiting and Development. Each employee's record will be reviewed for any disciplinary and attendance occurrences. Employee files must be free of any disciplinary action for six (6) months in order to be considered for new postings.

4. VP level and above positions will not be posted through the internal process. Those positions will be filled through nominations by VPs or above to be submitted to the Group President and CFO for final approval.

5. Non-exempt employees applying for an exempt level position must have six (6) months tenure in their current position. Each employee's record will be reviewed for any disciplinary and attendance occurrences. Employee files must be free of any disciplinary action for six (6) months in order to be considered for new postings.

6. All employees are required to notify their direct supervisor prior to applying for any exempt position. Employees may apply for one (1) open position at a time.

    a. If employees are interested in multiple openings, they must select only one (1).

    b. If an internal applicant is interested in a new posting, but has already applied for a different position, the applicant must notify the HR Recruiting Assistant as soon as possible in order to be removed from the first candidate pool. The applicant should then apply for the new posting per normal procedure through Kenco Connection.

    c. Immediately following receipt of an internal application, the HR Recruiting Assistant will send an email to the supervisor of the applicant to ensure he/she is aware that the employee applied for an internal job posting.

7. Posting Process

    a. The Hiring Manager will complete form *CP-HR-6.2.2.013-1 Exempt Job Posting Requisition Form*, obtain the required signatures, and submit the completed form along with a current job description to the HR Recruiting Assistant. Postings for both replacement and newly created positions must be approved by the Hiring Manager's immediate Supervisor/Manager, the Director or VP of Operations, and the CFO.
        i. All exempt job postings will be posted by the 2nd business day after the HR Recruiting Assistant receives the required documents.
        ii. For example: Job posting requests received by 5:00 p.m. on Monday will be posted by 5:00 p.m. on Wednesday of the same week; Job posting requests received by 5:00 p.m. on Wednesday will be posted by 5:00 p.m. on Friday of the same week.

    b. Internal recruiting methods include postings on KencoConnection and site HR communication boards.
        i. Internal job postings will remain posted for fourteen (14) consecutive calendar days.
        ii. Site HR Administrators must post internal postings on site communication boards within 24 hours of internal communication.
        iii. Positions that are posted internally only, Hiring Managers/Supervisors and/or Site HR Advocates are responsible for the hiring process, including screening resumes, scheduling all interviews, and communicating with applicants until the position is filled.

**KENCO**

| Document Number: | Rev # | Title: |
|---|---|---|
| CP-HR-1002 | 01 | Exempt Hiring Procedure |

**NOTE: PLXSG assists with internal postings only when the position is posted externally as well.**

   c. External recruiting methods include postings on Kenco's public website and recruiting services provided by ProLogistix Search Group (PLXSG). External postings will remain open until the position is filled.

   d. The Hiring Manager will be contacted by the EBS Recruiter to schedule a job order call (JOC) within 24 hours of receiving a new job order from the HR Recruiting Assistant. The Kenco Hiring Manager must schedule the JOC within 24 hours of the opening of the order. PLXSG will not begin the recruitment process until the JOC has taken place.

8. Screening Process

   a. The HR Recruiting Assistant will screen the resumes of all internal applicants received during the fourteen (14) day posting period.
      i. The resumes of qualified internal applicants will be forwarded to the EBS Recruiter for additional screening.
      ii. All internal applicants who do not meet the job requirements at this step will be notified via email by the HR Recruiting Assistant.

   b. The PLXSG Recruiter will present three (3) to five (5) prescreened external candidates and any qualified internal candidates for the Hiring Manager's review within five (5) business days of the JOC.

   c. If the resumes submitted by the PLXSG Recruiter are unsatisfactory, the Hiring Manager must provide feedback to both the PLXSG Recruiter and the Director of Recruiting and Development within 24 hours. The PLXSG Recruiter will then work to supply additional candidates.

   d. At this time, if any internal candidates are unsatisfactory, the Hiring Manager should contact the General Manager at the site of each internal applicant to offer feedback on why they were not selected. The General Manager should then schedule a meeting with the internal applicant and his/her direct supervisor to provide appropriate feedback on career development. After this conversation has taken place, a notification email must be sent by the General Manager to Corporate HR at jobs@kencogroup.com as an accountability measure for appropriate follow up with all internal applicants. The General Manager must copy the internal applicant and his/her direct supervisor on this email.

   e. If internal applicants are selected to move forward, their direct supervisors must be notified at this step and throughout the rest of the application process.

9. Interviewing Process

   a. The PLXSG Recruiter will provide selected external applicants with a copy of *CP-HR-1002-2 Kenco Non-Driver Application* and will direct each applicant to forward the documents to the HR Recruiting Assistant prior to interview.

   **b.** The Hiring Manager is responsible for contacting the HR Recruiting Assistant and requesting background checks for final candidates. The HR Recruiting Assistant will give applications to the ER Administrative Assistant and will ensure each background check is processed. See *CP-HR-1026 Background Investigation Program* for further instructions.
      **i. Successful completion of a background check must occur before a candidate is asked to travel for an interview. This will eliminate the possibility of incurring travel expenses on a candidate who does not pass our background**

**KENCO**

| Document Number: | Rev # | Title: |
|---|---|---|
| CP-HR-1002 | 01 | Exempt Hiring Procedure |

       **screening process.**

    ii. **In Canada, background checks may only be performed after a written job offer has been extended. No drug screens will be allowed, per the Employment Standards Act.**

c. At the Hiring Manager's request, the PLXSG Recruiter will schedule a Predictive Index Test for each of the interview candidates within two (2) days of candidate selection. The results of this test will be provided to the Hiring Manager for additional insight.

d. It is recommended that each candidate be interviewed by at least four (4) of the approved interviewers listed in Attachment A; however, it is required to have a minimum of two (2) interviewers.

e. The initial interview, by telephone or in person, will be conducted within seven (7) business days of candidate submittal by the PLXSG Recruiter.

f. The Site Manager, PLXSG Recruiter, and Site HR Administrator will coordinate to schedule interviews for all site positions. At the Hiring Manager's request, the PLXSG Recruiter will schedule in-person interviews with all internal and external candidates.

g. Each interviewer must complete form *CP-HR-1002-5 Exempt Candidate Evaluation Form* immediately after the interview and forward to the Hiring Manager within one (1) business day of the interview.

h. The Hiring Manager must utilize these forms to aid in making an informed decision on each candidate. The Hiring Manager must keep a copy of each form, either electronically or manually, to be filed with each job posting. This can be handled by the Site HR Administrator, if necessary.

10. Candidate Selection

    a. Pending successful completion of the background check (external candidates only, except in Canada), the Hiring Manager will complete *CP-HR-1002-4 Offer Letter Summary Form* and send it to the HR Recruiting Assistant.

       i. If an internal applicant is selected, the Hiring Manager should contact the applicant's direct supervisor to negotiate a start date.

       ii. If a relocation allowance is requested, the Hiring Manager will include the relocation allowance amount and the date that the funds are needed for the new hire/transfer on the Offer Letter Summary Form. The form is then forwarded to their Vice President (VP) for approval; if the Hiring Manager is a VP, he/she can approve the relocation request provided it does not exceed the relocation allowance maximum.

          1. If the VP deems the relocation amount acceptable, he/she will sign or approve via email the *Offer Letter Summary Form* and forward it to the HR Recruiting Assistant.

          2. If the VP deems the relocation amount unacceptable, he/she will contact the Hiring Manager to discuss the situation.

       iii. Maximum relocation allowance amounts by job category and relocation distance have been provided to senior management. If the VP wishes to offer a relocation allowance exceeding the maximum amount for the job category and distance, he/she must obtain approval via email from the President of the appropriate Kenco LLC as well as the President – KMS.

          1. If both Presidents deem the relocation amount acceptable, they will sign or approve via email the *Offer Letter Summary Form* and forward it to the HR Recruiting Assistant.

| Document Number: | Rev # | Title: |
|---|---|---|
| CP-HR-1002 | 01 | Exempt Hiring Procedure |

    2. If either President deems the relocation amount unacceptable, he/she will contact the VP to discuss the situation.

  iv. Relocation allowances will be provided as a lump sum amount to facilitate a move and are designed to offset various costs that will be incurred in the relocation process.

    1. In the United States, the lump sum payment is considered taxable income and will be treated as such.

      a. The relocation allowance will be paid **Net** of income tax, social security tax, and Medicare tax.

    2. In Canada, the lump sum payment is not considered taxable.

      a. Consult the Employment Standards Act for specific expenses that are considered not taxable when relocating for employment purposes.

    3. The allowance should be used to cover the following costs, including, but not limited to:

      a. Transportation, lodging, meals for house hunting and temporary living expenses

      b. Lease-break expenses and new-lease expenses

      c. Transportation of household goods and vehicles

      d. Miscellaneous expenses associated with relocation

        i. Utility and cable connection

        ii. Driver's License fee

        iii. Vehicle registration, etc.

    4. The employee must remain employed with Kenco on a regular, full-time basis for at least one year after their hire or transfer date.

      a. If the employee resigns or his/her employment is terminated for cause prior to the one year period referenced above, the employee will be required to repay the relocation amount on a prorated basis.

b. Pending successful completion of the background check (except in Canada), the HR Recruiting Assistant prepares the Offer Letter and emails to the Hiring Manager including the *Relocation Expense Repayment Agreement* (if applicable). The Hiring Manager will sign and extend the finalized Offer Letter to the selected candidate.

  i. If the offer is accepted, the Hiring Manager or Site HR Administrator will arrange for a pre-employment drug screen and return the signed Offer Letter (including *Relocation Expense Repayment Agreement* when applicable) to the HR Recruiting Assistant immediately. If all criteria in *CP-HR-1025 Drug Screen Procedure* are not met, the Hiring Manager will rescind the offer and the candidate's hiring process is terminated (external hires only).

    1. In Canada, no drug screening will be allowed, per the Employment Standards Act.

    2. In Canada, a background check may be requested after the written offer of employment is accepted.

  ii. If the prospective employee requests a modification to the offer, the Hiring Manager will discuss with the approving VP and if approved, will repeat Section 4.4.1.

  iii. If the offer is declined, the Hiring Manager will repeat Section 4.4 above for the second selected candidate. If no alternate candidate is available, the EBS Recruiter will work to provide a new selection of candidates.

c. Upon receipt of the signed Offer Letter and Relocation Expense Repayment Agreement, the HR Recruiting Assistant will obtain the final approval of the Director of Recruiting and Development.

  i. Payroll will not process the Offer Letter without the signature of the prospective/transfer employee and the Director of Recruiting and Development on

the Offer Letter and the Relocation Expense Repayment Agreement. If the Director of Recruiting and Development is not available to sign the agreement, an email approval from the Director of Recruiting and Development will be sufficient.

   d. The HR Recruiting Assistant will forward the signed Offer Letter to the appropriate KMS-HR Payroll Supervisor via a flagged email.
      i. The Payroll Supervisor will generate the check with the appropriate withholding and forward it to the employee or will process with the employee's first payroll direct deposit.

11. All new employees must complete their part of the new hire paperwork through the HRIS Onboarding Program before end of business on their first day of work with Kenco.
   a. In Canada, all new hire paperwork must be completed by end of business on the first day of work.

12. All employer-related new hire paperwork must be completed by the Site HR Administrator through the HRIS Onboarding Program within the first three (3) days of employment.

13. External candidates who are not extended an offer will be notified by the PLXSG Recruiter.

14. Internal candidates who are not extended an offer should be notified as soon as possible; however, the maximum timeframe for internal notification is 5 business days from the time the position is filled.
   a. The Hiring Manager should contact the General Manager at the site of each internal applicant to offer feedback on why they were not selected. The General Manager should then schedule a meeting with the internal applicant and his/her direct supervisor to provide appropriate feedback on career development. After this conversation has taken place, a notification email must be sent by the General Manager to Corporate HR at jobs@kencogroup.com as an accountability measure for appropriate follow up with all internal applicants. The General Manager must copy the internal applicant and his/her direct supervisor on this email.

### REFERENCES

*CP-HR-1002-1 Exempt Job Posting Requisition Form*
*CP-HR-1002-2 Kenco Non-Driver Application*
*CP-HR-1002-4 Offer Letter Summary Form*
*CP-HR-1002-5 Exempt Candidate Evaluation Form*
*CP-HR-1025 Drug Screen Procedure*
*CP-HR-1026 Background Investigation Program*

### HISTORY

| Revision Number | Date | Description of Revision |
|---|---|---|
| 00 | 02/25/14 | • This document replaced CP-HR-6.2.2.013 revision 5<br>• Added information to 3 and 5 about attendance and disciplinary action. Changed EBS Recruiting to ProLogistix Search Group (PLXSG). Changed template. |
| 01 | 10/30/14 | • Changed reference numbers throughout document. |

# CP-HR-1002 Attachment A:
## Approved Interviewers by Position

### Kenco Project Manager
1. VP of Quality/Best Practices
2. Director of Quality/Best Practices
3. Quality/Best Practices Engineer
4. Director of HR
5. Manager of HR
6. VP of Operations
7. Director of Operations

### Kenco Engineer
1. VP of Quality/Best Practices
2. Director of Quality/Best Practices
3. Quality/Best Practices Engineer
4. Director of HR
5. Manager of HR
6. VP of Operations
7. Director of Operations

### Kenco Quality Auditor
1. VP of Quality/Best Practices
2. Director of Quality/Best Practices
3. Quality/Best Practices Engineer
4. Director of HR
5. Manager of HR
6. VP of Operations
7. Director of Operations
8. Director of Sales/Marketing

### Kenco Finance/Accounting
1. Director of Corp. Sourcing and Internal Audit
2. Controller
3. Director of Operations
4. Manager of Operations
5. Director of HR
6. Manager of HR

### Kenco IT
1. VP of Information Technology
2. Information Technology Manager
3. Director of HR
4. Manager of HR
5. HR Generalist
6. Quality/Best Practices Engineer
7. Director of Operations

### Site Operations Manager
1. Site VP of Operations
2. Site Director of Operations
3. Site Manager
4. Director of HR
5. Manager of HR
6. VP of Quality/Best Practices
7. Director of Quality/Best Practices

### Site General Manager
1. Site VP of Operations
2. Site Director of Operations
3. Director of HR
4. Manager of HR
5. HR Generalist
6. VP of Quality/Best Practices
7. Director of Quality/Best Practices

### Site Supervisor
1. Site General Manager
2. Site Operations Manager
3. Site Manager
4. Director of HR
5. HR Generalist
6. Project Manager



August 5, 2015

VIA ELECTRONIC MAIL ONLY

Investigator John Detwiler
Illinois Department of Human Rights
John.Detwiler@Illinois.gov

> Re:     Leonard A. Szplett v. Kenco Logistic Services, LLC
>         IDHR # 2015CA3083/EEOC # 21BA51536

Dear Investigator Detwiler:

The following is Respondent Kenco Logistic Services, LLC's ("KLS") position statement and response to the Department's questionnaire in the above-referenced matter.

1.  Kenco Logistic Services, LLC
    1125 Sycamore Street
    Manteno, IL 60950[1]

2.  Jay Elliott
    2001 Riverside Drive
    Chattanooga, TN 37406
    (423) 643-3398

3.  A copy of the EEO-1 report for the above-referenced facility is attached as Exhibit A.

4.  The narrative included with Mr. Szplett's charge is rambling, unfocused, and extremely hard to follow. He often repeats himself. And most of the time his attention is paid to activity that is either time-barred or had nothing to do with decisions affecting his own employment, or both. It appears that the following are the only allegations that are appropriate for his charge of discrimination:

Mr. Szplett alleges that he was demoted when Lori Varvel (female, Caucasian, 35 years old) was hired as the new Human Resources Manager in November of 2014. Mr. Szplett was never the Human Resources Manager. He was the Office Manager (see a copy of his offer letter in his personnel file at Exhibit B). So Ms. Varvel didn't replace him. She didn't replace anyone. There was no Human Resource Manager before Ms. Varvel was hired. So there could be no demotion for Mr. Szplett. He continued as the Office Manager before, during, and after Ms. Varvel's hire, with no change in his salary or his job duties and responsibilities. It is important to note that, at the time of Ms. Varvel's hire, KLS was experiencing various problems with its customer (Mars) which could be fairly attributed to the lack of a strong Human Resource-related presence on site. Additionally, KLS was becoming the subject of more and more charges of discrimination at that time. And so, whether it was the absence of a dedicated on-site Human Resources Manager or because of Mr. Szplett's failing efforts as Office Manager to handle those Human Resource-related issues on site when they came up, KLS decided it needed a dedicated Human Resources Manager. And so it hired one – Lori Varvel.

---

[1] KLS lost the contract on the work at this site. As a result, all KLS employees were terminated effective February 28, 2015. KLS no longer has any employee working at the Manteno site.

Exhibit 22

Mr. Szplett alleges that he was paid less than Ms. Varvel. This allegation is accurate. Although Ms. Varvel was paid more than Mr. Szplett, the difference in pay was based on their different job duties and responsibilities. Mr. Szplett was responsible for the Office Manager duties (see Exhibit C for a job description). Ms. Varvel was responsible for a completely different set of duties and responsibilities – those of the Human Resources Manager (see Exhibit D for a job description). Of course, basing the difference in pay on the difference between job duties and responsibilities is absolutely permissible under the law. See Warren v. Solo Cup Co., 516 F.3d 627, 630–31 (7th Cir.2008) (outlining factors to consider when determining whether employees are similarly situated).

Mr. Szplett alleges that his office was temporarily relocated after Ms. Varvel was hired. At the time Ms. Varvel was hired, Mr. Szplett was out on an open-ended FMLA leave with no specified return date. While he was out on leave, Ms. Varvel temporarily occupied Mr. Szplett's office. Succinctly, she needed an office immediately and he wasn't coming to work at the time. Mr. Szplett's things were moved down the hall into a cubicle while he was out on leave. KLS lost the contract with Mars before Mr. Szplett returned from leave. In any event, a temporary relocation of an office is not an adverse employment action significant enough to support a discrimination claim. See Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002) (explaining that an adverse employment action requires something more than an annoyance or an inconvenience).

Finally, Mr. Szplett alleges he was not paid for March (2015). That allegation is accurate. Quite simply, KLS didn't pay Mr. Szplett for March of 2015 because he didn't work during that time. Instead, he was on leave. Mr. Szplett first went out for FMLA on October 22, 2014. Toward the end of January of 2015, his 12 weeks of FMLA were about to expire. At that time, KLS inquired about Mr. Szplett's intentions to return to work. Mr. Szplett's doctor represented that Mr. Szplett could not work "in any capacity," and that he would be restricted from performing his job functions for another "6-12 months." See Exhibit E for a copy of the Physician's Statement from Mr. Szplett's doctor. Instead of terminating Mr. Szplett at that time, however, KLS allowed Mr. Szplett to stay out on leave in case his condition improved. At the same time, since he wasn't working, KLS did not pay Mr. Szplett. To KLS's knowledge, Mr. Szplett's condition did not change through the date of his separation.

These decisions (hiring Ms. Varvel, setting her salary, allowing her to temporarily use Mr. Szplett's office while he was out on leave, and not paying Mr. Szplett for March of 2015) had nothing to do with Mr. Szplett's race, sex, or age. And they were not in retaliation for any complaint that Mr. Szplett made about discrimination or harassment. In fact, Mr. Szplett never made such a complaint.

Mr. Szplett alleges that KLS violated the WARN Act. First of all, the IDHR does not have jurisdiction over WARN Act complaints (state or federal). In any event, neither the federal act nor the state act was triggered since only 12 employees suffered an employment loss (the federal WARN Act requires 50 employment losses, and the state WARN Act requires 25 employment losses). Assuming for purposes of argument that either WARN Act was triggered, KLS provided the required 60-day notice since it notified employees on January 26, 2015, of the loss of the contract and accompanying termination of employment on March 29, 2015.[2] More specifically, on January 26, 2015, all employees were informed of Mars's decision not to renew KLS's contract at the Manteno site. The communication was made verbally during all employee meetings to those employees who were not on leave at the time

---

[2] Employees were separated effective February 28, 2015, but those who were not on leave were paid through March 29, 2015.

(plus a notice was handed to each of those employees). For those employees who were on leave at the time (FMLA or otherwise), a notice was mailed to their home addresses. Mr. Szplett was on leave, and so his notice was mailed to him. Attached is Exhibit F is a copy of the form notice mailed to employees on leave (like Mr. Szplett). The communication that was mailed is the same as the notice handed out at all employee meetings. Therein, all employees were informed that they would be permitted the opportunity to apply for employment with the new provider (the company taking KLS's place).

To the extent Mr. Szplett alleges an FMLA violation (interference or retaliation), such claims should be dismissed since the IDHR does not have jurisdiction over such claims.

5.   Mr. Szplett was hired as Office Manager on April 21, 2013. A copy of the job description for Office Manager is attached as Exhibit C. A copy of Mr. Szplett's personnel file is attached as Exhibit B.

On the Issue of Harassment:

B1. A copy of KLS's anti-harassment policy is attached as Exhibit G.

B2. The individual primarily responsible for investigating internal complaints of harassment at the Manteno facility was Tammi Fowler (Caucasian), Senior Employee Relations Manager.

B3. Mr. Szplett did not bring any complaint of harassment to anyone's attention.

B4. No other complaint of harassment has been made against anyone listed in the charge of discrimination (outside the charges of discrimination listed below).

B5. No discipline has been issued at the Manteno facility within the past twelve months for violation of KLS's anti-harassment policy.

On the Issue of Demotion:

N1-7. Not applicable. Mr. Szplett was not demoted.

Regarding the basis of RETALIATION, provide the following information:

ZZ1.    Mr. Szplett never opposed or protested allegedly discriminatory treatment.

ZZ2.    Other pending charges of discrimination filed by KLS employees at the Manteno facility:

Nathan Doss --          IDHR # 2014CF2858, dated May 7, 2014
                        IDHR # 2014CF2992, dated May 21, 2014
                        IDHR # 2014CF3057, dated May 29, 2014
                        IDHR # 2014CF3161, dated June 9, 2014
                        IDHR # 2015CF0310, dated August 12, 2014
                        IDHR # 2015CF0822, dated October 16, 2014
                        IDHR # 2015CF1145, dated November 12, 2014
                        IDHR # 2015CF1660, dated January 6, 2015
                        IDHR # 2015CF2725, dated April 16, 2015

| | |
|---|---|
| Vernon Henry -- | IDHR # 2015CF00342, dated July 9, 2014<br>IDHR # 2015CF0990, dated October 29, 2014<br>IDHR # 2015CF1315, dated December 4, 2014<br>IDHR # 2015CF2497, dated March 27, 2015 |
| Arnold Brownlee -- | IDHR # 2015CA1464, dated December 8, 2014 |
| Tracy Davis -- | IDHR # 2014CF3162, dated June 9, 2014 |
| Sam Rockett -- | IDHR # 2015CF0003, dated July 1, 2014 |
| Anastasia Sandness -- | IDHR # 2015CF0006, dated July 1, 2014<br>IDHR # 2015CF0515, dated September 4, 2014<br>IDHR # 2015CF0516, dated September 4, 2014<br>IDHR # 2015CF1655, dated January 6, 2015 |
| Morris Tyson | IDHR # 2015CF0699, dated September 22, 2014<br>IDHR # 2015CA2692, dated April 24, 2015 |
| Scott Marksteiner | IDHR # 2015CA1054, dated November 3, 2014<br>IDHR # 20151650, dated January 7, 2015 |
| Mardy Ringo | IDHR # 2015CA1590, dated December 30, 2014 |
| Edith McCurry -- | IDHR # 2015CA1804, dated January 13, 2015<br>IDHR # 2015CA2495, dated March 27, 2015 |
| Robert Cates | IDHR # 2015CA1354, dated November 19, 2014 |
| Derrick Nixon | IDHR # 2015CF1828, dated February 10, 2015 |

Respectfully submitted,

Jay Elliott
Counsel for Kenco Logistic Services, LLC
2001 Riverside Drive
Chattanooga, TN 37406
Jay.Elliott@KencoGroup.com
Work: (423) 643-3398



ILLINOIS DEPARTMENT OF
**Human** Rights

Bruce Rauner, Governor
Rocco J. Claps, Director

August 21, 2015

Complainant
Leonard Szplett
c/o: Jordan Hoffman
Jordan TraVaille Hoffman, P.C.
11528 S. Halsted Street
Chicago, IL 60628

Respondent
Tammy Fowler, Sr. Manager of Employee
Relations
c/o: Jay Elliott
Vice President of Legal
Kenco Management Services, LLC
2001 Riverside Drive
Chattanooga, TN 37406

Charge Number:    2015CA3083
Complainant:      Leonard Szplett
Respondent:       Kenco Logistics Services, LLC

## NOTICE OF FACT FINDING CONFERENCE

The persons named above are hereby required to appear and participate in a fact-finding conference scheduled for **October 13, 2015**, at **11:00 a.m.**, to be held **via telephone at 312-814-4633**. Said conference will be conducted by the Department representative whose name and telephone number appear at the bottom of this notice.

The fact-finding conference is an investigative forum intended to define the issues, determine which facts are undisputed, obtain evidence and ascertain whether there is a basis for a negotiated settlement of the charge. An attorney or other representative (or a friend or relative) may accompany you to the conference. However, you may not send a substitute for yourself. If you bring persons whose presence has not been requested without first receiving express permission to do so from the Department representative, those persons will be heard only at the discretion of the Department representative.

**RESPONDENT'S FAILURE TO ATTEND THE FACT FINDING CONFERENCE AS SCHEDULED MAY SUBJECT THE RESPONDENT TO DEFAULT. RESPONDENTS WHO APPEAR AT THE CONFERENCE EXCLUSIVELY THROUGH AN ATTORNEY OR OTHER REPRESENTATIVE UNFAMILIAR WITH THE EVENTS AT ISSUE SHALL BE DEEMED TO HAVE FAILED TO ATTEND AND MAY SUBJECT THE RESPONDENT TO DEFAULT**. If Respondent's representatives who are named in the fact finding notice no longer work for Respondent, or are not available, please contact the investigator immediately.

**Charge No. 2015CA3683**
**Page 2 of 2**

**COMPLAINANT'S FAILURE TO ATTEND THE CONFERENCE MAY RESULT IN DISMISSAL OF THE CHARGE.** If a Questionnaire or Request for Further Information is enclosed with this notice, you are requested to complete and return it to the Department representative by N/A. You may submit complete written statement of your position including a proposal for settlement. Any evidence or statements you provide will be made a part of the file and will be considered by the Department in its investigation, but settlement discussions will not be used as evidence without the written consent of the parties.

You must provide all relevant evidence which is available to you, and you must tell the Department representative named below of any other material or witnesses you deem relevant at your earliest opportunity, but no later than at the fact finding conference on the date indicated above.

**RESPONDENT'S FAILURE TO SUBMIT RELEVANT EVIDENCE MAY BE CONSTRUED AGAINST RESPONDENT AND RESULT IN A FINDING OF SUBSTANTIAL EVIDENCE.**

**COMPLAINANT'S FAILURE TO SUBMIT RELEVANT EVIDENCE AND INFORMATION MAY RESULT IN A FINDING OF LACK OF SUBSTANTIAL EVIDENCE OR DISMISSAL OF THE CHARGE FOR FAILURE TO COOPERATE.**

The Department strongly encourages the settlement of charges prior to or during the Fact Finding Conference. If you would like to discuss the possibility of a settlement, please contact the investigator named below.

If you need a reasonable accommodation as a person with a disability to participate in this conference, you should contact your investigator, whose name and telephone number appear at the bottom of this notice, or Susan Allen, the Department's ADA Coordinator, at (217) 785-5119, or Susan.Allen@illinois.gov.

**Please Note: Building security procedures require that any person requesting access to the offices at 100 West Randolph present proper photo identification.**

John Detwiler
INVESTIGATOR

312-814-4633
TELEPHONE

FFC NOTICE CPRP Ltr.docx
rev. 01/15

## SEPARATION AGREEMENT

**THIS SEPARATION AGREEMENT** ("Agreement") is made and entered into by and between Leonard Szplett ("Employee") and Kenco Logistics Services, LLC (hereinafter referred to collectively, with its successors, assigns, affiliates, parents, subsidiaries, and/or surviving company or companies by reason of any merger or acquisition, as "Company"), in order to settle fully and finally any differences between them, including, but in no way limited to, any differences that might have arisen during and/or out of Employee's employment relationship with the Company, and the termination thereof and to promote harmonious relations in the future.

In consideration of the provisions and mutual promises herein contained, the sufficiency of which is acknowledged by the parties, it is agreed as follows:

1.     **TERMINATION DATE.** Employee agrees that his/her employment will terminate on _____ ("Termination Date"). Thereafter, except as expressly provided herein, no future compensation or benefits will accrue in his/her favor. Employee also acknowledges that he/she is owed no other compensation or benefits other than what is provided for within this Agreement.

2.     **SEPARATION PAYMENT.** The payments and benefits to which Employee is otherwise entitled are set forth in Attachment A. In addition to those payments and benefits and as consideration for this Agreement, Employee will receive his/her regular pay for 6 pay periods for a total of $16,995.24 less any tax withholdings applicable to wages. These payments will begin on the first regular payday after March 29, 2015, or after the Effective Date of this Agreement (whichever is later), and will continue on the requisite number of paydays, assuming that no anticipatory breach of this Agreement occurs. Employee acknowledges that this benefit is a special benefit above any other pay or benefit to which Employee is entitled upon termination of the employment relationship.

3.     **RESPONSIBILITY FOR TAXES.** The Parties agree that the payment in Paragraph 2 shall be made through the Company's payroll and shall be subject to tax withholding applicable to wages. Employee acknowledges that any other taxes or assessments by the Internal Revenue Service (or any state or local tax authority) that may become due as a result of any payment or transaction contemplated by this Agreement are Employee's sole responsibility. Employee agrees to hold the Company harmless with respect to any such taxes. Further, Employee agrees that any taxes that are due but unpaid may be set off against any sums due under this Agreement, to the maximum extent allowed by law. Further, nothing contained herein shall be construed or relied upon as any advice or opinion by or on behalf of the Company regarding the tax treatment of the payments made under this Agreement.

4.     **RESERVATION OF RIGHTS.** Notwithstanding any other provision of this Agreement, the Company reserves the unilateral right at any time to modify or

page 1 of 7

**Exhibit 23**

terminate any benefit plan, bonus program, stock option plan, or fringe benefit program under which Employee participates or may participate, and, in the event of such action, the amount of Employee's benefits, awards, or grants under such plans or programs shall be determined according to the terms of such plans or programs and not the terms of this Agreement.

5. **WAIVER AND GENERAL RELEASE.** Employee releases the Company and each of its officers, directors, attorneys, and employees from any and all claims, demands, charges, complaints, liabilities, obligations, actions, causes of action, suits, demands, costs, expenses, losses, attorney fees, expenses, and damages of any nature whatsoever, known or unknown, for relief of any nature at law or in equity, arising out of, related to, or in any way connected to Employee's employment at the Company or separation therefrom, which Employee now has, owns, or holds, or claims to have, own, or hold, or which Employee at any time heretofore had, owned, or held, or claimed to have, own, or hold against the Company, including, but in no way limited to: any claim under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991; 42 U.S.C. §1981; The Americans with Disabilities Act ("ADA"); The Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"); The Employee Retirement Income Security Act of 1974 ("ERISA"), the Worker Adjustment and Retraining Notification Act ("WARN"); the Illinois Worker Adjustment and Retraining Notification Act ("Illinois WARN"); all laws relating to violation of public policy, retaliation, or interference with legal rights; all laws relating to workers' compensation retaliation; any and all other employment or discrimination laws; whistleblower claims; any tort, fraud or constitutional claims, and; any alleged contracts or claims of promissory estoppel. It is agreed that this is a general release and it is to be broadly construed as a release of all claims; provided that notwithstanding the foregoing, this paragraph expressly does not include a release of any claims that cannot be released hereunder by law, including any open or ongoing workers' compensation claim. Employee hereby acknowledges that Employee has received from the Company all wages and compensation which Employee is owed by the Company or to which Employee is entitled by law as of Employee's last pay period. Employee hereby acknowledges that the Company has in no way interfered with Employee's right to take any leave to which Employee may have been entitled by law or under the Company's policies (including leave under the Family & Medical Leave Act). Employee further acknowledges that the Company has allowed Employee to take any such leave for which Employee was eligible and which Employee requested (including leave under the Family & Medical Leave Act). Employee further acknowledges that Employee has reported any and all workplace injuries that Employee has incurred or suffered to date.

6. **ELIGIBILITY FOR FUTURE EMPLOYMENT.** Employee understands that he/she is not eligible to apply for employment with the Company at any time in the future. Employee further agrees that he/she will not hereafter be reemployed by the Company, that he/she will not hereafter apply for or otherwise seek employment with the Company or any affiliate of the Company, and that he/she specifically waives any right to reinstatement or reemployment in the future, and that this Agreement constitutes a valid, non-pretextual, non-discriminatory, and non-

retaliatory reason for the Company not hiring or considering Employee for further or future employment.

7.    **RECORDS/COMPANY PROPERTY.**    Employee agrees to immediately turn over to the Company all files, memoranda, records, and other documents, physical or personal property which he/she has received from the Company as of the Termination Date and which are the property of the Company.

8.    **COOPERATION WITH HUMAN RESOURCE INQUIRIES AND/OR LITIGATION.** Employee further agrees that he/she will cooperate with the Company and its counsel in any Human Resources inquiry or litigation in which he/she may be a potential witness or have knowledge of relevant facts or evidence. Such cooperation includes but is not limited to meeting and conferring at reasonable times to discuss such knowledge, disclosing facts Employee may know, preparing for any proceeding to the extent the Company or its counsel believes it to be necessary, or providing such other assistance to the Company and its counsel in defense or prosecution of litigation. Employee will be reimbursed for reasonable and necessary expenses incurred by him/her in the course of complying with this section.

9.    **CONFIDENTIALITY AND NON-DISPARAGEMENT.**    Employee agrees that he/she will keep the terms and amount of this Agreement completely confidential and that he/she will not hereafter disclose any information concerning this Agreement to any person or entity other than his/her spouse, his/her attorney, and his/her professional legal and/or tax advisors, except as required by law; provided, that those individuals will be deemed his/her agents and, therefore, also bound by this Agreement. In addition, Employee agrees that he/she will refrain from disparaging the Company, its employees, its products and/or its services in any form or fashion. The parties recognize and acknowledge that strict confidentiality is of the essence of this Agreement, and that, in the event that the confidentiality provisions of this Agreement are breached, Employee shall be liable to the Company under the paragraph titled "INDEMNIFICATION AND REMEDY FOR BREACH," below.

Employee also recognizes and acknowledges that he/she has had access to certain highly sensitive, special, unique information of the Company that is confidential or proprietary. Employee hereby covenants and agrees that for a period of five years from the Termination Date Employee will not disclose any confidential information or trade secrets except to authorized representatives of the Company; provided, however, that the foregoing restrictions shall not apply to items that, through no fault of Employee have entered the public domain or to items he/she is compelled to disclose by order of any court or administrative body of competent jurisdiction. In that case, Employee shall provide written notice to the Director of Human Resources of the Company that he/she is about to be so compelled so that the Company may be afforded an opportunity, should it so choose, to seek a protective order with respect to such information.

For purposes of this Agreement, "confidential information" means any data or information with respect to the business conducted by the Company or its subsidiaries or

page 3 of 7

parents on the date of this Agreement, other than trade secrets, that is not generally known by the public. To the extent consistent with the foregoing definitions, confidential information includes, without limitation:

a.      reports, pricing, sales manuals and sales training manuals, selling and pricing procedures, marketing programs and procedures and financing methods of the Company, together with any techniques utilized by the Company in designing, developing, manufacturing, testing or marketing its products or in performing services for clients, customers, and accounts of the Company;

b.      customer lists, the special requirements of particular customers, and the current and anticipated requirements of customers generally for the products of the Company;

c.      any contracts, working drawings, designs, product specifications, software programs, source codes or similar information of the Company;

d.      the specifications of any new products under development by the Company;

e.      the sources of supply for ingredients, packaging or other materials used for production, packaging and distribution of products by the Company and the quality, prices and usage of those materials;

f.      the business plans and financial statements, reports and projections of the Company; and

g.      human resources information, including, but not limited to, information concerning policies, procedures, wages, and benefits.

10.     **INDEMNIFICATION AND REMEDY FOR BREACH.** Employee agrees to indemnify and hold the Company harmless from and against any and all loss, cost, damage or expense, including, without limitation, attorney fees, incurred by the Company, arising out of any breach of this Agreement by him/her, including but in no way limited to misrepresentations made by Employee to the Company in this Agreement, and/or the Company's defense of any claims released by this Agreement. Additionally, Company and Employee agree that in the event Employee breaches any part of this Agreement, any and all severance amounts owed to Employee under this Agreement will cease and will not be paid.

11.     **NO ADMISSION.** This Agreement shall not in any way be construed as an admission by the Company of any acts of discrimination, retaliation, misconduct, or any other illegal conduct whatsoever against Employee or any other person, and the Company specifically disclaims any liability to or discrimination, retaliation, misconduct, or any other illegal conduct against Employee or any other person, on the part of itself, its employees or its agents. Employee acknowledges that Employee may subsequently

Szplett -- Wage Claim --00040

discover facts in addition to or different from those that Employee now knows or believes to be true with respect to Employee's employment with the Company or termination therefrom, and that Employee may have sustained or may yet sustain damages, costs, expenses that are presently unknown and that relate to Employee's employment with the Company or termination therefrom. Employee acknowledges, however, that the Parties have negotiated, agreed upon, and entered into this Agreement in light of that situation. To the extent allowed by law, Employee waives any and all rights which Employee may have under any state or federal statute or common law principle that would otherwise limit the effect of this Agreement to claims known or suspected as of the Effective Date of this Agreement.

12. **OPPORTUNITY TO REVIEW.** As part of this Agreement, Employee understands that Employee is waiving all claims for age discrimination under the Age Discrimination in Employment Act ("ADEA"). Employee represents and acknowledges that Employee has carefully read and understands all of the provisions of this Agreement, and that Employee is voluntarily entering into this Agreement. **Employee represents and acknowledges that Employee has been advised in writing to, and has been afforded the right and opportunity to, consult with an attorney prior to executing this Agreement, that Employee has up to forty-five (45) days within which to consider this Agreement, that Employee has seven (7) days following its execution within which to revoke this Agreement, and that this Agreement, and the payments due thereunder, will not become effective until after the revocation period has expired. Employee must deliver such revocation/rescission by hand within the applicable period or send it by certified mail within the applicable period to Eddy Register at 2001 Riverside Drive, Chattanooga, TN 37406. Employee further acknowledges and confirms that the only consideration for Employee signing this Agreement are the terms and conditions stated in writing in this Agreement, and that no other promise or agreement of any kind, other than those set out in writing in this Agreement, has been made to Employee by any person to cause Employee to sign this Agreement.**

13. **GOVERNING LAW.** This Agreement shall in all respects be interpreted, enforced and governed under the laws of the State of Tennessee.

14. **ENTIRE AGREEMENT.** This Agreement sets forth the entire agreement between the parties hereto as to the termination of Employee's employment with the Company, and fully supersedes any and all prior agreements or understandings between them pertaining to the termination of his/her employment with the Company. It is agreed that this Agreement may be modified only by a subsequent, written agreement, executed by both parties.

15. **EFFECTIVE DATE.** This Agreement shall become effective upon the later of the date last signed below or, if a revocation period is specified herein, 10 days after the expiration of such revocation period.

16. **INVALIDITY OF CERTAIN PROVISIONS.** If any part, term, or provision of this Agreement is declared or is determined by any agency or court of competent jurisdiction to be illegal or invalid, the validity of the remaining parts, terms,

or provisions shall not be affected thereby, and the illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. Furthermore, if the release of any particular claims(s) is determined to be invalid or ineffective, this does not affect or impair the validity or effectiveness of release of the remainder of claims.

IN WITNESS WHEREOF, the undersigned have executed this Separation Agreement as of the dates indicated below.

THIS AGREEMENT INCLUDES A WAIVER AND GENERAL RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS. EMPLOYEE FURTHER ACKNOWLEDGES THAT EMPLOYEE HAS CAREFULLY READ AND UNDERSTANDS THIS AGREEMENT. EMPLOYEE IS ADVISED TO CONSULT AN ATTORNEY BEFORE EXECUTING THIS WAIVER AND GENERAL RELEASE OF ALL CLAIMS.

Date: _____          _____

                                         Leonard Szplett

NOTARY PUBLIC WITNESS AT TIME OF SIGNATURE:
STATE OF _____

COUNTY OF _____

Personally appeared before me, _____
                                         (Print Name)
with whom I am personally acquainted or who furnished legal proof of his/her identity, and acknowledged that he/she executed the within instrument for the purposes therein contained.

Witness my hand, at office, this _____ day of _____, 20 _____.

_____                My Commission Expires _____
Notary Public signature & seal

For Kenco Corporate Office Use Only:
KENCO Corporate representative signature (may occur after date of signatures above)

Date: _____

By: _____

TITLE:        PRESIDENT, KENCO MANAGEMENT SERVICES

page 6 of 7



## Attachment A

This is Attachment A to the Separation Agreement between the Company and the Employee.

The payments and benefits to which Employee is otherwise entitled are:

1.    His/her accrued, unused vacation/PTO balance.

2.    Salary through March 29, 2015.

Szplett -- Wage Claim --00043

2001 Riverside Drive
Chattanooga, TN 37406
Toll Free 1.800.758.3289
Direct 423.622.1113
Fax 423.643.3326
www.kencogroup.com



**KENCO**

Mr. Leonard Szplett
3421 W. 1500 N. Road
Kankakee, IL 60901

Dear Len:

As you know, Exel Logistics has been awarded the Mars Manteno, IL 3PL contract. Since you did not apply for work with Exel, your employment will end when Kenco transitions the work. That is happening sooner than we thought (February 28). But, since you are not continuing employment with Exel, they are requiring us to remove you -- and anyone else not continuing work employment with Exel -- from work today.

However, Kenco has made the decision to continue your employment through March 29, 2015, your termination date. You will also be paid out any accrued but unused vacation/PTO you may have. You will not need to be onsite again, with the exception of arranging with me (423.280.8937) a mutually agreeable date and time to come and pick up any personal belongings and to return Kenco property to include your access badge, keys, files, cell phone, laptop, etc. as applicable.

After your termination date, you may be eligible for unemployment with the state, once they make a determination of your unemployment benefits. Enclosed for your review is information from the IL Department of Employment Security.

If you currently have medical, dental, or vision insurance, after your termination date you will be able to elect coverage through COBRA. You will receive a packet of information about this option within 15 days of March 29, 2015. If you have additional benefits such as 401(k), long term care, life insurance, etc., information about them is enclosed.

If you are currently receiving short or long term disability benefits, you will continue to receive them until your claim expires.

In addition, Kenco is also offering you a severance package. Enclosed is a separation agreement and notice. Please review these documents carefully and/or have an attorney do so on your behalf before making a decision to accept or decline the severance offer. Highlights include:

* 6 pay periods
* 45 days to review the offer and 7 days to revoke it once signed

In consideration for severance pay, you are agreeing to release any claims against Kenco, and also to keep confidential information confidential and not to disparage Kenco in any way.

If you elect to accept the agreement, please sign it and the notice in the presence of a Notary Public. Both documents should be sent to me at the address above.

Thank you for your service to Kenco.

Sincerely,


Eddy Register, Human Resources
Kenco Management Services

**Exhibit 25**

## Rebekah Funk

| | |
|---|---|
| **From:** | Coffey, Robert |
| **Sent:** | Friday, June 06, 2014 9:33 AM |
| **To:** | Fron, Keith; Maggio, Jennifer |
| **Cc:** | Steele, Gordon; david.jabaley@kencogroup.com; Moore, Todd |
| **Subject:** | RE: Jacobson Incident |

Thanks for your attention to this matter Keith- Unfortunately this site has a history of incidents that this will cause others to jump to conclusions.

David/Keith - I understand that Kenco and Jacobson have instituted several countermeasure such as additional/upgrade to the cameras, a new guard service, with additional coverage, gate arms, etc... Given the history of the site and this most recent incident, I would like to see additional supervision / security presence of the Jacobson Associates- especially during breaks/shift change - this was called out as a risk especially in peak season in our debrief and will need to be addressed. Please work together to ensure that the safety and security of the associates is a top priority.

Keith- Please continue partner with Kenco and let me know if you have any questions or concerns.

Regards,

Robert Coffey

Mars Chocolate, North America
Regional Distribution Manager  - Midwest Chicago Plant
2019 North Oak Park Ave,
Chicago, IL 60707

M: 773-892-7735
E: robert.coffey@effem.com

-----Original Message-----
From: Fron, Keith [mailto:Keith.Fron@jacobsonco.com]
Sent: Thursday, June 05, 2014 11:05 PM
To: Maggio, Jennifer
Cc: Steele, Gordon; Coffey, Robert; david.jabaley@kencogroup.com
Subject: Re: Jacobson Incident

Jennifer,

All are ok just a little shook up. Site security has been informed of his dismissal. The staffing agency was present during the event as it was shortly after shift change.

In my morning staff meeting we will review our policy for handling potential threats and personal safety to determine potential improvement opportunities for handling threats.

**Exhibit 26**

DEF001058

Under normal circumstances we would not recommend involvement to this extent but in this instance where a large male and a smaller female were involved I understand the reaction of protection for her.

Regards,
Keith Fron

On Jun 5, 2014, at 7:14 PM, "Maggio, Jennifer" <jennifer.maggio@effem.com<mailto:jennifer.maggio@effem.com>> wrote:

Keith

Thank you for the information. Areis the woman and the line leads ok?
I assume that this has been communicated to the security personnel for the Manteno site.
What is your communication policy to the Jacobson and temporary staff?

Sent from my iPhone

On Jun 5, 2014, at 7:38 PM, "Fron, Keith" <Keith.Fron@jacobsonco.com<mailto:Keith.Fron@jacobsonco.com>> wrote:

Jennifer,

At approximately 4pm we had an incident which involved two associates, a male and a female, who apparently have a relationship outside of work who have been living together for the last two years. Looks like they brought a personal issue to work. They have both been good employees up to this point with no issues from either one.

He was pulling her arm trying to take her off premises. Some of our leads became involved to separate the two as they felt her safety was in jeopardy. The leads tried to separate the two by bringing her into the shipping office but the male persisted to follow and became belligerent and threatening. The police were called and the male was escorted off the property as she did not want to press charges. He was immediately terminated for his behavior and informed that if he returns to the property he will be arrested for trespassing.

If you have any additional questions please feel free to contact me.

Keith Fron
General Manager
Jacobson Companies
1125 W. Sycamore Rd.
Manteno, Illinois 60950

(o) 815.468.4454
(c) 708.359.5786
(e) keith.fron@jacobsonco.com<mailto:keith.fron@jacobsonco.com>

"Can Do Logistics"
ü Please consider the environment before printing this email

DEF001059

**E:** robert.coffey@effem.com

**From:** Search, Jeremy
**Sent:** Friday, June 27, 2014 9:36 AM
**To:** Dennis Godinho; Coffey, Robert; Julie Wade
**Cc:** margaret.budzyn@ups.com; Montgomery, John; Ethridge, Amanda; RICHARD; JIM
**Subject:** Re: Trailers in Manteno on FDA Hold

Once again Robert coffey is the operations decision maker here. If he allows an unload in FDA hold you will get unloaded.

Robert and Julie. My understanding is that w are in need of canada northbound carriers. So unloading these can be reloads back out.
Jeremy Search
Mars Inc.
Commercial Sourcing Manager
615-807-4450
614-374-0481

On Jun 27, 2014, at 8:02 AM, "Dennis Godinho" <dgodinho@blm.com> wrote:

Good morning,

 4 T's Management in Manteno is telling us we have 4 trailers on FDA hold they cannot unload today. Jeff in receiving is telling us they can have them unloaded in 48 hrs. The problem with this is that we have drivers on site waiting to get the empties in order to go to their backhauls to come home. Please help!

Its Friday and time is defiantly a factor here. If we don't get our trailers unloaded in time we miss our backhauls and the drivers are stuck for the weekend. That will be very costly.

Below is a list of the trailers that are in question.

Trailer# 1950 Paps# BGROA19682
Trailer# 2075 Paps# BGROA19744
Trailer# 2115 Paps# BGROA19748
Trailer# 1961 Paps# BGROA19730

<image001.jpg>

<image002.jpg><image003.png>

*Dennis A Godinho*

Operations
CANADA & U.S. BONDED
I.C.C CARRIER IN U.S. – P.C.V.X IN ONTARIO
Local: (519) 748-9880 Ext 2226-2228
Watts: 800-265-2743

Fax: 800-358-0407
E-mail dgodinho@blm.com
Before printing. Think Green!

2

Revised Orientation Schedule

Page 1 of 1

# Revised Orientation Schedule 

Hisey, Michelle

**Sent:** Friday, May 10, 2013 10:30 AM

**To:** McCurry, Edith; Szplett, Len

**Cc:** Rich, Adam

## Edith McCurry & Len Szplett Orientation
### Mars Manteno, IL
### May 14-15, 2013

**Tuesday, May 14th**

| | |
|---|---|
| 9:30am | Dan Day (Safety/Security) |
| 10:00am | LeAndra Holly/Ursula Pickett (Worker's Compensation) |
| 10:30am | Tammi Fowler (Employee Relations) |
| 11:30am | Michelle Hisey/Adam Rich (Employee Relations) |
| Lunch | |
| 1:30pm | Cathy Phillips (Benefits, Leave of Absence) |
| 2:30pm | Joe Smith (Fleet-DOT Drivers) |
| 3:00pm | Chelsea Marlin/Claire LePage (Recruiting) |

**Wednesday, May 15th**

| | |
|---|---|
| 8:30am | Bobbie Iles(Payroll) |
| 10:30am | LaShawn Morrow (401k) |
| 11:00am | Lori Govan (Communications) |
| Lunch | |
| 1:30pm | Jason Minghini (Quality) |

**Michelle Hisey**

Human Resource Generalist - Employee Relations

Kenco Management Services, LLC
P.O. Box 1607
2001 Riverside Drive (37406)
Chattanooga, TN 37401
Phone: 423-643-3342
Fax: 423-643-3325

**Exhibit 27**

American: Travel Receipt for LEONARD.A SZPLETT: 13MAY Trip from Chicago O'h...e IL, USA to Chattanooga T... Page 1 of 2

## American: Travel Receipt for LEONARD.A SZPLETT: 13MAY Trip from Chicago O'Hare IL, USA to Chattanooga TN, USA

Susan Mayberry [smayberry@worldtrav.com]

**Sent:** Tuesday, April 30, 2013 4:42 PM

**To:** Szplett, Len

**Cc:** McCurry, Edith

**Attachments:** 63331111.PDF (16 KB) ; 63331111.HTM (4 KB)

-----

\*TRAVELER RESPONSIBILITY - PLEASE READ CAREFULLY\*

Review all names, routing, dates, and travel times and immediately
report any corrections to the travel office within 24 HOURS from date of
ticket issuance.

Any corrections noted after that time will be made within the guidelines
and restrictions of the respective airline, hotel, and car rental
companies and may incur penalties and increased cost.

Click here to add this itinerary to your calendar/organizer:
http://my.infotriever.com/1100000024558540

SZPLETT/LEONARD.A                          30Apr13  05:35pm
                                           KENCO

                                           2001 RIVERSIDE DRIVE

                                           CHATTANOOGA TN 37406


BOOKING LOCATOR: NHUWU5
Fare: $262.90

13May13   08:30pm   Monday
Air   American Airlines       Flight# 4363   Class:V Seat:09-A
      From: Chicago O'Hare IL, US 13May13   08:30pm   Monday
      To:   Chattanooga TN, USA   13May13   11:00pm   Monday
      Meal: Equip: Embraer RJ140 Jet Status: Confirmed
      Stops: 0

      OPERATED BY AMERICAN EAGLE AIRLINES
      DEPART TERMINAL 3
      American Airlines locator: MKXADT

      Arrival CHA 5/13/2013 11:00:00 PM EST local time


-----------------------------------------
----------------------------------------------------
A GOVERNMENT ISSUED PHOTO ID IS REQUIRED TO TRAVEL FOR UP TO DATE TRAVEL
ALERTS VISIT WWW.TSA.GOV
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-*
VISIT WWW.WORLDTRAV.COM/BAGGAGE FOR INFORMATION REGARDING BAGGAGE
ALLOWANCES AND POSSIBLE FEES.
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-*
********WORLD TRAVEL SERVICE INC.********
1-800-251-9047 OR 423-267-9000

https://oma.kencogroup.com/owa/?ae=Item&t=IPM.Note&id=RgAAAACCfw5ORdddTJUkg4aa%2bB3eBwB3Wsibex,.. 4/30/2013

MONDAY-FRIDAY 830AM - 500PM ET

FOR AFTER HOURS EMERGENCY ASSISTANCE CALL
1-800-251-9047 AND REFER TO CODE PK8M
OUTSIDE THE U.S. CALL COLLECT 423-267-9000

**********************************
AIRLINE TICKET IS NONREFUNDABLE.
CHANGES MAY BE SUBJECT TO PENALTIES
PLUS ANY DIFFERENCE IN FARE.
CHANGES AND CANCELATIONS MUST BE
MADE PRIOR TO FLIGHT DEPARTURE TIME
OR TICKET VALUE MAY BE LOST.

        Ticket Information

        Invoice # 761964
        Electronic Ticket # 0017247944523
        30APR SZPLETT/LEONARD.A
                Total Fare              262.90  USD
        Totals for Invoice # 761964
                    AIR FARE                        234.42
                    TAX                              28.48
                    TOTAL AIR FARE                  262.90
                    SERVICE FEE                      20.00
                    AMOUNT CHARGED                  282.90
                Amount Billed to CA.........8840


------------------------------------------

ResFAX(r) Copyright(c) 1992-2013 Cornerstone Information Systems, Inc.,
Bloomington, IN

***ResFAX Message ID 11567693***
***ResFAX Itinerary E-Mail***

FW: Travel Receipt for LEONARD:ᴀ SZPLETT: 16MAY Trip from Chattanooga TN. ᴄ_ᴀ to Chicago O'Hare IL, USA   Page 2 of 2

Arrival ORD 5/16/2013 6:40:00 PM CST local time

------------------------------------------
----------------------------------------------
A GOVERNMENT ISSUED PHOTO ID IS REQUIRED TO TRAVEL FOR UP TO DATE TRAVEL
ALERTS VISIT WWW.TSA.GOV
*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*
VISIT WWW.WORLDTRAV.COM/BAGGAGE FOR INFORMATION REGARDING BAGGAGE
ALLOWANCES AND POSSIBLE FEES.
*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*
********WORLD TRAVEL SERVICE INC.********
1-800-251-9047 OR 423-267-9000
MONDAY-FRIDAY 830AM - 500PM ET

FOR AFTER HOURS EMERGENCY ASSISTANCE CALL
1-800-251-9047 AND REFER TO CODE PK8M
OUTSIDE THE U.S. CALL COLLECT 423-267-9000

Ticket Information

Invoice # 763650
Electronic Ticket # 0067247944561
01MAY SZPLETT/LEONARD.A
        Total Fare           273.80  USD
Totals for Invoice # 763650
        AIR FARE                        234.42
        TAX                              39.38
        TOTAL AIR FARE                  273.80
        SERVICE FEE                      20.00
        AMOUNT CHARGED                  293.80
        Amount Billed to CA.........8840

------------------------------------------

ResFAX(r) Copyright(c) 1992-2013 Cornerstone Information Systems, Inc.,
Bloomington, IN

***ResFAX Message ID 11573893***
***ResFAX Itinerary E-Mail***

American: Travel Receipt for LEONARD.A SZPLETT: 13MAY Trip from Chicago O'H...    Page 1 of 2

## American: Travel Receipt for LEONARD.A SZPLETT: 13MAY Trip from Chicago O'Hare IL, USA to Chattanooga TN, USA

Susan Mayberry [smayberry@worldtrav.com]

**Sent:**    Tuesday, April 30, 2013 4:42 PM

**To:**    Szplett, Len

**Cc:**    McCurry, Edith

**Attachments:** 63331111.PDF (16 KB) ; 63331111.HTM (4 KB)

--------------------------------------------------
-----

*TRAVELER RESPONSIBILITY - PLEASE READ CAREFULLY*

Review all names, routing, dates, and travel times and immediately
report any corrections to the travel office within 24 HOURS from date of
ticket issuance.

Any corrections noted after that time will be made within the guidelines
and restrictions of the respective airline, hotel, and car rental
companies and may incur penalties and increased cost.

Click here to add this itinerary to your calendar/organizer:
http://my.infotriever.com/1100000024558540

SZPLETT/LEONARD.A                                    30Apr13   05:35pm
                          .                          KENCO

                                                     2001 RIVERSIDE DRIVE

                                                     CHATTANOOGA TN 37406

BOOKING LOCATOR: NHUWU5
Fare: $262.90

13May13    08:30pm   Monday
Air    American Airlines       Flight# 4363    Class:V Seat:09-A
       From: Chicago O'Hare IL, US 13May13    08:30pm   Monday
       To:    Chattanooga TN, USA    13May13   11:00pm   Monday
       Meal:  Equip: Embraer RJ140 Jet Status: Confirmed
       Stops: 0

       OPERATED BY AMERICAN EAGLE AIRLINES
       DEPART TERMINAL 3
       American Airlines locator: MKXADT

       Arrival CHA 5/13/2013 11:00:00 PM EST local time

-------------------------------------------
----------------------------------------------------
A GOVERNMENT ISSUED PHOTO ID IS REQUIRED TO TRAVEL FOR UP TO DATE TRAVEL
ALERTS VISIT WWW.TSA.GOV
*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*
VISIT WWW.WORLDTRAV.COM/BAGGAGE FOR INFORMATION REGARDING BAGGAGE
ALLOWANCES AND POSSIBLE FEES.

https://oma.kencogroup.com/owa/?ae=Item&t=IPM.Note&id=RgAAAADQ2SjZLeDxS4yq...  5/9/2013

Case: 1:19-cv-02500 Document #: 1-1 Filed: 04/12/19 Page 36 of 99 PageID #:399

```
*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*-*
********WORLD TRAVEL SERVICE INC.********
1-800-251-9047 OR 423-267-9000
MONDAY-FRIDAY 830AM - 500PM ET

FOR AFTER HOURS EMERGENCY ASSISTANCE CALL
1-800-251-9047 AND REFER TO CODE PK8M
OUTSIDE THE U.S. CALL COLLECT 423-267-9000

*********************************
AIRLINE TICKET IS NONREFUNDABLE.
CHANGES MAY BE SUBJECT TO PENALTIES
PLUS ANY DIFFERENCE IN FARE.
CHANGES AND CANCELATIONS MUST BE
MADE PRIOR TO FLIGHT DEPARTURE TIME
OR TICKET VALUE MAY BE LOST.

        Ticket Information

        Invoice # 761964
        Electronic Ticket # 0017247944523
        30APR SZPLETT/LEONARD.A
            Total Fare              262.90  USD
        Totals for Invoice # 761964
                AIR FARE                        234.42
                TAX                              28.48
                TOTAL AIR FARE                  262.90
                SERVICE FEE                      20.00
                AMOUNT CHARGED                  282.90
            Amount Billed to CA.........8840


-------------------------------------------

ResFAX(r) Copyright(c) 1992-2013 Cornerstone Information Systems, Inc.,
Bloomington, IN

***ResFAX Message ID 11567693***
***ResFAX.Itinerary E-Mail***
```



SZPLETT/LEONARD.A

10-May-2013 10:40 am

Page 2 of 2

BOOKING LOCATOR: NHUWU5
Fare: $262.90

KENCO
2001 RIVERSIDE DRIVE
CHATTANOOGA TN 37406

Ticket Information

Invoice # 779825
Ticket #
10MAY SZPLETT/LEONARD.A
    Total Fare                              0.00
Totals for Invoice # 779825
    SUBTOTAL                                      0.00
    TOTAL INVOICE AMOUNT                          0.00
    AMOUNT CHARGED                                0.00
    Amount Billed to CA.........8840

## McCurry, Edith

**From:** Karen Smith [ksmith@millermartin.com]

**Sent:** Friday, November 01, 2013 1:57 PM

**To:** McCurry, Edith

**Cc:** Walsh, Kelvin

**Subject:** Mary Madison/Kenco Logistics - Confidential - Privileged and/or Work Product

Edith:

As you may know, a former employee of Kenco's, Mary Madison, has filed a charge of discrimination against the company alleging that she was discriminated against because of her race and gender. She also alleges retaliation based on a complaint she claims to have made to you on June 25, 2013. This firm has been retained to represent Kenco in responding to Ms. Madison's allegations. To that end, would you have some time on Monday, November 4, 2013, to speak with me briefly about the charge? Kelvin Walsh has given me your contact information, and I am happy to give you a call at a time that is convenient for you. In the meantime, could you verify for me one way or another whether Ms. Madison ever lodged any type of complaint of discrimination with you on June 25 (or at any other time)?

Thank you, and I look forward to hearing from you.

**Karen M. Smith**
**Miller & Martin PLLC**

Suite 1000 Volunteer Bldg.
832 Georgia Avenue
Chattanooga, TN 37402
Phone (423) 785-8209
Fax (423) 321-1565



 Please print responsibly.

---

**CONFIDENTIALITY NOTICE**
The information contained in this e-mail message is legally privileged and confidential, and is intended only for the use of the addressee. If you are not the intended recipient, please be aware that any dissemination, distribution or copy of this e-mail is prohibited. If you have received this e-mail in error, please immediately notify us by reply e-mail and delete this message and any attachments. Thank you.

Please also advise us immediately if you or your employer does not consent to receipt of Internet e-mail for confidential messages of this kind.

**DISCLAIMER**
Pursuant to Circular 230 issued by the United States Treasury Department and relating to practice before the Internal Revenue Service, any comment or opinion in this communication relating to a federal tax issue is not intended to be used, and cannot be used, by a taxpayer for the purpose of avoiding tax-related penalties that may be imposed on the taxpayer.

**Exhibit 29**



| | Document Number:<br>**CP-BIC-802** | Incident Reporting Procedures | Revision:<br>**01** |
|---|---|---|---|
| | Revision Date:<br>9/9/2014 | **Replaces: CP-RM-6.2.101** | Effective Date:<br>11/15/2014 |

Approval: Author, Date

*SCOTT KROLL*   *10/29/2014*

| Approval: QC, Date | Approval: Author Group, Date |
|---|---|
| Kim Stamblin   10/29/2014 | *10/29/14* |

## 1.0 PURPOSE

This document outlines and defines Kenco's Incident Reporting Procedures

## 2.0 SCOPE

This document applies to all Kenco operated facilities.

## 3.0 DEFINITIONS

**Incident -** An event that disrupts normal activities and **may** result in a business/insurance loss or claim. Incidents can occur anywhere, including Kenco owned or leased property, Kenco managed sites, while traveling, or other offsite service locations.

**Injury -** On-the-job or alleged injury on-the-job, related to full-time associates, temporary associates, on-site vendors, contractors and/or visitors. This also includes those incidents that occur during business travel (such as, attending meetings, conventions, and while staying at motel/hotel – this is not an all-inclusive list).

**Employment Practices** - Any event that could result in charges against employment practices, such as but not limited to harassment, discrimination, wrongful termination and defamation.

**Medical Emergency -** Anytime emergency personnel (e.g. ambulance, police, etc.) are called to the site, these incidents should be reported for corporate record keeping purposes.

**Property Damage/Customer Property -** Damage to Property and Product/Inventory: applies to building structure, surrounding premises (e.g. office park), land (including environmental), racking/shelving, etc.

**Security Events -** Include things like burglary, robbery, theft (location or transit), misplacement, false pretenses, employee dishonesty, threats, assaults, etc.

**Theft/Shortage -** Consists of but not limited, to: office equipment, computer software, machinery, furnishings, supplies, property of others, important records/documents, and most notably, customer inventory losses/discrepancy's, etc.
**Note:** Refer to Procedure for Inventory Control (CP-OP-7.5.4.006) for additional guidance in reference to customer inventory control.

**Transportation**
- Automobile/Truck incident involves:
  1. Kenco associate driving Kenco-owned, leased or rented vehicle
  2. Kenco associate driving personal vehicle for Kenco business activities.
     Please note, employees using their own vehicle for Kenco business activities are required to have the minimum liability coverage limits. Losses will generally be applicable to the employee's insurance coverage.
  3. Damage to Kenco-owned, leased, rented vehicle or other units (e.g. trailers) under Kenco control.
  4. Damage and/or Injuries to other parties due to Kenco-owned, leased or rented vehicle.

- Collision Damage: Involves vehicles, aircraft, and Power Industrial Trucks.

**Exhibit 30**



**KENCO**

| Document Number: | Rev # | Title: |
|---|---|---|
| CP-BIC-802 | 00 | Incident Reporting Procedures |

- Comprehensive Damage (to vehicle): Examples include but are not limited to: cracked windshield, vandalism, damage due to weather (i.e. hail).

**Note:** Individual(s) not employed by Kenco may not operate a Kenco vehicle without prior notification and appropriate authorization by Kenco leadership/Risk Management.

## 4.0 RESPONSIBILITIES

**Site Management** – responsible for the overall implementation and enforcement of this policy at the assigned site.

**Risk Management** – responsible for the overall implementation and enforcement of this policy across Kenco Family of Companies.

**Site Human Resources (or designee)** – responsible for ensuring all new hire associates are advised of this policy.

**Site Safety-Security Advocate SSA (or designee)** – responsible for assisting Site Manager in the implementation and enforcement of this policy.

**All Kenco Associates** – responsible for complying with and adhering to requirements mandated by Kenco and Site Management.

## 5.0 PROCEDURE

1. Non-Commercial Vehicles
   - Associates must contact the local authorities to report all incidents resulting in injury or property damage
   - When possible, preserving the incident scene or disturbance of any physical evidence should be prevented until the local authorities arrive. NOTE: Associates should refrain from making comments or providing statements to anyone except local authorities.
   - Identify and record the names of all individuals who witnessed the incident. NOTE: If local authorities choose not to investigate an incident, associate should secure contact and insurance information for all drivers involved in the incident.
   - When possible, obtain photographs of the incident scene. All photographs should be auto-dated by the camera or cell phone.
   - Report all automobile incidents to a Supervisor, Manager or Site Safety Advocate immediately or immediately upon discovery of damage to an automobile i.e. damage to parked vehicle.
   - Securing and providing police reports upon request from Supervisor, Manager or Risk Management.
     **NOTE:** If an associate is medically unable to notify his/her superiors after an incident, the associate's Supervisor or Site Safety Advocate is responsible for reporting the incident to Risk Management immediately upon notification.

2. Commercial Vehicles
   - See CP-RM-7.5.1.302 CMV Accident Procedures.

3. All Other Incidents
   - Associates must report any conditions that they consider unsafe or threatening to their supervisor, manager or Risk Management.
   - Immediate reporting of all incidents to a Supervisor, Manager or Site Safety Advocate.
   - When possible, preserving the incident scene. Disturbance of any physical evidence should be prevented until management arrives on the scene. NOTE: Associates should refrain from making comments or providing statements to anyone except their Supervisor or other Kenco management.


**KENCO**

| Document Number: | Rev # | Title: |
|---|---|---|
| CP-BIC-802 | 00 | Incident Reporting Procedures |

4. Site Management will ensure the following actions are completed:
   - The incident scene has been secured and an incident investigation is conducted (CP-SH-819).
   - All incidents involving a work related injury are called into the Medical Triage, as outlined in Wokers' Compensation Procedure (CP-RM-6.2.100 (new # CP-BIC-801).
   **Note:** All injuries involving a Kenco full-time associate must be called into the Medcore Nurse Triage line, (See Nurse Medical Triage Instructions on KencoConnection – www.kencoconnection.com/www/docs/495). All injuries involving a Kenco temporary associate must be called into the respective temporary agency.
   - All incidents are to be reported to Risk Management immediately but within no more than 24 hours of incident notification. Incidents must be reported via Kenco's Risk Management Information System (RMIS). See RMIS Incident Reporting Instructions on KencoConnection under Risk Management, Business Insurance & Claims Section.
   **NOTE:** In the case of incidents that result in fatality or a serious injury requiring hospitalization of any associate, on-site vendor, contractor or visitor, the incident must be called into the Risk Management Department IMMEDIATELY, regardless of day or time of event. The incident report for these incidents must be submitted within 6 hours of notification of an incident. *Kenco is required to report certain incidents to the local Occupational Safety and Health Administration (OSHA) office within eight hours of the incident.*
   - Immediately report to the scene of serious incidents, and when possible, incidents involving Kenco personnel resulting in damage or injury to non-Kenco vehicles and third party.
   - Obtain and submit an official police report to Risk Management within 5 days of the accident. If the police report is not available after 5 days, notify Risk Management of the report status.
   - Secure repair estimates and/or make a vehicle or other Kenco property available for inspection by the insurance adjuster.
   - Correct unsafe conditions or actions that contributed to the incident as appropriate and report any and all corrections to Risk Management utilizing the HR OFI Procedures if appropriate.
   - Assure that emergency equipment used in the incident for which Kenco is responsible has been replaced or returned to normal operating conditions.
   - Ensure that associates (current and new hires) are aware of and understand this policy, the reporting requirements and their responsibilities.
   - Review all incident reports that occur at their site(s).

   **Note:** A Post Incident Drug Screen is required when an employee is injured due to an on-the-job injury or when any property is damaged. The employee must undergo an acceptable alcohol and/or drug screen within 24 hours of the injury/property damage.
   **Due to privacy laws, *Canadian facilities are exempt from Post Incident Drug Screens*.**
   **ALL** incidents must be reported in the Risk Management Information System.

## 6.0 REFERENCES

RMIS Incident Reporting Instructions – KencoConnection, Risk Management, Business Insurance and Claims Section
(CP-RM-7.5.1.302)/CP-DOT-805 – CMV Accident Procedure
(CP-RM-6.2.100)/CP-BIC-801 – Workers' Compensation Procedure
CP-SH-819 – Incident Investigation & Root Cause Analysis Procedure
CP-OP-7.5.4 006 – Procedure for Inventory Control

## 7.0 HISTORY

| Revision Number | Date | Description of Revision |
|---|---|---|
| 00 | 5/22/2014 | Complete Revision – This document replaces CP-RM-6.2.101 Rev. 00 |
| 01 | 9/9/14 | Add language under "Note" for Canadian law |
| | | |

*Proprietary Information - Kenco*

November 22, 2013
Page 12

does not produce any notes or other documentation pertaining to the alleged meeting. Ms. McCurry is an HR Clerk employed at the Mars facility;[12] she reports to Len Szplett, Office/HR Manager at the facility. Ms. McCurry does not remember a specific date, but she confirms that Ms. Madison spoke to her on one occasion about some frustrations she was having. In particular, Ms. Madison told Ms. McCurry that she was concerned about her ability to convey to Mr. Walsh what she needed in order to do her job. She also stated that she would ask for certain things to be done by various people and that she was not getting the results she was looking for. Pointedly, Ms. Madison never said she felt she was being discriminated against on any basis, and she specifically told Ms. McCurry that she did not want her to do anything. Thus, Ms. McCurry never told anyone at Kenco about her conversation with Ms. Madison, including Mr. Walsh, Ms. Hise, or Ms. Fowler.

Based on the above, Kenco denies that Ms. Madison engaged in protected activity. While she apparently spoke with Ms. McCurry about some workplace issues she felt she was having, she never claimed discrimination and she never stated that she felt she was having these issues because she was Black or female.

Even if Ms. Madison's conversation with Ms. McCurry could be viewed as protected activity, however, Mr. Walsh, Ms. Hise, and Ms. Fowler – the three individuals involved in the decision to place Ms. Madison on a PIP and/or to ultimately terminate her employment – were completely unaware of the conversation. It is axiomatic that there can be no retaliation if the decision makers were unaware of the alleged protected activity. Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004) ("The key inquiry in determining whether there is a causal connection . . . is whether [the decision maker] was aware of the allegations of discrimination at the time of her decisions to place [plaintiff] on a PIP and terminate her employment; absent such knowledge, there can be no causal link between the two."); Tomanovich, 457 F.3d at 668 (plaintiff's claim of retaliation failed where there was no evidence that company was aware of complaints); Miller, 203 F.3d at 1008 ("an employer cannot retaliate when it is unaware of any complaints"). Further, it is not sufficient that a decision maker could have or should have had knowledge of an alleged complaint; only actual knowledge will suffice. Luckie, 389 F.3d at 715; Tomanovich, 457 F.3d at 668.

While Ms. Madison may argue that, despite this absence of knowledge on the part of Ms. Hise, Mr. Walsh, and Ms. Fowler, she can still establish a claim using the indirect method of proof, under this method, she must still show that she engaged in protected activity, that she was satisfactorily performing the functions of her job, and that similarly situated individuals were treated differently. As set for above and in paragraphs II.B.1 and 2, Ms. Madison cannot establish any of these elements. Her claim of retaliation must, therefore, fail.

**EXHIBIT 31**

---

[12] As an HR Clerk, Ms. McCurry's position was predominately clerical in nature. She is responsible for, among other things, processing payroll, maintaining personnel files, entering new hire information into the system, administering benefit information, etc. A copy of her job description is attached hereto as Exhibit 26.

Charge No. 2014CF0475
Page 2

ANSWER:   A position statement will be submitted setting forth Kenco's response to the
Complainant's allegations.  Individuals with direct knowledge of the allegations include:

> Kelvin Walsh
> General Manager
> c/o Miller & Martin PLLC
> Suite 1000, Volunteer Building
> 832 Georgia Avenue
> Chattanooga, TN 37402
> 423-756-6600

> Paula Hise
> Vice President of Operations
> c/o Miller & Martin PLLC
> Suite 1000, Volunteer Building
> 832 Georgia Avenue
> Chattanooga, TN 37402
> 423-756-6600

> Len Szplett
> Human Resources Representative
> c/o Miller & Martin PLLC
> Suite 1000, Volunteer Building
> 832 Georgia Avenue
> Chattanooga, TN 37402
> 423-756-6600

> Tammi Fowler
> Senior Manager of Employee Relations
> c/o Miller & Martin PLLC
> Suite 1000, Volunteer Building
> 832 Georgia Avenue
> Chattanooga, TN 37402
> 423-756-6600

> Brian Davis
> Director of Procurement
> c/o Miller & Martin PLLC
> Suite 1000, Volunteer Building
> 832 Georgia Avenue
> Chattanooga, TN 37402
> 423-756-6600

Charge No. 2014CF0475
Page 3

5.    If Complainant was employed at Respondent, provide the following personnel data on Complainant:

    a.    Date of hire; and name of person who made hiring decision.

    b.    Position(s) in which Complainant was employed. (If more than one, list each, and the relevant dates).

    c.    Copies of all other personnel records relevant to the charge, including, but not limited to:
        Job Description
        Work quality evaluations
        Work samples
        Attendance records
        Disciplinary records
        Any medical records describing Complainant's condition, if applicable.

ANSWER: The Complainant was hired by Kenco on May 13, 2013 to serve as its Quality Engineer at the Mars facility. A copy of her job description is attached hereto as Exhibit 2; a copy of her personnel file (with personal identifying numbers and information redacted), is attached hereto as Exhibit 3.

## On the Issue of Discharge:

A6.    Provide a detailed explanation of discharge procedures including but not limited to:

    a.    A copy of Respondent's discharge policy.

    b.    Appeal rights.

    c.    Availability of those procedures to employees.

    d.    Persons in authority to effect a discharge, either by final decision or recommendation.

    e.    The extent of union involvement.

    f.    Copies of all applicable collective bargaining agreements and company rules.

ANSWER: Kenco does not have a written discharge procedure applicable to exempt-level employees at the Mars facility. However, Kenco generally tries to work with exempt employees informally (through conversations, emails, etc.) to correct any performance or behavioral issues. If such informal guidance does not help, exempt employees are placed on a Performance Improvement Plan ("PIP") that sets forth the specific issues and expectations, provides guidance on how to correct the issues, and provides a time frame within which to do so. If the level of improvement sought is not met at the end of the PIP, the employee may be terminated. The exact process, however, is dependent on the circumstances, as some behavior can constitute grounds for immediate termination. There are no appeal rights and, there is no union or collective bargaining agreement in place. All terminations have to be approved by Human Resources.

11424849v1 05742-0254

10/8/2014

Kenco Group HR Contact List



THE
KENCO
CONNECTION



SEARCH

WHO WE ARE    LOCATIONS    HUMAN RESOURCES    CAREER OPPORTUNITIES    EMPLOYEE RELATIONS    PROCEDURES AND FORMS

Home » HR/Payroll

BEST PRACTICES
KENCO OPERATING SYSTEM
CONSUMMICATION
COMPANY DIRECTORY
HUMAN RESOURCES
INDUSTRIAL ENGINEERING
INFORMATION TECHNOLOGY
KENCO ACCOUNTING
QUALITY
REAL ESTATE/MAINTENANCE
RISK MANAGEMENT
LEARNING & DEVELOPMENT
TRANSPORTATION
OPERATIONAL EXCELLENCE
TRAINING INITIATIVE

Powered by SitePow⁵ from
Williams Web

**HR Contact List**

## *Corporate HR Contact List*

| Site Name | HR Site Contact | Email | Phone |
|---|---|---|---|
| American Standard | Fay Guy | fay.guy@kencogroup.com | (214) 630-9833 |
| Bo Park 3 | David Meredith | david.meredith@kencogroup.com | (423) 643-3494 |
| Bracco | Justin Levick | justin.levick@kancogroup.com | |
| Public CA | Kathie Harris | kathleen.harris@kencogroup.com | (909) 393-6371 |
| Carrier | Patty Bomlan | patty.bomlan@kencogroup.com | (423) 648-2710 |
| Cartech Allentown | Ceil Paules | cpaules@cartech.com | (610) 285-4785 |
| Cartech Bolingbrook | Bill Goodall | bill.goodall@kencogroup.com | (630) 771-1020 |
| Cartech Dundee | Susan Rich | srich@cartech.com | (734) 529-8935 |
| Cartech Hartsville | Elizabeth Lackey | elizabeth.lackey@kencogroup.com | (843) 335-5835 |
| Cartech Houston | Bill Goodall | bill.goodall@kencogroup.com | (630) 771-1020 |
| Cartech Rancho | Mama Rivas | mrhas@cartech.com | (909) 476-4000 |
| CH1 TN | David Meredith | david.meredith@kencogroup.com | (423) 643-3494 |
| CH7B TN | David Meredith | david.meredith@kencogroup.com | (423) 643-3494 |
| CH8D TN | | | |
| Dupont Live Oak TX | Matt Myers | matt.myers@kancogroup.com | (409) 735-8193 |
| Electrolux Asheville | Zarella Umunaga | zarella.umunaga@kencogroup.com | (828) 687-8537 |
| Electrolux Dallas | Nickie Shaw | nickie.a.shaw@electrolux.com | (214) 623-0635 |
| Electrolux FL | Pete Bradley | kencogroup.com | |
| Electrolux GA | Liz Ferguson | liz.ferguson@kencogroup.com | (770) 210-8183 |
| Electrolux Nashville | Alicia Kennedy | alicia.kennedy@kencogroup.com | |
| Keurig Green Mountain NJ | Tamika Still | tamika.still@kencogroup.com | (609) 208-2828 |
| Keurig Green Mountain TN | Jai Greer | jai.greer@kencogroup.com | |
| GPI M | Chuck Cobb | charles.cobb@kencogroup.com | (910) 272-0211 |
| GPI NC | Ann Baker | ann.baker@kancogroup.com | (910) 272-0211 |
| GSK Fresno | Jessie Lopez | jesse.m.lopez@gsk.com | (559) 237-2651 |
| GKS Knoxville | Rob Greene | robert.z.greene@gsk.com | (865) 558-3405 |
| GSK Memphis | Juanita Easson | juanita.a.eason@gsk.com | (901) 312-3724 |
| GSK Zebulon | Dan Hagwood | dan.c.hagwood@gsk.com | (919) 269-1260 |
| GSK VA | La'Dei Cooper | la'del.m.cooper@gsk.com | (804) 518-4852 |
| GSK York | Linda Becker | linda.a.becker@gsk.com | (717) 268-0366 |
| Haier CA | Michaele Miller | michaele.miller@kencogroup.com | (909) 356-7635 |
| Haier GA | Belinda Myers | belinda.myers@kencogroup.com | (912) 851-2099 |
| Haier NJ | Jim Rickey | jim.rickey@kancogroup.com | |
| Honeywell | Steve Raso | stephen.raso@kencogroup.com | |
| Invista Camden | Susan Craig | sh.craig@invista.com | (803) 713-3935 |
| Invista TN | Suzanne Carter | suzanne.carter@invista.com | (423) 629-7357 |
| Invista Seaford | Scoil Pickinpaugh | scott.a.pickinpaugh@invista.com | (302) 629-1585 |
| Invista Waynesboro | Mary Fox | mr.fox@invista.com | (540) 949-2972 |
| Keurig CA | Candace Rives | candace.rives@kencogroup.com | (909) 393-6371 |
| Kids 2 | | | |
| KM Logistics (Cummins) | Norm Bresemann | norm.bresemann@kancogroup.com | (901) 548-5600 |
| KMHS Fleet Services | Eugene Kilgore | eugene.kilgore@kancogroup.com | (423) 643-3322 |
| Kohler CA | Karina Navarro | karina.navarro@kancogroup.com | (909) 890-4291 |
| Komatsu | Dan Sivley | dsivley@komatsuna.com | (423) 755-9656 |
| KTL AL | Suzanne Little | suzanne.little@kencogroup.com | (256) 464-6462 |

Exhibit 32

10/8/2014

## Kenco Group HR Contact List

| | | | |
|---|---|---|---|
| KTL Corporate | Ryan Taylor | ryan.taylor@kencogroup.com | (423) 643-3522 |
| KTL FL WP | Eugene Kilgore | eugene.kilgore@kencogroup.com | (423) 643-3322 |
| KTL GA | Donna Simmons | kencogroup.com | |
| KTL GA WP | Eugene Kilgore | eugene.kilgore@kencogroup.com | (423) 643-3322 |
| KTL Ralston OH | Eugene Kilgore | eugene.kilgore@kencogroup.com | (423) 643-3322 |
| KTL OH WP | Eugene Kilgore | eugene.kilgore@kencogroup.com | (423) 643-3322 |
| KTL TN | Linda Smith | linda.smith@kencogroup.com | (423) 643-3601 |
| KTL TX WP | Eugene Kilgore | eugene.kilgore@kencogroup.com | (423) 643-3322 |
| KTM Freight Brokerage | John Conrad | john.conrad@kencogroup.com | (423) 643-3601 |
| KTM Freight Services | Turney Thompson | turney.thompson@kencotrans.com | (423) 894-4622 |
| KTM UT | Turney Thompson | turney.thompson@kencotrans.com | (423) 894-4622 |
| KTS Trucking Nashville | Edwin Harrison | edwin.harrison@kencogroup.com | (615) 252-8976 |
| KTS Trucking Chattanooga | Kim Cordell | kim.cordell@kencogroup.com | (423) 643-3472 |
| KTS Trucking SLC UT | | | |
| Mars Montano | Edith McCurry | edith.mccurry@kencogroup.com | (615) 468-9999 |
| MJN MV | Sheryl Richardt | sheryl.richardt@kencogroup.com | (812) 833-3417 |
| MJN Zeeland | Sheryl Richardt | sheryl.richardt@kencogroup.com | (812) 833-3417 |
| Ralston CA | Claudia Moreno | claudia.moreno@kencogroup.com | (909) 335-3415 |
| Ralston OH | Teresa Cramer | teresa.cramer@kencogroup.com | (614) 409-8754 |
| SLC Public | | | |
| Sealed Air Bethlehem | Colleen Shields | colleen.shields@kencogroup.com | |
| Sealed Air Dallas | | | |
| Sealed Air Houston | | | |
| Sealed Air Reading | Colleen Shields | colleen.shields@kencogroup.com | |
| Sealed Air SC | | | |
| Steelcase CA | | | |
| Steelcase WA | Kristine Withers | kristine.withers@kencogroup.com | |
| Stryker | Jill Tooman | jill.tooman@kencogroup.com | (269) 276-4116 |
| USG MA | Bill Irwin | bill.irwin@kencogroup.com | (978) 772-1100 |
| USG NJ | Elmer Cherry | elmer.cherry@kencogroup.com | (732) 326-1153 |
| Utah Public | | | |
| Valeant (VPI) | Astrid Restrepo | astrid.restrepo@kencogroup.com | (423) 648-9383 |
| WP McDonough | Shawn Brown | shawn.brown@kencogroup.com | (770) 288-4857 |
| WP Orlando | Tammie Tate | tammie.tate@kencogroup.com | (407) 812-0548 |
| WP Wilmer | Tyler Wood | tyler.wood@kencogroup.com | (972) 525-3850 |

Payroll | Benefits - new

This page was last updated on Mon Aug 25, 2014.

Powered by SiteNow™ from Volkams Web



**KENCO**

**Edith McCurry**
HR Administrator

Phone    815-468-9999 Ext. 464
Fax       815-468-2468
edith.mccurry@kencogroup.com

Kenco Logistic Services
1125 Sycamore Street | Manteno, IL 60950

 

## Brown, Laveppia J.

**From:** Karen Smith <ksmith@millermartin.com>
**Sent:** Friday, March 21, 2014 11:40 AM
**To:** Brown, Laveppia J.
**Subject:** Re: Madison v. Kenco

In addition to Kelvin Walsh and Tammi Fowler, Len Szplett and Edith McCurry will also attend. Thank you.

Sent from my iPhone

On Mar 21, 2014, at 10:56 AM, "Brown, Laveppia J." <Laveppia.J.Brown@Illinois.gov> wrote:

> Good morning,
>
> Please advise who will be in attendance for the conference scheduled for April 2nd thanks.

### Karen M. Smith
### Miller & Martin PLLC

Suite 1000 Volunteer Bldg.
832 Georgia Avenue
Chattanooga, TN 37402
Phone (423) 785-8209
Fax (423) 321-1565

> **From:** Karen Smith [mailto:ksmith@millermartin.com]
> **Sent:** Tuesday, March 18, 2014 4:16 PM
> **To:** Brown, Laveppia J.
> **Subject:** Re: Madison v. Kenco
>
> Ms. Brown:
>
> This will confirm that this hearing has been rescheduled for April 2 at 3:00pm. Again, I apologize for the inconvenience and appreciate the accommodation.
>
> Sent from my iPhone
>
> On Mar 18, 2014, at 7:39 AM, "Karen Smith" <ksmith@millermartin.com> wrote:
>
>> Ms. Brown:

1

Exhibit 33

This is a follow up to the voice message I left for you earlier today. I truly apologize for the inconvenience, but please let me know if we can reschedule today's 1:00pm hearing. I have apparently come down with a stomach bug and I do not believe I would be able to sit through the hearing. I also do not want to pass this on to others. Further, in speaking with one of our witnesses this morning, Tammi Fowler, she has bronchitis and can hardly speak. Thus, if we can pick another date, it would be greatly appreciated. We can also make sure Ms. McCurry and Mr. Szplett are available at that time. Thank you for your understanding and cooperation.

Sent from my iPhone

On Mar 17, 2014, at 4:44 PM, "Brown, Laveppia J." <Laveppia.J.Brown@Illinois.gov> wrote:

> I will also need to interview Edith McCurry since Complainant has alleged that she reported unlawful discrimination to her. Thanks.


**Karen Smith** - Ext. 209
Member
Chattanooga Office


**Karen M. Smith**
**Miller & Martin PLLC**

Suite 1000 Volunteer Bldg.
832 Georgia Avenue
Chattanooga, TN 37402
Phone (423) 785-8209
Fax (423) 321-1565

**CONFIDENTIALITY NOTICE**
The information contained in this e-mail message is legally privileged and confidential, and is intended only for the use of the addressee. If you are not the intended recipient, please be aware that any dissemination, distribution or copy of this e-mail is prohibited. If you have received this e-mail in error, please immediately notify us by reply e-mail and delete this message and any attachments. Thank you.

Please also advise us immediately if you or your employer does not consent to receipt of Internet e-mail for confidential messages this kind.



ILLINOIS DEPARTMENT OF

**Human** Rights

Bruce Rauner, Governor
Janice Glenn, Acting Director

## MARY D. MADISON V. KENCO LOGISTIC SERVICES
## IDHR CHARGE NO.: 2014CF0475

Enclosed are true and correct copies of documents from the Illinois Department of Human Rights file, made and kept in the ordinary course of business, regarding the above-referenced charge filed with the Department.

YOLANDA G. GODWIN
FREEDOM OF INFORMATION OFFICER

DATE:

SUBSCRIBED and SWORN to before me

THIS 1st DAY of September, 2016.

NOTARY PUBLIC

> OFFICIAL SEAL
> DONNA M EVANS
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:06/03/18

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (217) 785-5125. Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

RE: Employee Morris Tyson status

## RE: Employee Morris Tyson status

Moore, Suzanne

**Sent:** Thursday, August 22, 2013 8:59 AM
**To:** Phillips, Cathy; Szpiett, Len
**Cc:** McCurry, Edith

I can certainly set him up using a Medical Personal Leave of Absence which gives the employee 30 days unpaid leave. Throughout our interactive Process we review Physician's Statements to determine the timeframe we can continue to offer job protected coverage.
If you can send me copy of his Job Description I can mail him a packet for his Physician to fill out.
We will notify you when a determination is made about the length of time he will be covered and when we will reassess the time he would need off.

Please let me know if you have any questions during this process.

Thank you,

Suzanne Moore
Benefits Administrator
423.643.3415

**From:** Phillips, Cathy
**Sent:** Wednesday, August 21, 2013 6:43 PM
**To:** Szpiett, Len
**Cc:** McCurry, Edith; Moore, Suzanne
**Subject:** RE: Employee Morris Tyson status

Len,

We have a 30 day personal leave of absence that can be utilized in this situation. Suzanne will be in touch with you tomorrow (Thursday) to discuss this and also the option of extending the leave beyond 30 days if necessary (by utilizing the Interactive Process under ADAA).

*Cathy*

Cathy Phillips
Benefits Manager
Phone: 423-643-3335

Kenco Management Services, LLC

**From:** Szpiett, Len
**Sent:** Monday, August 19, 2013 3:19 PM
**To:** Phillips, Cathy
**Cc:** McCurry, Edith
**Subject:** Employee Morris Tyson status

Hello Cathy, we have an employee, one of our spotters, Morris Tyson, who's gone through his 12 weeks of FMLA

**Exhibit 35**

https://oma.kencogroup.com/owa/?ae=Item&t=IPM.Note&id=RgAAAADQ2SjZLeDxS4y...   8/22/2013

RE: Employee Morris Tyson status

with the Hartford.He sustained injuries to both his hands and has been off since 5-21-13. I'm inquiring as to what we can do to keep Morris in an unpaid leave category? He has a 1-19-2004 hire date that carried over with him from 4T's to Kenco in the needed spotter position.

Can you advise what our options may be ? We need to advise Morris what his status is with the Kenco company. Since this happenned 30 days after transition to Kenco, he still has his 60 days to complete to qualify for Cigna heath coverage.

Can you please let us know what we can do  for him?

Thank you.
Len Szplett
Kenco Logistic Services
Mars-Manteno DFC#US24
815-468-4488

KENCO 000097

Tammi Fowler | LinkedIn



≡ Search for people, jobs, companies, and more...    Q  Advanced

Illinois Lawyer Warned: Quickly view new legal cases in your area. Join now! | Read More »

**Tammi Fowler**
Director of Human Resources at Covenant Transport
Chattanooga, Tennessee Area · Transportation/Trucking/Railroad

Previous  Kenco Management Services, LLC, NK Lawn & Garden
Company, Bowman & Associates, Inc.

Education  The University of Tennessee at Chattanooga

Send Tammi InMail

283
connections

https://media.licdn.com/mpr/mpr/shrink/55688

Background

Experience

**Director of Human Resources**
Covenant Transport
January 2015 - Present (1 year 5 months) · Chattanooga, Tennessee Area

**Senior Manager of Employee Relations**
Kenco Management Services, LLC
March 2009 - January 2015 (5 years 11 months) · Chattanooga, Tennessee Area

Responsibilities include management of the Employee Relations function for the five Kenco Companies, providing interpretation and advice to HR Managers and Site Managers on employment law, organization policy and overall employee relations issues, conducting investigations related to claims of harassment or discrimination and recommending steps for resolution, reviewing termination requests and providing management with appropriate action plans, and educating Managers regarding the spirit and intent of laws, regulations and company policies.

**Human Resources Coordinator**
NK Lawn & Garden Company
January 2000 - March 2005 (5 years 3 months)

Responsible for all plant staffing which included recruiting, interviewing, and hiring approximately 200 seasonal employees on an annual basis, ensured that all employment activities met EEO and Affirmative Action goals, developed the job posting procedure, developed and directed all training activities including orientation, supervisory training and safety training, maintained EEO logs and records, OSHA logs and reporting, administered the Workers' Compensation Program, maintained attendance records for all regular, full-time and seasonal employees, administered disciplinary action, timekeeping for hourly employees, policy development, coordinated The United Way and American Heart Association campaigns, and developed and maintained positive employee relations.

**Assistant Manager**
Bowman & Associates, Inc.
March 1988 - December 1999 (11 years 10 months)

Responsible for purchasing, installing and maintaining the computer system, supervising weekly payroll for approximately 200 employees, administering the employee health insurance plan, preparing government reports including FICA, Federal Income Tax, State and Federal Unemployment, and Workers' Compensation, developed spreadsheets and databases for all in-house reporting, served as a consultant performing outside computer contract work including production planning and inventory control, assisted a controller in inventory reconciliation, and assisted in the production of an annual report for a local manufacturer.

Skills

**Exhibit 37**

**BlueVine**
Say goodbye to net 30/60/90.

Join BlueVine and turn invoices into cash TODAY!

**People Also Viewed**

**John Fairchild**
Vice President - Human Resources at Covenant Transport

**Kendra Lee**
Human Resource Manager at Covenant Transport

**David Parker**
CEO at Covenant Transport

**Kendra Donahoo**
Senior Human Resources Generalist

**Rob Hatchett**
Vice President of Recruiting at Covenant Transport

**Susan Denman**
Vice President, Human Resources at Kenco Group, Inc.

**Rachel Hatchett**
Director of Operations

**Emily Corum**
Human Resources Generalist at Covenant Transport

**Jason Pendleton**
Director of Human Resources at Kenco Group

**Erica Thurman, MS, SPHR, SHRM-SCP**
Human Resources Generalist at Tennessee Valley Authority

**How You're Connected**

You

Beth Lassen in Wales

Tammi Fowler | LinkedIn



Top Skills

| 51 | Employee Relations |
| 37 | Human Resources |
| 22 | Training |
| 17 | Personnel Management |
| 17 | Deferred Compensation |
| 17 | Interviews |
| 14 | New Hire Orientations |
| 13 | Process Improvement |
| 12 | Recruiting |
| 9 | Hiring |

Tammi also knows about

| 9 | Management | 8 | Team Building | 7 | Succession Planning | 7 | Onboarding |
| 6 | Performance Management | 6 | Payroll | 5 | HRIS | 5 | Workforce Planning |
| 5 | Leadership | 4 | Employment Law | 4 | Applicant Tracking | 4 | PeopleSoft |
| 3 | Employee Benefits | 3 | Benefits Administration | 3 | Organizational | See 15 |

Education

**The University of Tennessee at Chattanooga**
B.S., Industrial Management
1981 - 1983

**University of Tennessee-Knoxville**
Bachelor of Science (B.S.), Bachelor of Science
1975 - 1978

Additional Info

· Interests

University of Tennessee Sports, Gardening

Organizations

**Society for Human Resources Management**
Starting March 2005

**Additional Organizations**
SHRM, SHRM Chattanooga

Recommendations

Given (3)

In Common with Tammi

Tammi

2

Skills & Expertise

People Similar to Tammi

Renea Koenig, PHR  3
Human Resources Director at Hogan Service Connect



**Kim Shamblin**
Workers' Compensation & Safety Specialist

❝ I have worked with Kim for the past 5 years and am impressed by her knowledge of Safety and Workers' Compensation. She presents herself in a professional manner and can always site policy or law to back up her recommendations. She is the one in her department that I always go to first when I need assistance and she is quick to respond and always pleasant to deal with I... **more**

June 29, 2012, Tammi worked with Kim at Kenco Management Services

**Anita Brandenburg**
Director of Human Resources

❝ Anita is the consummate Human Resource professional. I first met her while she was in HR at Komatsu. The company I worked at the time provided temporary employees for Komatsu. She was a great resource for information: very quick to respond to any requests and was always willing to point me in the right direction when I needed assistance.

I also worked with Anita... **more**

January 24, 2011, Tammi was a consultant or contractor to Anita at Benchmark Intorman... International

**Edie Benchabbat**
Career Management Consultant

❝ Edie helped some of my company's employees who were being downsized create resumes and prepare for job hunting and future job interviews. The majority of these employees had been with us long-term and had not looked for employment for many years and they did not have a clue as to what to do. They were also afraid. Edie was very personable which helped to ease calm their... **more**

May 19, 2010, Tammi was Edie's client

Following

KENCO

Covenant Transport

**Kenco Group**
Logistics and Supply Chain

**Covenant Transport**
Transportation/Trucking/Railroad

Schools

**The University of Te...**
Chattanooga, Tennessee Area

**University of Tennes...**
Knoxville, Tennessee Area

Help Center   About   Careers   Advertising   Talent Solutions   Sales Solutions   Small Business   Mobile   Language   Upgrade Your Account
LinkedIn Corporation © 2016   User Agreement   Privacy Policy   Ad Choices   Community Guidelines   Cookie Policy   Copyright Policy   Send Feedback

## Rebekah Funk

| | |
|---|---|
| **From:** | Coffey, Robert |
| **Sent:** | Wednesday, June 04, 2014 3:17 PM |
| **To:** | Helveston, Andrew; Tumpane Jr., Bill; Friker, Kevin; Weisel, Gabi; Terrell, Larry; Charboneau, Meghan; Pacchioli, Michael; Wasik, Toni; Search, Jeremy; Bush, Zakhary; Maurer, Melody; Bennett, Keith; Iuvone, Anthony; Lella, John; Waguespack, David; Knies, Ingrid; Latham, Kimberly; Haywood, St Clair; Martinez, Michael; Maggio, Jennifer |
| **Cc:** | Moore, Todd |
| **Subject:** | FW: Personnel Change Announcement |
| **Importance:** | High |

Please see below for the Personnel Change Announcement for the Manteno site and forward to any other contacts that you feel are appropriate.

Regards,

**Robert Coffey**

**Mars Chocolate, North America**
**Regional Distribution Manager - Midwest**
**Chicago Plant**
**2019 North Oak Park Ave,**
**Chicago, IL 60707**



**M:** 773-892-7735
**E:** robert.coffey@effem.com

**From:** Hise, Paula [mailto:Paula.Hise@Kencogroup.com]
**Sent:** Wednesday, June 04, 2014 12:36 PM
**To:** Coffey, Robert
**Cc:** Moore, Todd; Jabaley, David
**Subject:** Personnel Change Announcement

Good afternoon,
Effective immediately, Kelvin Walsh is no longer serving in the role of General Manager at the Manteno site. We are currently recruiting for a permanent replacement. In the meantime, David Jabaley will be acting as the interim site General Manager. Please work directly with David related to any projects or activities that might have otherwise gone to Kelvin. Additionally, please circulate this announcement to the applicable contacts within the Mars organization. David's email address is david.jabaley@kencogroup.com and his cell number is 423-593-6045.

Thanks, and we will keep you informed of our progress in recruiting a permanent replacement for this open position.

Paula Hise
Group VP, Health & Personal Care
2001 Riverside Drive • Chattanooga, TN 37406
Office: 423-643-3748 • Mobile: 423-290-3749

**Exhibit 39**

DEF001037

**Rebekah Funk**

| | |
|---|---|
| **From:** | Coffey, Robert |
| **Sent:** | Thursday, June 05, 2014 5:21 PM |
| **To:** | Moore, Todd; 'david.jabaley@kencogroup.com' |
| **Subject:** | RE: Day 2 |

Seems to be going well- Mike and David are in a meeting now and had spent a lot of time on the floor with the associates- We also met with Russ and the Co-Pack team to discuss PIPO, Re-routes and begun to outline a game plan.

Regards,

Robert Coffey

Mars Chocolate, North America
Regional Distribution Manager - Midwest Chicago Plant
2019 North Oak Park Ave,
Chicago, IL 60707

M: 773-892-7735
E: robert.coffey@effem.com

-----Original Message-----
From: Moore, Todd
Sent: Thursday, June 05, 2014 4:10 PM
To: 'david.jabaley@kencogroup.com'; Coffey, Robert
Subject: Day 2

David-
How is the site today? Moral? Productivity?
Todd

DEF001055



ILLINOIS DEPARTMENT OF
# Human Rights

Bruce Rauner, Governor
Rocco J. Claps, Director

## HENRY VERNON V. KENCO LOGISTIC SERVICES
## IDHR CHARGE NO.: 2015CF1315

Enclosed are true and correct copies of documents from the Illinois Department of Human Rights file, made and kept in the ordinary course of business, regarding the above-referenced charge filed with the Department.

YOLANDA G. GODWIN
FREEDOM OF INFORMATION OFFICER

5/3/2016
DATE

SUBSCRIBED and SWORN to before me

THIS _3rd_ DAY of _May_ , 2016.

_Donna M. Evans_
**NOTARY PUBLIC**

OFFICIAL SEAL
DONNA M EVANS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/03/18

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (217) 785-5125, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

| Name | Ethn | Job | re Date | | Termination Reason |
|------|------|-----|---------|--|------------------|
| Walsh, Kelvin J. | 1.- White | GM1 - General Manager I | 6/4/2014 | 6/4/2014 | Performance/Quality |
| Contreras Jr., Joel | 1 - White | SUP1 - Supervisor I | 4/21/2013 | 1/15/2014 | Abandoned Job |
| Hansen, Melissa M. | 1 - White | OM1 - Operations Manager I | 5/1/2014 | 12/19/2014 | Resigned without Notice |
| Manzello, Michael J. | 1 - White | OM1 - Operations Manager I | 7/1/2013 | 9/2/2014 | Performance/Quality |
| White, Thomas M. | 1 - White | SUP1 - Supervisor I | 4/21/2013 | 4/18/2014 | Resigned with Notice |
| Whennen, Shaun O. | 1 - White | SYSANALY - Systems Analyst | 6/11/2013 | 8/14/2014 | Resigned without Notice |
| Ahrens, Jeremy M. | 1 - White | WAREHS - Warehouse Worker | 10/29/2013 | 8/11/2014 | Abandoned Job |
| Brooks, Dylan | 2 - Black or African American | WAREHS - Warehouse Worker | 6/16/2014 | 10/13/2014 | Violation of Policy |
| Carrell, Daron L. | 2 - Black or African American | WAREHS - Warehouse Worker | 12/18/2013 | 5/12/2014 | Dissatisfied with Job |
| Cross, Thomas A. | 1 - White | SPOT - Spotter | 6/15/2013 | 5/29/2014 | Resigned with Notice |
| Crouch, Johnathon A. | 1 - White | WAREHS - Warehouse Worker | 8/30/2013 | 9/4/2014 | Resigned without Notice |
| Dansby Sr., Dion C. | 2 - Black or African American | SPOT - Spotter | 4/21/2013 | 7/17/2014 | Resigned with Notice |
| Davis, Tracy R. | 2 - Black or African American | WAREHS - Warehouse Worker | 4/21/2013 | 5/19/2014 | Attendance |
| Franco, Jose A. | 3 - Hispanic or Latino | WAREHS - Warehouse Worker | 4/21/2013 | 8/22/2014 | Resigned with Notice |
| Gifford, Josiah M. | 1 - White | WAREHS - Warehouse Worker | 4/21/2013 | 8/11/2014 | Resigned with Notice |
| Henry, Vernon | 2 - Black or African American | WAREHS - Warehouse Worker | 4/14/2014 | 10/14/2014 | Violation of Policy |
| Jasso, Carlos | 3 - Hispanic or Latino | WAREHS - Warehouse Worker | 4/21/2013 | 7/31/2014 | Abandoned Job |
| Kennedy, Jowan C. | 2 - Black or African American | WAREHS - Warehouse Worker | 6/12/2013 | 9/17/2014 | Resigned with Notice |
| Lambert, Preston A. | 1 - White | LEAD - Lead | 4/21/2013 | 9/5/2014 | Retirement/Early Retire |
| Marksteiner, Scott F. | 1 - White | LEAD - Lead | 4/21/2013 | 12/17/2014 | Violation of Policy |
| Monstwillo, Peter L. | 1 - White | WAREHS - Warehouse Worker | 4/14/2014 | 12/3/2014 | Abandoned Job |
| Morton, Douglas E. | 1 - White | WAREHS - Warehouse Worker | 3/5/2014 | 7/14/2014 | Abandoned Job |
| Munoz, Martha | 3 - Hispanic or Latino | WAREHS - Warehouse Worker | 10/2/2014 | 10/3/2014 | Failed background check |
| Reyes-Tirado, Jose E. | 3 - Hispanic or Latino | WAREHS - Warehouse Worker | 9/23/2014 | 10/3/2014 | Performance/Quality |
| Richardson, Michael J. | 1 - White | WAREHS - Warehouse Worker | 7/7/2014 | 7/11/2014 | Abandoned Job |
| Rockett, Samuel K. | 2 - Black or African American | WAREHS - Warehouse Worker | 3/4/2014 | 7/13/2014 | Resigned with Notice |
| Samuels, Denard | 2 - Black or African American | WAREHS - Warehouse Worker | 10/30/2013 | 8/25/2014 | Accept Other Employment |
| Schultz, Chad E. | 1 - White | WAREHS - Warehouse Worker | 7/16/2013 | 2/6/2014 | Attendance |
| Spell II, John M. | 1 - White | LEAD - Lead | 10/14/2013 | 3/30/2014 | Resigned with Notice |
| Toledo, Miguel A. | 3 - Hispanic or Latino | WAREHS - Warehouse Worker | 4/21/2013 | 4/24/2014 | Personal Reasons |
| Tolliver, Cortney E. | 1 - White | WAREHS - Warehouse Worker | 7/7/2014 | 7/11/2014 | Abandoned Job |
| Villarreal, Francisco | 3 - Hispanic or Latino | WAREHS - Warehouse Worker | 7/7/2014 | 10/13/2014 | Violation of Policy |
| Walker, Jason K. | 1 - White | WAREHS - Warehouse Worker | 12/16/2013 | 3/5/2014 | Attendance |
| Williams III, Edwin W. | 1 - White | WAREHS - Warehouse Worker | 7/22/2013 | 1/12/2014 | Accept Other Employment |

VR

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

In the Matter of:

LEONARD A. SZPLETT,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Complainant,　　　　　　　)
　　　　　　　　　　　　　　　　　)
And　　　　　　　　　　　　　　　)　　IDHR Charge No. 2015CA3083
　　　　　　　　　　　　　　　　　)
KENCO LOGISTIC SERVICES, LLC,　　)
　　　　　　　　　　　　　　　　　)
　　　　Respondent.　　　　　　　　)

## VERIFIED RESPONSE

Comes now Respondent, Kenco Logistic Services, LLC ("KLS"), and responds to the Charge of Discrimination filed against it by Complainant Leonard A. Szplett, as follows:

I.　　A.　　ISSUE/BASIS – UNEQUAL TERMS AND CONDITIONS OF EMPLOYMENT, REVERSE DISCRIMINATION AND HARASSMENT DUE TO MY RACE-WHITE, MY AGE-OVER 40, MY SEX-MALE, AND IN RETALIATION

　　B.　　PRIMA FACIE ALLEGATIONS

　　　　1.　　The allegations contained in this paragraph are denied.
　　　　2.　　The allegations contained in this paragraph are denied.
　　　　3.　　The allegations contained in this paragraph are denied.
　　　　4.　　The allegations contained in this paragraph are denied.
　　　　5.　　The allegations contained in this paragraph are denied.
　　　　6.　　The allegations contained in this paragraph are denied.
　　　　7.　　KLS admits Tammi Fowler told Mr. Szplett and others not to discuss pending legal matters with anyone. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.
　　　　8.　　The allegations contained in this paragraph are denied.
　　　　9.　　KLS admits that it made changes to shift schedules during 2014. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.
　　　　10.　　The allegations contained in this paragraph are denied.
　　　　11.　　The allegations contained in this paragraph are denied.

Exhibit 40

12.     KLS admits that Paula Hise met with employees to inform them of the decision to let Kelvin Walsh go, and that she said she was sad for Mr. Walsh since he is a nice person. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

13.     The allegations contained in this paragraph are denied.

14.     KLS admits David Jabaley gave Mr. Szplett a mid-year evaluation in 2014 which indicated Mr. Szplett was below expectations and would need development in a number of areas. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

15.     KLS admits Mr. Szplett and Valerie Lilly were invited to work from 1:00 p.m. to 9:00 a.m. for one week in August of 2014 when KLS was promoting "around the clock leadership." They accepted. Other supervisors and managers worked off shift during the same week. To the extent inconsistent with these admissions, the allegations contained in this paragraph are denied.

16.     KLS admits Edith McCurry had a big problem getting payroll in on time. KLS admits there were some manual adjustments to payroll that were required from time to time when the clock did not capture employees' working time accurately. To the extent inconsistent with these admissions, the allegations contained in this paragraph are denied.

17.     KLS admits payroll ends and is due 5 hours later Monday morning. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

18.     The allegations contained in this paragraph are denied.

19.     KLS admits Mike Manzello was terminated on September 2, 2014. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

20.     KLS admits a new HR Manager position was posted on September 25, 2014. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

21.     KLS admits Tammi Fowler asked Mr. Szplett whether he paid Dana Woods during the time Mr. Woods was out for an unpaid, disciplinary suspension, and told him not to do it again. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

22.     KLS admits several employees were terminated for violating KLS's cell phone usage policy. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

23.     The allegations contained in this paragraph are denied.

24.     KLS admits Lori Varvel was hired as HR Manager on or around November 17, 2014, and that her salary was higher than Mr. Szplett's. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

25.     KLS admits that, while he was on medical leave, Mr. Szplett's office was temporarily moved to a cubicle next to the conference room. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

26.     The allegations contained in this paragraph are denied.

27.     KLS admits it lost the Mars contract. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

28.     The allegations contained in this paragraph are denied.

29.    KLS admits Mr. Szplett was not released to return to work by his physician on February 28, 2015. KLS is without sufficient information to admit or deny the remaining allegations contained in this paragraph, and therefore denies same.

30.    KLS admits Mr. Szplett was not paid for March of 2015. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

31.    The allegations contained in this paragraph are denied.

II.    A.    ISSUE/BASIS – FAILURE TO ALLOW DUTIES TO BE CONTINUED AS HR MANAGER DUE TO MY RACE-WHITE (REVERSE DISCRIMINATION), MY AGE-OVER 40, MY SEX-MALE, AND IN RETALIATION

    B.    PRIMA FACIE ALLEGATIONS

        1.    The allegations contained in this paragraph are denied.

III.    A.    ISSUE/BASIS – DEMOTION AND HARASSMENT DUE TO MY RACE-WHITE (REVERSE DISCRIMINATION), MY AGE-OVER 40, MY SEX-MALE, AND IN RETALIATION

    B.    PRIMA FACIE ALLEGATIONS

        1.    The allegations contained in this paragraph are denied.

        2.    KLS admits Lori Varvel's salary was higher than Mr. Szplett's. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

        3.    KLS admits that, while he was on medical leave, Mr. Szplett's office was temporarily moved to a cubicle next to the conference room. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

IV.    A.    RETALIATION DUE TO MY RACE-WHITE (REVERSE DISCRIMINATION), MY AGE-OVER 40, MY SEX-MALE, AND IN RETALIATION

    B.    PRIMA FACIE ALLEGATIONS

        1.    The allegations contained in this paragraph are denied.
        2.    The allegations contained in this paragraph are denied.
        3.    The allegations contained in this paragraph are denied.
        4.    The allegations contained in this paragraph are denied.
        5.    The allegations contained in this paragraph are denied.
        6.    KLS admits that Paula Hise met with employees to inform them of the decision to let Kelvin Walsh go, and that she said she was sad for Mr. Walsh since he is a nice person. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

        7.    KLS admits David Jabaley gave Mr. Szplett a mid-year evaluation in 2014 which indicated Mr. Szplett was below expectations and would need development in a number of areas. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

8.　　KLS admits Mr. Szplett and Valerie Lilly were invited to work from 1:00 p.m. to 9:00 a.m. for one week in August of 2014 when KLS was promoting "around the clock leadership." They accepted. Other supervisors and managers worked off shift during the same week. To the extent inconsistent with these admissions, the allegations contained in this paragraph are denied.

9.　　KLS admits Edith McCurry had a big problem getting payroll in on time. KLS admits there were some manual adjustments to payroll that were required from time to time when the clock did not capture employees' working time accurately. KLS admits payroll ends and is due 5 hours later Monday morning. To the extent inconsistent with these admissions, the allegations contained in this paragraph are denied.

10.　　KLS admits Tammi Fowler asked Mr. Szplett whether he paid Dana Woods during the time Mr. Woods was out for an unpaid, disciplinary suspension, and told him not to do it again. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

11.　　KLS admits a new HR Manager position was posted on September 25, 2014. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

12.　　KLS admits Lori Varvel was hired as HR Manager on or around November 17, 2014, and that her salary was higher than Mr. Szplett's. KLS admits that, while he was on medical leave, Mr. Szplett's office was temporarily moved to a cubicle next to the conference room. To the extent inconsistent with these admissions, the allegations contained in this paragraph are denied.

13.　　The allegations contained in this paragraph are denied.

14.　　KLS admits it lost the Mars contract. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

15.　　The allegations contained in this paragraph are denied.

V.　　A.　　COERCION DUE TO MY RACE-WHITE (REVERSE DISCRIMINATION), MY AGE-OVER 40, MY SEX-MALE, AND IN RETALIATION

　　B.　　PRIMA FACIE ALLEGATIONS

1.　　The allegations contained in this paragraph are denied.

2.　　The allegations contained in this paragraph are denied.

3.　　The allegations contained in this paragraph are denied.

4.　　The allegations contained in this paragraph are denied.

5.　　The allegations contained in this paragraph are denied.

6.　　Mary Madison has filed her own charges of discrimination, and so the IDHR is directed to KLS's responses.

7.　　Jacque Morrison has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

8.　　Nathan Doss has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

9.　　Vernon Henry has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

10.     (Dana Woods)  KLS is without sufficient information to admit or deny the allegations contained in this paragraph, and so they are denied.

11.     Scott Marksteiner has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

12.     Morris Tyson has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

13.     Nathan Doss has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

14.     The allegations contained in this paragraph are denied.

15.     The allegations contained in this paragraph are denied.

VI.     A.     AIDING AND ABETTING DUE TO MY RACE-WHITE (REVERSE DISCRIMINATION), MY AGE-OVER 40, MY SEX-MALE, AND IN RETALIATION

B.     PRIMA FACIE ALLEGATIONS

1.     The allegations contained in this paragraph are denied.

2.     The allegations contained in this paragraph are denied.

3.     The allegations contained in this paragraph are denied.

4.     The allegations contained in this paragraph are denied.

5.     The allegations contained in this paragraph are denied.

6.     The allegations contained in this paragraph are denied.

7.     Mary Madison has filed her own charges of discrimination, and so the IDHR is directed to KLS's responses.

8.     Jacque Morrison has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

9.     Nathan Doss has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

10.     Vernon Henry has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

11.     (Dana Woods) KLS is without sufficient information to admit or deny the allegations contained in this paragraph, and so they are denied.

12.     Anastasia Sandness has filed her own charges of discrimination, and so the IDHR is directed to KLS's responses.

13.     Scott Marksteiner has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

14.     Morris Tyson has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.

15.     KLS is without sufficient information to admit or deny the allegations contained in this paragraph, and so they are denied.

16.     The allegations contained in this paragraph are denied.

17.     The allegations contained in this paragraph are denied.

18.     The allegations contained in this paragraph are denied.

VII.     A.     WILLFUL INTERFERENCE DUE TO MY RACE-WHITE (REVERSE DISCRIMINATION), MY AGE-OVER 40, MY SEX-MALE, AND IN RETALIATION

     B.     PRIMA FACIE ALLEGATIONS

          1.     The allegations contained in this paragraph are denied.
          2.     The allegations contained in this paragraph are denied.
          3.     The allegations contained in this paragraph are denied.
          4.     The allegations contained in this paragraph are denied.
          5.     The allegations contained in this paragraph are denied.

VIII.     A.     CONSPIRACY DUE TO MY RACE-WHITE (REVERSE DISCRIMINATION), MY AGE-OVER 40, MY SEX-MALE, AND IN RETALIATION

     B.     PRIMA FACIE ALLEGATIONS

          1.     The allegations contained in this paragraph are denied.
          2.     Mary Madison has filed her own charges of discrimination, and so the IDHR is directed to KLS's responses.
          3.     Jacque Morrison has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.
          4.     Nathan Doss has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.
          5.     Vernon Henry has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.
          6.     (Dana Woods) KLS is without sufficient information to admit or deny the allegations contained in this paragraph, and so they are denied.
          7.     Scott Marksteiner has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.
          8.     Morris Tyson has filed his own charges of discrimination, and so the IDHR is directed to KLS's responses.
          9.     The allegations contained in this paragraph are denied.
          10.     The allegations contained in this paragraph are denied.
          11.     The allegations contained in this paragraph are denied.
          12.     The allegations contained in this paragraph are denied.

IX.     A.     HOSTILE WORK ENVIRONMENT DUE TO MY RACE-WHITE (REVERSE DISCRIMINATION), MY AGE-OVER 40, MY SEX-MALE, AND IN RETALIATION

     B.     PRIMA FACIE ALLEGATIONS

1.     The allegations contained in this paragraph are denied.

2.     The allegations contained in this paragraph are denied.

3.     The allegations contained in this paragraph are denied.

4.     The allegations contained in this paragraph are denied.

5.     The allegations contained in this paragraph are denied.

6.     KLS admits that it made changes to shift schedules during 2014. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

7.     KLS admits that Paula Hise met with employees to inform them of the decision to let Kelvin Walsh go, and that she said she was sad for Mr. Walsh since he is a nice person. To the extent inconsistent with this admission, the allegations contained in this paragraph are denied.

8.     The allegations contained in this paragraph are denied.

9.     The allegations contained in this paragraph are denied.

10.     The allegations contained in this paragraph are denied.

11.     The allegations contained in this paragraph are denied.

12.     The allegations contained in this paragraph are denied.

13.     The allegations contained in this paragraph are denied.

14.     The allegations contained in this paragraph are denied.

15.     The allegations contained in this paragraph are denied.

VERIFICATION

STATE OF TENNESSEE

COUNTY OF HAMILTON

Jay Elliott being first duly sworn, deposes and says that he is VP of Legal for Respondent; that he has read the foregoing verified response to the charge of discrimination; that he knows the contents thereof based on information obtained through discovery and investigative efforts; and that said response is true and correct to the best of his knowledge, information, and belief.

_____

Jay Elliott

SUBSCRIBED and SWORN to before me

This _20th_ day of _July_ , 201_5_

_____

Notary Public

My commission expires ___3/7/18___

Respectfully submitted,

Jay Elliott
Counsel for Kenco Logistics Services, LLC
2001 Riverside Drive
Chattanooga, TN 37406
(423) 643-3398


## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Verified Response to the charge of discrimination
was served upon:

Jordan T. Hoffman, P.C.
11528 S. Halsted
Chicago, IL 60620

Investigator John Detwiler
Illinois Department of Human Rights
100 W. Randolph Street, 10th Floor
Chicago, IL 60601-3391

By depositing same in U.S. Mail or Federal Express on the 20th day of July,
2015.

## Detwiler, John

| | |
|---|---|
| **From:** | Elliott, Jay <Jay.Elliott@Kencogroup.com> |
| **Sent:** | Tuesday, July 21, 2015 1:43 PM |
| **To:** | Detwiler, John |
| **Subject:** | FW: Szplett v. Kenco, IDHR # 2015CA3083 |
| **Attachments:** | Szplett Verified Response 7-20-15.pdf |

Can I e-mail you the position statement and response to the request for info/docs? Or do you need it mailed/federal expressed?

**From:** Elliott, Jay
**Sent:** Monday, July 20, 2015 4:33 PM
**To:** john.detwiler@illinois.gov
**Subject:** Szplett v. Kenco, IDHR # 2015CA3083

John – Attached is Kenco's Verified Response which I am also federal expressing to you today to arrive tomorrow. I would like to request a two-week extension of time to file the position statement and response to the questionnaire in the above-referenced matter. By my count, that makes the due date August 12, 2015. Please let me know if that is not acceptable. Thanks – Jay

**Jay Elliott**
Vice President – Legal
2001 Riverside Drive • Chattanooga, TN 37406
Office: 423-643-3398 • Mobile: 423-227-9182



**VOTE
KENCO
A TOP 3PL**
*We can't do it without you.*



**KENCO**

*The information contained in this electronic communication and any accompanying document is confidential and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this communication and all copies of it, including all attachments.*



| Document Number: CP-HR-1002 | Title: Exempt Hiring Procedure | | |
|---|---|---|---|
| Revision Date: 10/30/14 | | Revision #: 01 | Effective Date: 11/15/14 |

| Approval: Author, Date | Marti Ranova 10-30-14 |
|---|---|
| Approval: QC, Date 10·30·14 | Approval: Author Group, Date 10-31-14 |

## PURPOSE

This document defines Kenco's procedure for posting, recruiting and filling exempt-level positions.

## SCOPE

This procedure applies to all Kenco facilities that hire exempt-level employees. This procedure does not apply to the hiring of non-exempt employees.

## DEFINITIONS

N/A

## PROCEDURE

1. **Roles and Responsibilities**
   a. **Executive Management** – perform approval authority duties for job openings and responsible for nominating candidates for Vice President levels and above.

   b. **CFO** – performs approval authority duties as described in this procedure.

   c. **Kenco Management Services (KMS) – Director of Recruiting and Development** – performs approval authority duties throughout the exempt hiring process and responsible for the overall implementation and enforcement of this policy for the company.

   d. **KMS – Human Resources (HR) Recruiting Assistant** – performs duties outlined in this procedure to assure sites are notified of exempt job openings and that the exempt hiring process is followed through successful placement of a candidate.

   e. **KMS – Human Resources Employee Relations (ER) Administrative Assistant** – enters all exempt level background investigations into the company approved vendor's system.

   f. **EmployBridge Search (EBS) Recruiter** – provides third party recruiting services.

   g. **Hiring Manager** – person responsible for hiring at the site and responsible for following the exempt hiring process outlined in this procedure.

   h. **Site Human Resources (HR) Administrator** – responsible for posting all internal openings at the site, scheduling interviews when necessary, and arranging pre-employment drug screens. In Canada, no drug screens will be performed.

   i. **Site Management** – responsible for the overall implementation and enforcement of this policy at their assigned site(s). Performs duties as described in this procedure.

Exhibit 51



| Document Number: | Rev # | Title: |
|---|---|---|
| CP-HR-1002 | 01 | Exempt Hiring Procedure |

    j. **All Kenco Employees** – abide by the procedures outlined when applying for an exempt level job posting.

2. The KMS-HR Recruiting Assistant is responsible for creating all exempt-level job postings.

3. Exempt employees must have twelve (12) months tenure in their current position to be considered for positions up to and including the Director level. Exceptions must be approved by the Group President or Senior Vice President and the Director of Recruiting and Development. Each employee's record will be reviewed for any disciplinary and attendance occurrences. Employee files must be free of any disciplinary action for six (6) months in order to be considered for new postings.

4. VP level and above positions will not be posted through the internal process. Those positions will be filled through nominations by VPs or above to be submitted to the Group President and CFO for final approval.

5. Non-exempt employees applying for an exempt level position must have six (6) months tenure in their current position. Each employee's record will be reviewed for any disciplinary and attendance occurrences. Employee files must be free of any disciplinary action for six (6) months in order to be considered for new postings.

6. All employees are required to notify their direct supervisor prior to applying for any exempt position. Employees may apply for one (1) open position at a time.

    a. If employees are interested in multiple openings, they must select only one (1).

    b. If an internal applicant is interested in a new posting, but has already applied for a different position, the applicant must notify the HR Recruiting Assistant as soon as possible in order to be removed from the first candidate pool. The applicant should then apply for the new posting per normal procedure through Kenco Connection.

    c. Immediately following receipt of an internal application, the HR Recruiting Assistant will send an email to the supervisor of the applicant to ensure he/she is aware that the employee applied for an internal job posting.

7. Posting Process

    a. The Hiring Manager will complete form *CP-HR-6.2.2.013-1 Exempt Job Posting Requisition Form*, obtain the required signatures, and submit the completed form along with a current job description to the HR Recruiting Assistant. Postings for both replacement and newly created positions must be approved by the Hiring Manager's immediate Supervisor/Manager, the Director or VP of Operations, and the CFO.
        i. All exempt job postings will be posted by the 2nd business day after the HR Recruiting Assistant receives the required documents.
        ii. For example: Job posting requests received by 5:00 p.m. on Monday will be posted by 5:00 p.m. on Wednesday of the same week; Job posting requests received by 5:00 p.m. on Wednesday will be posted by 5:00 p.m. on Friday of the same week.

    b. Internal recruiting methods include postings on KencoConnection and site HR communication boards.
        i. Internal job postings will remain posted for fourteen (14) consecutive calendar days.
        ii. Site HR Administrators must post internal postings on site communication boards within 24 hours of internal communication.
        iii. Positions that are posted internally only, Hiring Managers/Supervisors and/or Site HR Advocates are responsible for the hiring process, including screening resumes, scheduling all interviews, and communicating with applicants until the position is filled.



| Document Number: | Rev # | Title: |
|---|---|---|
| CP-HR-1002 | 01 | Exempt Hiring Procedure |

**NOTE: PLXSG assists with internal postings only when the position is posted externally as well.**

c. External recruiting methods include postings on Kenco's public website and recruiting services provided by ProLogistix Search Group (PLXSG). External postings will remain open until the position is filled.

d. The Hiring Manager will be contacted by the EBS Recruiter to schedule a job order call (JOC) within 24 hours of receiving a new job order from the HR Recruiting Assistant. The Kenco Hiring Manager must schedule the JOC within 24 hours of the opening of the order. PLXSG will not begin the recruitment process until the JOC has taken place.

8. Screening Process

   a. The HR Recruiting Assistant will screen the resumes of all internal applicants received during the fourteen (14) day posting period.
      i. The resumes of qualified internal applicants will be forwarded to the EBS Recruiter for additional screening.
      ii. All internal applicants who do not meet the job requirements at this step will be notified via email by the HR Recruiting Assistant.

   b. The PLXSG Recruiter will present three (3) to five (5) prescreened external candidates and any qualified internal candidates for the Hiring Manager's review within five (5) business days of the JOC.

   c. If the resumes submitted by the PLXSG Recruiter are unsatisfactory, the Hiring Manager must provide feedback to both the PLXSG Recruiter and the Director of Recruiting and Development within 24 hours. The PLXSG Recruiter will then work to supply additional candidates.

   d. At this time, if any internal candidates are unsatisfactory, the Hiring Manager should contact the General Manager at the site of each internal applicant to offer feedback on why they were not selected. The General Manager should then schedule a meeting with the internal applicant and his/her direct supervisor to provide appropriate feedback on career development. After this conversation has taken place, a notification email must be sent by the General Manager to Corporate HR at jobs@kencogroup.com as an accountability measure for appropriate follow up with all internal applicants. The General Manager must copy the internal applicant and his/her direct supervisor on this email.

   e. If internal applicants are selected to move forward, their direct supervisors must be notified at this step and throughout the rest of the application process.

9. Interviewing Process

   a. The PLXSG Recruiter will provide selected external applicants with a copy of *CP-HR-1002-2 Kenco Non-Driver Application* and will direct each applicant to forward the documents to the HR Recruiting Assistant prior to interview.

   **b.** The Hiring Manager is responsible for contacting the HR Recruiting Assistant and requesting background checks for final candidates. The HR Recruiting Assistant will give applications to the ER Administrative Assistant and will ensure each background check is processed. See *CP-HR-1026 Background Investigation Program* for further instructions**.**
      **i. Successful completion of a background check must occur before a candidate is asked to travel for an interview. This will eliminate the possibility of incurring travel expenses on a candidate who does not pass our background**



| Document Number:<br>**CP-HR-1002** | Rev #<br>**01** | Title:<br>**Exempt Hiring Procedure** |
|---|---|---|

**screening process.**

ii. **In Canada, background checks may only be performed after a written job offer has been extended. No drug screens will be allowed, per the Employment Standards Act.**

c. At the Hiring Manager's request, the PLXSG Recruiter will schedule a Predictive Index Test for each of the interview candidates within two (2) days of candidate selection. The results of this test will be provided to the Hiring Manager for additional insight.

d. It is recommended that each candidate be interviewed by at least four (4) of the approved interviewers listed in Attachment A; however, it is required to have a minimum of two (2) interviewers.

e. The initial interview, by telephone or in person, will be conducted within seven (7) business days of candidate submittal by the PLXSG Recruiter.

f. The Site Manager, PLXSG Recruiter, and Site HR Administrator will coordinate to schedule interviews for all site positions. At the Hiring Manager's request, the PLXSG Recruiter will schedule in-person interviews with all internal and external candidates.

g. Each interviewer must complete form *CP-HR-1002-5 Exempt Candidate Evaluation Form* immediately after the interview and forward to the Hiring Manager within one (1) business day of the interview.

h. The Hiring Manager must utilize these forms to aid in making an informed decision on each candidate. The Hiring Manager must keep a copy of each form, either electronically or manually, to be filed with each job posting. This can be handled by the Site HR Administrator, if necessary.

10. Candidate Selection

a. Pending successful completion of the background check (external candidates only, except in Canada), the Hiring Manager will complete *CP-HR-1002-4 Offer Letter Summary Form* and send it to the HR Recruiting Assistant.
   i. If an internal applicant is selected, the Hiring Manager should contact the applicant's direct supervisor to negotiate a start date.
   ii. If a relocation allowance is requested, the Hiring Manager will include the relocation allowance amount and the date that the funds are needed for the new hire/transfer on the Offer Letter Summary Form. The form is then forwarded to their Vice President (VP) for approval; if the Hiring Manager is a VP, he/she can approve the relocation request provided it does not exceed the relocation allowance maximum.
      1. If the VP deems the relocation amount acceptable, he/she will sign or approve via email the *Offer Letter Summary Form* and forward it to the HR Recruiting Assistant.
      2. If the VP deems the relocation amount unacceptable, he/she will contact the Hiring Manager to discuss the situation.
   iii. Maximum relocation allowance amounts by job category and relocation distance have been provided to senior management. If the VP wishes to offer a relocation allowance exceeding the maximum amount for the job category and distance, he/she must obtain approval via email from the President of the appropriate Kenco LLC as well as the President – KMS.
      1. If both Presidents deem the relocation amount acceptable, they will sign or approve via email the *Offer Letter Summary Form* and forward it to the HR Recruiting Assistant.



| Document Number: | Rev # | Title: |
|---|---|---|
| CP-HR-1002 | 01 | Exempt Hiring Procedure |

2. If either President deems the relocation amount unacceptable, he/she will contact the VP to discuss the situation.

iv. Relocation allowances will be provided as a lump sum amount to facilitate a move and are designed to offset various costs that will be incurred in the relocation process.

1. In the United States, the lump sum payment is considered taxable income and will be treated as such.
   a. The relocation allowance will be paid **Net** of income tax, social security tax, and Medicare tax.

2. In Canada, the lump sum payment is not considered taxable.
   a. Consult the Employment Standards Act for specific expenses that are considered not taxable when relocating for employment purposes.

3. The allowance should be used to cover the following costs, including, but not limited to:
   a. Transportation, lodging, meals for house hunting and temporary living expenses
   b. Lease-break expenses and new-lease expenses
   c. Transportation of household goods and vehicles
   d. Miscellaneous expenses associated with relocation
       i. Utility and cable connection
       ii. Driver's License fee
       iii. Vehicle registration, etc.

4. The employee must remain employed with Kenco on a regular, full-time basis for at least one year after their hire or transfer date.
   a. If the employee resigns or his/her employment is terminated for cause prior to the one year period referenced above, the employee will be required to repay the relocation amount on a prorated basis.

b. Pending successful completion of the background check (except in Canada), the HR Recruiting Assistant prepares the Offer Letter and emails to the Hiring Manager including the *Relocation Expense Repayment Agreement* (if applicable). The Hiring Manager will sign and extend the finalized Offer Letter to the selected candidate.

i. If the offer is accepted, the Hiring Manager or Site HR Administrator will arrange for a pre-employment drug screen and return the signed Offer Letter (including *Relocation Expense Repayment Agreement* when applicable) to the HR Recruiting Assistant immediately. If all criteria in *CP-HR-1025 Drug Screen Procedure* are not met, the Hiring Manager will rescind the offer and the candidate's hiring process is terminated (external hires only).

1. In Canada, no drug screening will be allowed, per the Employment Standards Act.

2. In Canada, a background check may be requested after the written offer of employment is accepted.

ii. If the prospective employee requests a modification to the offer, the Hiring Manager will discuss with the approving VP and if approved, will repeat Section 4.4.1.

iii. If the offer is declined, the Hiring Manager will repeat Section 4.4 above for the second selected candidate. If no alternate candidate is available, the EBS Recruiter will work to provide a new selection of candidates.

c. Upon receipt of the signed Offer Letter and Relocation Expense Repayment Agreement, the HR Recruiting Assistant will obtain the final approval of the Director of Recruiting and Development.

i. Payroll will not process the Offer Letter without the signature of the prospective/transfer employee and the Director of Recruiting and Development on



| Document Number: | Rev # | Title: |
|---|---|---|
| CP-HR-1002 | 01 | Exempt Hiring Procedure |

the Offer Letter and the Relocation Expense Repayment Agreement. If the Director of Recruiting and Development is not available to sign the agreement, an email approval from the Director of Recruiting and Development will be sufficient.

d. The HR Recruiting Assistant will forward the signed Offer Letter to the appropriate KMS-HR Payroll Supervisor via a flagged email.
   i. The Payroll Supervisor will generate the check with the appropriate withholding and forward it to the employee or will process with the employee's first payroll direct deposit.

11. All new employees must complete their part of the new hire paperwork through the HRIS Onboarding Program before end of business on their first day of work with Kenco.
    a. In Canada, all new hire paperwork must be completed by end of business on the first day of work.

12. All employer-related new hire paperwork must be completed by the Site HR Administrator through the HRIS Onboarding Program within the first three (3) days of employment.

13. External candidates who are not extended an offer will be notified by the PLXSG Recruiter.

14. Internal candidates who are not extended an offer should be notified as soon as possible; however, the maximum timeframe for internal notification is 5 business days from the time the position is filled.
    a. The Hiring Manager should contact the General Manager at the site of each internal applicant to offer feedback on why they were not selected. The General Manager should then schedule a meeting with the internal applicant and his/her direct supervisor to provide appropriate feedback on career development. After this conversation has taken place, a notification email must be sent by the General Manager to Corporate HR at jobs@kencogroup.com as an accountability measure for appropriate follow up with all internal applicants. The General Manager must copy the internal applicant and his/her direct supervisor on this email.

### REFERENCES

*CP-HR-1002-1 Exempt Job Posting Requisition Form*
*CP-HR-1002-2 Kenco Non-Driver Application*
*CP-HR-1002-4 Offer Letter Summary Form*
*CP-HR-1002-5 Exempt Candidate Evaluation Form*
*CP-HR-1025 Drug Screen Procedure*
*CP-HR-1026 Background Investigation Program*

### HISTORY

| Revision Number | Date | Description of Revision |
|---|---|---|
| 00 | 02/25/14 | • This document replaced CP-HR-6.2.2.013 revision 5<br>• Added information to 3 and 5 about attendance and disciplinary action. Changed EBS Recruiting to ProLogistix Search Group (PLXSG). Changed template. |
| 01 | 10/30/14 | • Changed reference numbers throughout document. |

## CP-HR-1002 Attachment A:
## Approved Interviewers by Position

**Kenco Project Manager**
1. VP of Quality/Best Practices
2. Director of Quality/Best Practices
3. Quality/Best Practices Engineer
4. Director of HR
5. Manager of HR
6. VP of Operations
7. Director of Operations

**Kenco Engineer**
1. VP of Quality/Best Practices
2. Director of Quality/Best Practices
3. Quality/Best Practices Engineer
4. Director of HR
5. Manager of HR
6. VP of Operations
7. Director of Operations

**Kenco Quality Auditor**
1. VP of Quality/Best Practices
2. Director of Quality/Best Practices
3. Quality/Best Practices Engineer
4. Director of HR
5. Manager of HR
6. VP of Operations
7. Director of Operations
8. Director of Sales/Marketing

**Kenco Finance/Accounting**
1. Director of Corp. Sourcing and Internal Audit
2. Controller
3. Director of Operations
4. Manager of Operations
5. Director of HR
6. Manager of HR

**Kenco IT**
1. VP of Information Technology
2. Information Technology Manager
3. Director of HR
4. Manager of HR
5. HR Generalist
6. Quality/Best Practices Engineer
7. Director of Operations

**Site Operations Manager**
1. Site VP of Operations
2. Site Director of Operations
3. Site Manager
4. Director of HR
5. Manager of HR
6. VP of Quality/Best Practices
7. Director of Quality/Best Practices

**Site General Manager**
1. Site VP of Operations
2. Site Director of Operations
3. Director of HR
4. Manager of HR
5. HR Generalist
7. VP of Quality/Best Practices
8. Director of Quality/Best Practices

**Site Supervisor**
1. Site General Manager
2. Site Operations Manager
3. Site Manager
4. Director of HR
5. HR Generalist
6. Project Manager

EEOC Form 212-A (3/98)

# U. S. Equal Employment Opportunity Commission

| TO: | US Equal Employment Opportunity Commission<br>Chicago District Office<br>500 West Madison Street<br>Suite 2000<br>Chicago, IL 60661 | Date: September 21, 2015<br>EEOC Charge No.: 21BA52256<br>FEPA Charge No.: 2016CA0418 |

CHARGE TRANSMITTAL

SUBJECT:

| **LEONARD A SZPLETT** | v. | **KENCO LOGISTICS SERVICES** |
| *Charging Party* | | *Respondent* |

Transmitted herewith is a charge of employment discrimination initially received by the :

| | EEOC | X | Illinois Dept. of Human Rights |

*Name of FEPA*

| | Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC. |

| X | Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA. |

| | The worksharing agreement does not determine which agency is to initially investigate the charge. |

| | EEOC Requests a waiver | | FEPA waives |

| | No waiver requested | | FEPA will investigate the charge initially |

*Please complete the bottom portion o this form to acknowledge the receipt of the charge and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

| Typed name of EEOC or FEPA Official | Signature/Initials |
| Rocco J. Claps, Director | *Rocco J. Claps* |

| **LEONARD A SZPLETT** | v. | **KENCO LOGISTICS SERVICES** |
| *Charging Party* | | *Respondent* |

TO WHOM IT MAY CONCERN:

| | This will acknowledge receipt of the referenced charge and indicate this Agency's intention to initially investigate the charge. |

| | This will acknowledge receipt of the referenced charge and indicate this Agency's intention not to initially investigate the charge. |

| | This will acknowledge receipt of the referenced charge and request a waiver of initial investigation by the receiving agency.. |

| | This will acknowledge receipt of the referenced charge and indicate this Agency's intention to dismiss/close/not docket the charge for the following reasons: |

| Typed Name of EEOC or FEPA Official | Signature/Initials |
| Julianne Bowman, District Director | *Julianne Bowman* |

| TO: | Illinois Department Of Human Rights<br>100 West Randolph Street<br>Floor 10-100<br>Chicago, IL 60601 | Date: September 21, 2015<br>EEOC Charge No.: 21BA52256<br>FEPA Charge No.: 2016CA0418 |

Exhibit 52



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
Chicago Direct Dial: (312) 869-8000
Chicago TTY: (312) 869-8001
Fax: (312) 869-8220

IMPORTANT NOTICE. PLEASE READ CAREFULLY. KEEP THIS NOTICE WITH YOUR OTHER RECORDS OF THIS CHARGE. THIS MAY BE THE ONLY NOTIFICATION FROM EEOC.

IDHR CHARGE NUMBER: 2016CA0418 LEONARD A SZPLETT

# EEOC NOTICE OF CHARGE FILED

You are filing a charge of employment discrimination with the Illinois Department of Human Rights (IDHR).

As a result of an agreement between the Illinois Department of Human Rights (IDHR) and the U. S. Equal Employment Opportunity Commission (EEOC), the EEOC will also have a record of IDHR's charge of discrimination.

You are encouraged to cooperate with IDHR in the investigation of your charge. The final findings and orders of that agency may be adopted by the EEOC.

IDHR will process your charge. Under section 1601.76 of EEOC's regulations, you are entitled to request that EEOC review IDHR's investigation and findings. To obtain this review, you must request it by writing to this office within 15 days of your receipt of IDHR's final findings of your case. If we do not receive such a request for a review, EEOC will likely accept IDHR's findings without any review or any other processing by EEOC.

EEOC regulations require that you notify us of any change in address and keep us informed of any prolonged absence from your current address. Your cooperation in this matter is essential.

PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN APPOINTMENT IS REQUIRED, CALL (312) 869-8000 OR 1-800-669-4000.

EEOC NOTICE

*Enclosure with EEOC*
*Form 131 (5/01)*

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charges with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notices is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

Sections 1602.14 Preservation of records made or kept. ....Where a charge...has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent...shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against the employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, or rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

Exhibit 53



ILLINOIS DEPARTMENT OF

# Human Rights

Pat Quinn, Governor
Rocco J. Claps, Director

March 8, 2016

<u>Complainant</u>

Leonard Szplett
c/o Jordan T. Hoffman
J.T. Hoffman Law P.C.
11528 S. Halsted
Chicago, IL 60628

<u>Respondent</u>

Lori Varvel, HR Manager
c/o Jay Elliott, Esq.
Vice President of Legal
Kenco Logistic Services, LLC
2001 Riverside Drive
Chattanooga, TN 37406

<u>Charge Number:</u> 2016CA0418
<u>Complainant:</u>     Leonard Szplett
<u>Respondent:</u>     Kenco Logistics Services
Management Company on behalf of Mars, Inc.

## <u>NOTICE OF FACT FINDING CONFERENCE</u>

The persons named above are hereby required to appear and participate in a fact-finding conference scheduled for <u>April 8, 2016</u>, at <u>11:00 a.m.</u> to be held at <u>Department of Human Rights, 100 West Randolph Street, 10th floor, Chicago.</u>  Said conference will be conducted by the Department representative whose name and telephone number appear at the bottom of this notice.

The fact-finding conference is an investigative forum intended to define the issues, determine which facts are undisputed, obtain evidence and ascertain whether there is a basis for a negotiated settlement of the charge.  An attorney or other representative (or a friend or relative) may accompany you to the conference.  However, you may not send a substitute for yourself.  If you bring persons whose presence has not been requested without first receiving express permission to do so from the Department representative, those persons will be heard only at the discretion of the Department representative.

**RESPONDENT'S FAILURE TO ATTEND THE FACT FINDING CONFERENCE AS SCHEDULED MAY SUBJECT THE RESPONDENT TO <u>DEFAULT</u>. RESPONDENTS WHO APPEAR AT THE CONFERENCE EXCLUSIVELY THROUGH AN ATTORNEY OR OTHER REPRESENTATIVE UNFAMILIAR WITH THE EVENTS AT ISSUE SHALL BE DEEMED TO HAVE FAILED TO ATTEND AND MAY SUBJECT THE RESPONDENT TO <u>DEFAULT</u>.** If Respondent's representatives who are named in the fact

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (217) 785-5125, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.state.il.us/dhr

Exhibit 54

Charge No. 2016CA0418
Page 2 of 2

finding notice no longer work for Respondent, or are not available, please contact the
investigator immediately.

**COMPLAINANT'S FAILURE TO ATTEND THE CONFERENCE MAY RESULT IN
DISMISSAL OF THE CHARGE.** If a Questionnaire or Request for Further Information is
enclosed with this notice, you are requested to complete and return it to the Department
representative by (N/A). You may submit complete written statement of your position including
a proposal for settlement. Any evidence or statements you provide will be made a part of the file
and will be considered by the Department in its investigation, but settlement discussions will not
be used as evidence without the written consent of the parties.

You must provide all relevant evidence which is available to you, and you must tell the
Department representative named below of any other material or witnesses you deem relevant at
your earliest opportunity, but no later than at the fact finding conference on the date indicated
above.

**RESPONDENT'S FAILURE TO SUBMIT RELEVANT EVIDENCE MAY BE
CONSTRUED AGAINST RESPONDENT AND RESULT IN A FINDING OF
SUBSTANTIAL EVIDENCE.**

**COMPLAINANT'S FAILURE TO SUBMIT RELEVANT EVIDENCE AND
INFORMATION MAY RESULT IN A FINDING OF LACK OF SUBSTANTIAL
EVIDENCE OR DISMISSAL OF THE CHARGE FOR FAILURE TO COOPERATE.**

The Department strongly encourages the settlement of charges prior to or during the Fact Finding
Conference. If you would like to discuss the possibility of a settlement, please contact the
investigator named below.

If you need a reasonable accommodation as a person with a disability to participate in this
conference, you should contact your investigator, whose name and telephone number appear at
the bottom of this notice, or Susan Allen, the Department's ADA Coordinator, at (217) 785-
5119, or Susan.Allen@illinois.gov.

**Please Note: Building security procedures require that any person requesting access to the
offices at 100 West Randolph present proper photo identification.**

Michael Simms
INVESTIGATOR

(312) 814-2357
TELEPHONE

FFC NOTICE CPRP
rev. 03/11

## ILLINOIS DEPARTMENT OF HUMAN RIGHTS

## FACT-FINDING CONFERENCE EXPLANATION OF PROCEDURE

1.  Ordinarily, all documents or other non-testimonial evidence submitted by each party in support of its position shall be submitted to the investigator before the fact-finding conference. In order to help narrow the issues and explore the possibility of settlement, the evidence will usually be discussed with the other parties, either before or at the fact-finding conference. If the fact-finding conference does not result in settlement or withdrawal of the charge, the investigator will determine what further investigation, if any, will be conducted before preparing the investigative report.

2.  Each party may be accompanied by an attorney or other representative. A party who attends a conference only by attorney will be considered as having failed to attend and may be subject to default proceedings. Attorneys may advise their clients and offer input but they will not be permitted to answer factual questions for the parties or witnesses.

3.  The investigator conducts the conference and determines what persons shall be present and who will be questioned. The parties should bring only those persons requested by the investigator, unless they have received the investigator's approval to bring other people. The parties may not submit affidavits instead of bringing the persons requested by the investigator unless the investigator agrees that there is good reason for the person not being present. All questions are asked by the investigator. A question that a party wants asked should be addressed to the investigator who will decide whether to ask it.

4.  The investigator opens the conference by reading the fact-finding conference opening statement. The investigator reviews conference procedures. All persons attending the conference complete the sign-in sheet and the attorneys file appearances, if not previously filed. The charge is read by the investigator.

5.  An investigator will take notes during the fact finding conference, except for settlement discussions. These will be maintained in the Department's investigation file.

FF1B/CPFORMS
12/2008

# FACT FINDING CONFERENCE ATTENDANCE RECORD

## Via Telephone

| CHARGE NUMBER: | 2015CP3083 | CONFERENCE DATE: | October 13, 2015 |
|---|---|---|---|
| COMPLAINANT: | Leonard Splett | RESPONDENT: | Kenco |
| CONFERENCE TIME: | 1:00 p.m. | INVESTIGATOR: | JTD |

(PLEASE PRINT)

| ATTENDING FOR COMPLAINANT | | ATTENDING FOR RESPONDENT | |
|---|---|---|---|
| Name: | | Name: | Jay Elliott |
| Title: | | Title: | VP-Legal |
| Business Address: | | Business Address: | Kenco Logistics |
| | | | 2001 Riverside Drive |
| | | | Chattanooga, TN 37406 |
| Telephone No.: | | Telephone No.: | 423-463-3398 |
| EEO: | | EEO: | |
| Name: | | Name: | |
| Title: | | Title: | |
| Business Address: | | Business Address: | |
| Telephone No.: | | Telephone No.: | |
| EEO: | | EEO: | |
| Name: | | Name: | |
| Title: | | Title: | |
| Business Address: | | Business Address: | |
| Telephone No.: | | Telephone No.: | |
| EEO: | | EEO: | |

### ATTENDING FOR RESPONDENT (continued)

| Name: | | Name: | |
|---|---|---|---|
| Title: | | Title: | |
| Business Address: | | Business | |

FF4/CPFORMS
rev. 0708

Exhibit 55

2:16-cv-02273-CSB-EIL   # 82-7   Page 2 of 4

Exhibit 28



ILLINOIS DEPARTMENT OF
**Human Rights**

Bruce Rauner, Governor
Janice Glenn, Acting Director

### ARNOLD BROWNLEE v. KENCO LOGISTIC SERVICES
### IDHR CHARGE NO.: 2015CA1464

Enclosed are true and correct copies of documents from the Illinois Department of
Human Rights file, made and kept in the ordinary course of business, regarding
the above-referenced charge filed with the Department.

AMALIA MARTINEZ
FREEDOM OF INFORMATION OFFICER

DATE: 1/10/17

**SUBSCRIBED and SWORN to before me**

This _10th_ day of _January_ 2017.

**NOTARY PUBLIC**

OFFICIAL SEAL
DONNA M EVANS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/03/18

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (217) 785-5125, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

Exhibit 56

$2\Gamma$

Exhibit

## Juarez, Maria F.

From:        Elliott, Jay <JAY.ELLIOTT@Kencogroup.com>
Sent:        Wednesday, March 04, 2015 3:39 PM
To:          Juarez, Maria F.
Subject:     RE: Brownlee v. Kenco 2015CA1464

Tammi Fowler
7222 Sims Road
Harrison, TN 37341
423-344-0624

Lori Varvel
32 Jordan Drive
Bourbonnais,, IL 60914
(815) 614-9112

Steve Strungell
He was a temporary employee, and we do not keep files on temps

Carl Conway
1925 E. Linden
Kankakee, IL 60901
No phone number on file

Stacy Bushey
1436 W. State Route 102
Bourbonnais, IL 60914
No phone number on file

**From:** Elliott, Jay
**Sent:** Wednesday, March 04, 2015 12:13 PM
**To:** Juarez, Maria F.
**Subject:** RE: Brownlee v. Kenco 2015CA1464

Thank you for your e-mail, Maria. FYI -- Kenco is no longer at the Manteno site; the customer (Mars) did not re-new our contract. Kenco exited the site this past Saturday. As a result, all witnesses you list below are no longer Kenco employees (indeed, nobody previously employed by Kenco at the Manteno site is a Kenco employee any longer). Unless I hear differently from you, I will forward to you the last known home addresses and phone numbers for the witnesses below. I will also but the 4/15 fact-finding conference on my calendar, for now. Please let me know, however, as soon as you can, if you end up cancelling the fact-finding conference. Alternatively, can you let me know if I could participate by telephone (instead of travelling from Chattanooga, TN)?

**From:** Juarez, Maria F. [mailto:Maria.F.Juarez@illinois.gov]
**Sent:** Wednesday, March 04, 2015 12:01 PM
**To:** Elliott, Jay
**Subject:** Brownlee v. Kenco 2015CA1464

Good morning. I've been assigned the above captioned case for investigation. I am a neutral party and my duty is to investigate the allegations made in the Complainant's charge.

1

I have scheduled a fact-finding conference for **April 15, 2015, at 9:00 a.m.** at the James R. Thompson Center, 100 West Randolph Street, Suite 10-100, Chicago, IL 60601. I am requesting that Steve Strungll, Carl Conway, Stacy Bushey, and a Human Resources representative be present at the conference. Please provide the name and job title of the HR representative who will attend. The conference should not last more than two hours.

I am required to relay that failure by Respondent to be present on the date of the conference may result in a finding of default.

Please confirm the Respondent's attendance by March 16, 2015.

Respectfully,

Maria Juarez
Investigator II
Charge Processing Division
Illinois Department of Human Rights
100 W. Randolph St. Ste. 10-100
Chicago, IL 60601
312-814-6238
312-814-6251 fax
maria.f.juarez@illinois.gov

**Confidentiality Notice:** This e-mail transmission (and/or documents accompanying such) may contain confidential information. Such information is intended only for the use of the individual or entity named above. If you are not the named or intended recipient, you are hereby notified that any such disclosure, copying, distribution, or the taking of any action in reliance on the contents of such information is strictly prohibited. If you have received this transmission in error, please immediately notify the sender by telephone to arrange for the secure return of the documents.

2:16-cv-02273-CSB-EIL  # 82-8    Page 2 of 3



ILLINOIS DEPARTMENT OF

# Human Rights

Bruce Rauner, Governor
Janice Glenn, Acting Director

## HENRY VERNON V. KENCO LOGISTIC SERVICES
## IDHR CHARGE NO.: 2015CF2497

Enclosed are true and correct copies of documents from the Illinois Department of Human Rights file, made and kept in the ordinary course of business, regarding the above-referenced charge filed with the Department.

YOLANDA G. GODWIN
FREEDOM OF INFORMATION OFFICER

DATE: 11/14/16

SUBSCRIBED and SWORN to before me

THIS 14th DAY of November, 2016.

_Donna M. Evans_
NOTARY PUBLIC

OFFICIAL SEAL
DONNA M EVANS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/03/18

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (217) 785-5125, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2300 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

# Exhibit S

**Brown, Laveppia J.**

| | |
|---|---|
| **From:** | Elliott, Jay <Jay.Elliott@Kencogroup.com> |
| **Sent:** | Monday, October 12, 2015 9:28 AM |
| **To:** | Brown, Laveppia J. |
| **Subject:** | RE: Henry v. Kenco Logistics 2015CF2497 |
| **Attachments:** | 4913_001.pdf; 4914_001.pdf |

My calendar now has a conflict on 11/19, so I would need to do 11/10. Current Kenco employee Lori Varvel would be able to attend a fact-finding conference on 11/10. NOTE – she was not employed by Kenco until after Mr. Henry was terminated. So I am not sure what value her attendance in person at the fact finding conference will provide. I will be the Kenco representative answering the charge, including the specific allegations therein.

Following up on previous e-mail correspondence between you and me.

David Jabaley can be reached through me. He is still employed by Kenco as a manager. Last known home addresses and phone numbers for the other folks you referenced are below.

On a related note, I have attached the latest Notices of Dismissal for Lack of Substantial evidence for Mr. Henry's last two charges. As you can see, the current Henry charge to which you are assigned is almost a duplicate of the same allegations in the previous two charges. So the Department has already considered almost all of the substance of the current charge, and rejected it. Maybe this will have an effect on the scope of your current investigation.

The only new allegations in the current charge are (1) Kenco discriminated against Mr. Henry by submitting the wrong paperwork to the Illinois Department of Employment Security in response to Mr. Henry's application for unemployment compensation benefits and (2) Kenco discriminated against Mr. Henry by failing to provide to him a copy of his personnel file. I have responded to those allegations in Kenco's position statement. And I'm happy to discuss them at the fact-finding conference.

Mario Lopez
4161 Stepping Rock Dr
Apison, TN 37302
(423) 385-4842

Tanami Fowler
7222 Sims Rd
Harrison, TN 37341
(423) 364-0624

Kelvin Walsh
127 Callan Ave
Evanston, IL 60202
**No phone number provided**

Mike Manzello
275 Lake St
South Wilmington, IL 60474
(815) 342-9484

Melissa Hansen

**From:** Brown, Laveppia J. [mailto:Laveppia.J.Brown@Illinois.gov]
**Sent:** Monday, January 11, 2016 10:14 AM
**To:** Elliott, Jay <Jay.Elliott@Kencogroup.com>
**Subject:** FW: Henry v. Kenco

Will she be able to come in on the 20th at 1p?

---

**From:** Brown, Laveppia J.
**Sent:** Monday, January 11, 2016 9:11 AM
**To:** 'Elliott, Jay'
**Subject:** RE: Henry v. Kenco

Hi,

No, the conference would not take place on today. Ms. Varvel will come in on the reschedule date.

---

**From:** Elliott, Jay [mailto:Jay.Elliott@Kencogroup.com]
**Sent:** Monday, January 11, 2016 9:09 AM
**To:** Brown, Laveppia J.
**Subject:** RE: Henry v. Kenco

She and I could do 1/20 at 1:00 central. Are you continuing the fact finding conference today until then? Or are you talking about a separate interview of Ms. Varvel on that date (after the fact finding conference we would still do today)?

**Jay Elliott**
Vice President - Legal
2001 Riverside Drive · Chattanooga, TN 37406
Office: 423-643-3398 · Mobile: 423-227-9182



*The information contained in this electronic communication and any accompanying document is confidential and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this communication and all copies of it, including all attachments.*

---

**From:** Brown, Laveppia J. [mailto:Laveppia.J.Brown@Illinois.gov]
**Sent:** Monday, January 11, 2016 10:00 AM
**To:** Elliott, Jay <Jay.Elliott@Kencogroup.com>
**Subject:** RE: Henry v. Kenco

Good morning,

Will you please check to see if she is available for January 20, 2016 at 1:00 p.m. or January 21, 2016 @ 3:00 p.m. Thank you.

---

**From:** Elliott, Jay [mailto:Jay.Elliott@Kencogroup.com]
**Sent:** Monday, January 11, 2016 7:29 AM
**To:** Brown, Laveppia J.
**Subject:** FW: Henry v. Kenco

Lori Varvel had a work emergency come up, and so she will not be able to attend the fact finding conference today. But I will still attend by phone. As I explained previously, I'm not sure there's anything Lori would say that I can't say. She did not begin her employment with Kenco until after Mr. Henry was terminated. Anyway, if you believe you will still need to talk to her after the fact-finding conference, then we can set up a call. Please let me know if you have any questions. Otherwise I will call in for the fact0finding conference today at 1:00 central. Thanks.

**Jay Elliott**
Vice President - Legal
2001 Riverside Drive · Chattanooga, TN 37406
Office: 423-643-3398 · Mobile: 423-227-9182



*The information contained in this electronic communication and any accompanying document is confidential and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this communication and all copies of it, including all attachments.*

**From:** Brown, Laveppia J. [mailto:Laveppia.J.Brown@Illinois.gov]
**Sent:** Wednesday, December 23, 2015 1:01 PM
**To:** Elliott, Jay <Jay.Elliott@Kencogroup.com>
**Subject:** RE: Henry v. Kenco

Good morning,

Please see the attached for your records. Thank you so much for your cooperation. The telephone number that you will need to call in to is 312-814-4628. Enjoy your holiday season.

**From:** Elliott, Jay [mailto:Jay.Elliott@Kencogroup.com]
**Sent:** Monday, December 21, 2015 11:21 AM
**To:** Brown, Laveppia J.
**Subject:** RE: Henry v. Kenco

1/11 at 1:00 works for us. I would be participating by telephone but Lori Varvel can attend in person. 1/14 does NOT work for us.

**Jay Elliott**
Vice President - Legal
2001 Riverside Drive · Chattanooga, TN 37406
Office: 423-643-3398 · Mobile: 423-227-9182



*The information contained in this electronic communication and any accompanying document is confidential and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this communication and all copies of it, including all attachments.*

**From:** Brown, Laveppia J. [mailto:Laveppia.J.Brown@Illinois.gov]
**Sent:** Monday, December 21, 2015 11:01 AM

3

## Rebekah Funk

| | |
|---|---|
| **From:** | Coffey, Robert |
| **Sent:** | Wednesday, September 24, 2014 4:28 PM |
| **To:** | Moore, Todd;Helveston, Andrew;Sheldon, Steven;Weisel, Gabi |
| **Subject:** | RE: Manteno HR Manager |

It's been identified as a root cause that leadership at the site is lacking and needs to be addressed immediately. The talent pool in that area is difficult to attract as has been validated by the hard time that we have been having recruiting with any open roles (management, hourly, etc... ) the addition of the co-pack liaison has paid dividends as we have not heard of many stir ups from that side of the wall lately and I would like to believe that if we have these individuals identified by Kenco below that we can address the leadership and accountability at the site which it is severely lacking – I believe that any provider that would be introduced to this site would have to add similar roles to be successful.

Regards,

**Robert Coffey**

**Mars Chocolate, North America**
**Regional Distribution Manager  - Midwest**
**Chicago Plant**
**2019 North Oak Park Ave,**
**Chicago, IL 60707**



**M:** 773-892-7735
**E:** robert.coffey@effem.com

**From:** Moore, Todd
**Sent:** Wednesday, September 24, 2014 2:28 PM
**To:** Helveston, Andrew; Sheldon, Steven; Weisel, Gabi; Coffey, Robert
**Subject:** FW: Manteno HR Manager

They are asking for approval to add to the overhead costs. As a reminder, I previously agreed to the manager to work with co-pack and the floor outside current year budget. HR is a shared resource at ABW and Exel. Romark has a dedicated HR Manager for both Waco and Hazelton. I agree an HR Manager on site is desperately needed, and am not real excited to incur this incremental cost given current cost to Mars Kenco is already having with inefficiencies.

Thoughts?

**From:** Jabaley, David [mailto:David.Jabaley@Kencogroup.com]
**Sent:** Wednesday, September 24, 2014 3:20 PM
**To:** Moore, Todd
**Subject:** HR Manager

Todd, below is the Manteno salary survey. Let me know if Mars is okay with moving on this.

**Exhibit 58**



DEF001591

|  | Minimum | Midpoint | Maximum |
|---|---|---|---|
| Supervisor | $ 42,350 | $ 52,938 | $ 63,526 |
| Office Manager | $ 37,813 | $ 47,266 | $ 56,719 |
| Operations Manager | $ 53,124 | $ 66,405 | $ 79,686 |
| Accounting Manager | $ 51,859 | $ 64,824 | $ 77,789 |
| **HR Manager** | **$ 57,892** | **$ 69,470** | **$ 81,048** |

**David Jabaley**
Director, Operations
2001 Riverside Drive • Chattanooga, TN  37406
Office: 423-643-3336 • Mobile: 423-593-6045



*The information contained in this electronic communication and any accompanying document is confidential and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this comm*

CONFIDENTIAL

DEF001592



**KENCO**

# PIP - 30 Day Review

## Personnel and Culture - Staffing

### Measurement - Goals

» 80% of hourly associates full time and trained in all task in 60 Days

» All required Leadership roles filled and trained on Kenco processes in 30 days

### Status

» Current Perm/Temp Ratio = 74% (86 Kenco and 22 Temps for week of 10/27) which will vary relative to volume with the goal of averaging 80% per year.

» Completed hourly MHE certification

» Hourly training by value stream targeted for completion in November

» Leadership recruiting and training

− HR Leadership position hired to start on Nov 11 and on target for training completion in November, funded by Kenco.

− We have solid candidates for the following 3 open positions, but are holding back on offers pending discussion on 2014 cost over runs.

    ▪ Ops Manager

    ▪ 2nd shift week end supervisor

    ▪ Red Prairie Power User / Business Analyst

*Confidential & Proprietary*

CONFIDENTIAL

DEF002027

**KENCO**

# PIP - 30 Day Review

Personnel and Culture - Finance and Inventory Control

## Measurement - Goal

» Current resources either removed from roles or retrained by both Kenco and Mars in 30 days

## Status

» Site Finance Leader, is on FMLA related to job stress and role is currently being filled by Kenco corporate finance. Note that P11 EOM financial files were transmitted as planned.

» Training complete with Kenco corporate finance on site accounting processes and period model.

» Training complete on new inventory control SOP which includes adjustment limits and escalation process.

CONFIDENTIAL

*Confidential & Proprietary*

12

DEF002028

KENCO

# David PIP - 60 Day Review

## Recent Accomplishments

» RP Interleaving implemented with some initial success. Configuration issues have been addressed and another trial on 12/4 to assess improvement potential.

» Productivity reports posted for every shift and used for coaching.

» Established a Training Leader (Jackie Nelson) and conducted 400+ hours of initial/cross training.

» Fully implemented New Hire Cross Training Plan (All MHE types included).

» Implemented Temp Provider performance tracking and accountability measures; HR Manager is reviewing daily.

» Reset Kenco attendance performance tracking and accountability measures; We have issued 8 verbal warnings and 8 OFI 3 suspensions.

» Established 2015 Temp vs Perm targets.

» Hired Lori Varvel as new HR Mgr and promoted Melissa Hansen to Ops Mgr.

» Load Planner (Julie Wade) is cross training on Power User responsibilities and Co-pack support.

» Open supervisor position was filled internally by Tony Willis.

CONFIDENTIAL

*Confidential & Proprietary*

4

**KENCO**

# PIP - 60 Day Review

## Personnel and Culture - Staffing

### Measurement - Goals

» All required Leadership roles filled and trained on Kenco processes in 30 days

» 80% of hourly associates full time and trained in all task in 60 Days

### Status

» Current Site Leadership Team and Recent Changes (No vacancies at this time)



**Color Key**

| No recent Change |
| Recent Change |
| Potential Change |

GM LOPEZ

TRANS MGR DEROSIER
HR MGR VARVEL
OPS MGR HANSEN
FINANCE SZPLETT

KOS MARQUEZ
Willis Ops Sup
IT/RP SU WADE

Confidential & Proprietary

CONFIDENTIAL

DEF002044

## Kimberly Overbaugh

| | |
|---|---|
| **From:** | Hise, Paula <Paula.Hise@Kencogroup.com> |
| **Sent:** | Thursday, May 29, 2014 1:05 PM |
| **To:** | Sheldon, Steven; Craig, Judy |
| **Cc:** | Coffey, Robert; Moore, Todd |
| **Subject:** | Re: June 3rd Visit to Manteno |

Got it, thanks Steve!

Paula Hise
Group VP, Health & Personal Care
2001 Riverside Drive • Chattanooga, TN 37406
Office: 423-643-3248 • Mobile: 423-290-3749

 **VOTE
KENCO
A TOP 3PL**
*We can't do it without you.*

*The information contained in this electronic communication and any accompanying document is confidential and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this communication and all copies of it, including all attachments.*

**From:** Steve Sheldon <steven.y.sheldon@effem.com>
**Date:** Thu, 29 May 2014 11:17:35 -0400
**To:** Paula Hise <Paula.Hise@kencogroup.com>, Judy Craig <Judy.Craig@Kencogroup.com>
**Cc:** Robert Coffey <robert.coffey@effem.com>, Todd Moore <todd.moore@effem.com>
**Subject:** RE: June 3rd Visit to Manteno

Hi Paula,

Hope you're well.

Unfortunately, we are not available for dinner, but thank you for the invite.

I think we should plan for a 4p or 430p start, and we'll meet for 1-1.5 hours.

Regarding the agenda, in no particular order:
- Kenco overview and strategic goals
- Kenco Operating System
  - Overview
  - Lean principles and practices
  - Successes to date
- Discussion of site security
- Brief, brief warehouse tour

Exhibit 59

1

DEF002796

Regards,

**Steven Sheldon**
**Sr. Commercial Manager - Warehousing**
**Commercial @ Mars Transversal Team**
**T:**+01 908 850 2180| **M:**+01 908 798 1000
**E:**steven.y.sheldon@effem.com



*CONFIDENTIALITY. This email and any attachments are confidential and may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email and any attachments from your system.*

 *Please consider the environment before printing this email*

**From:** Hise, Paula [mailto:Paula.Hise@Kencogroup.com]
**Sent:** Tuesday, May 27, 2014 6:48 PM
**To:** Sheldon, Steven; Craig, Judy
**Cc:** Coffey, Robert; Moore, Todd
**Subject:** Re: June 3rd Visit to Manteno

Hi Steve,
Hope you enjoyed the long holiday weekend. Judy was going to start pulling together a slide deck for a Kenco overview, but before we go too far, we wanted to check in with you to see what kind of agenda you had in mind for Maggie's visit? Also, are you, Maggie and the team available for dinner on the evening of June 3rd? Judy and I will be available Tuesday evening if you are free.

Thanks,

Paula Hise
Group VP, Health & Personal Care
2001 Riverside Drive • Chattanooga, TN 37406
Office: 423-643-3248 • Mobile: 423-290-3749

 **VOTE**
**KENCO**
**A TOP 3PL**
*We can't do it without you.*

The information contained in this electronic communication and any accompanying document is confidential and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication, or any part of it, is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return email, and destroy this communication and all copies of it, including all attachments.

**From:** Steve Sheldon <steven.y.sheldon@effem.com>
**Date:** Fri, 16 May 2014 10:34:29 -0400
**To:** Judy Craig <Judy.Craig@Kencogroup.com>, Paula Hise <Paula.Hise@kencogroup.com>
**Cc:** Robert Coffey <robert.coffey@effem.com>, Todd Moore <todd.moore@effem.com>
**Subject:** June 3rd Visit to Manteno

Hi Judy/Paula,

DEF002797

Hope you're all well.

I'd like to visit the Manteno warehouse on June 3rd.

My manager, Maggie Robinson – Commercial VP of Global Logistics Buying, who is based in the UK will be with me.

She's only been to two of our North American warehouses previously, although Manteno is one, and typically doesn't meet with suppliers.

Please let me know if you can accommodate a visit during the afternoon of June 3rd.

Provided you can accommodate the visit, we'll collaborate on an agenda.

Regards,

**Steven Sheldon**
**Sr. Commercial Manager – Warehousing**
**Commercial @ Mars Transversal Team**
**T:**+01 908 850 2180| **M:**+01 908 798 1000
**E:**steven.y.sheldon@effem.com



*CONFIDENTIALITY. This email and any attachments are confidential and may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email and any attachments from your system.*

 *Please consider the environment before printing this email*

DEF002798