UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEONARD A. SZPLETT, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-02500 |
| ) | Judge Gary Feinerman |
| KENCO LOGISTIC SERVICES, LLC, a ) | |
| TENNESSEE LIMITED LIABILITY COMPANY, ) | |
| MARS, INC., THE HARTFORD, DAVID ) | |
| JABALEY, MARIO LOPEZ, TAMMI FOWLER, ) | |
| PAULA HISE, TRACE SPIER, ROBERT ) | |
| COFFEY, TODD MOORE, JAY ELLIOTT, ) | |
| DAVID CAINES, MICHAEL MANZELLO, ) | |
| DAVID CRAWLEY, and KEVIN WALSH ) | |
| ) | |
| Defendants. ) | |

**HARTFORD'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

Hartford Life and Accident Insurance Company, erroneously identified as "The Hartford" in the Complaint, by its attorneys, submits its Memorandum of Law in Support of Its Motion to Dismiss, arguing the claims asserted against it should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims upon which relief can be granted.

### I. INTRODUCTION

Leonard Szplett's 200-page Complaint tells a sordid but unfocused tale of racially-motivated conduct by his former employer, a dozen or so of his former co-workers and superiors, and a company with which his former employer had a contractual relationship. Szplett names each of those parties as defendants in this lawsuit. Resistance by Szplett and others to the allegedly discriminatory conduct of those defendants resulted in retaliation in the form of adverse employment actions. Szplett alleges that those defendants are liable for violations of 42 U.S.C. § 1981 and for conduct giving rise to other statutory and common law actions.

Szplett also contends Hartford is liable for violations of § 1981, but the claim is not plausible under Rule 8 of the Federal Rules of Civil Procedure. Szplett does not allege Hartford engaged in any racially discriminatory conduct. Indeed, out of *nearly one-thousand* paragraphs in Szplett's Complaint, only a handful refer to Hartford (or to actions that only Hartford could have undertaken), and *none* suggest Hartford interfered with Szplett's right to "make and enforce" contracts within the meaning of § 1981. Szplett's Complaint, therefore, does not state claims for relief against Hartford under § 1981.

Szplett asserts several other theories of relief in his Complaint only one of which - intentional infliction of emotional distress - appears directed at Hartford. To the extent Szplett intends to assert that state-law cause of action against Hartford, it fails to state a claim upon which relief can be granted because it is based on Hartford's denial of Szplett's disability claim and, therefore, is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Szplett's remaining causes of action improperly lump all fifteen defendants together without describing which defendants are responsible for what conduct. Claims premised on allegations of undifferentiated conduct by and among multiple defendants fail to state plausible claims for relief under Rule 8 of the Federal Rules of Civil Procedure. Finally, Szplett also asserts claims sounding in fraud but he fails to allege the fraud with particularity and, so, fails to state a claim for relief under Rule 9(b) of the Federal Rules of Civil Procedure.

Because Szplett's Complaint does not allege plausible – or viable – causes of action against Hartford, this Court should dismiss those actions for failure to state claims upon which relief can be granted.

### III. THE COMPLAINT'S RELEVANT ALLEGATIONS[1]

Szplett is a former employee of defendant Kenco Logistic Services, LLC. (Compl., ¶ 6; pp. 4).[2] Kenco is a third-party logistics company that manages warehouse and distribution centers. (Compl., ¶ 41; p. 11). Defendant Mars, Inc. operated a distribution center in Manteno, Illinois, which Kenco managed. (See Compl., ¶s 29, 33, 38, 49, 56, 57; pp. 9, 10, 12, 13). Starting in April 2013, Szplett worked for Kenco at the Manteno distribution facility and "was responsible for the HR and Accounting department." (Compl., ¶ 138; p. 30). In that position, Szplett "oversaw employee relations, hiring, terminations, performance management, onboarding, benefits, payroll, and other duties and tasks." (Compl., ¶s 6, 138; pp. 4, 30). The following individual defendants were Szplett's co-workers or superiors: David Jabaley, Mario Lopez, Tammi Fowler, Paula Hise, Trace Spier, Robert Coffey, Todd Moore, Jay Elliott, David Caines, Michael Manzello, David Crawley, and Kelvin Walsh. (Compl., ¶s 10-21; pp. 5-7).

Szplett claims "Defendants allowed its [*sic*] non-black employees and management to make racial slurs, epithets, threats, and stereotypes" about "African Americans … without reprisal." (Compl., ¶ 363, 373; pp. 73, 74). Also, "Defendant subjected African-Americans to harsher scrutiny, punishment and adverse actions than non-African Americans." (Compl., ¶ 372; p. 74). "Defendant" further "did not administer policies, procedures, 'Opportunities for Improvement' and punishments equitably between non-African Americans and African Americans." (Compl., ¶ 371; p. 74). Szplett cites the experiences of six Kenco employees as

---

[1] For purposes of a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the well-pled allegations of a plaintiff's complaint are accepted as true. *Bell v. City of Chicago*, 118 F. Supp.3d 1016, 1018 (N.D. Ill. 2015).

[2] The Complaint contains two separate and distinct sets of paragraphs numbered 1-419, and two sets of pages numbered 1-93. Using the pages assigned by the court's docketing system, the first set of paragraphs 1-419 are found on pages 1 through 96 of 363. The second set of paragraphs 1-419 are on pages 97 through 179. To minimize confusion, Hartford will refer to paragraphs by their number and the pages on which they appear using the page numbers assigned by the court's docketing system.

3

examples of Kenco's allegedly discriminatory employment practices.[3] He alleges Kenco caused him to "involuntarily conspire, aid[] and abet[]" it in violating the rights of Kenco employees. (Compl., ¶s 334, 335; p. 64). And when Szplett "opposed [Kenco's] discriminatory treatment of African Americans," he was "subjected to the misuse, abuse and misapplication of company policy" and experienced "intimidation, harassment, bullying, retaliation, threats to personal standing and other adverse employment decisions." (¶s 328, 2, 3, 5; pp. 63, 97, 98). Kenco retaliated against Szplett by: (i) depriving him of administrative support and, thereby, increasing his workload; (ii) demoting him, (iii) characterizing his leadership as "failing," which Szplett asserts was defamatory, and (iv) forcing him to work unusual shifts. (¶s 165 (a)-(f), 5; pp. 35, 98).

Hartford is mentioned by name in five of the Complaint's 943-paragraphs. (Compl., ¶s 2, 22, 25, and 293; pp. 2, 7, 8, 153). According to Szplett, Kenco provided "health and disability benefits" to its "3,000+ employees nationwide" and Hartford was "the 3rd party administrator" for those benefits. (Compl., ¶ 22; p. 7). Szplett complains that he submitted a claim seeking disability benefits and the "Defendants" gave Szplett's physician "a contrived and inaccurate" description of Spzlett's job, assuming the physician would use the description to evaluate Szplett's ability to perform the material duties of his occupation. (Compl., ¶s 6(c), 292; pp. 98, 153). Szplett alleges Hartford denied his claim for disability benefits because it relied on the physician's evaluation to conclude that Szplett "was able to return to work." (Compl., ¶ 293; p. 153).

### IV.  ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[3] Edith McCurry (Compl., ¶s 138-143, 213, 214, 223, 229, 230, 283, 284, 288, 289; pp. 30-31, 47, 48, 49, 56, 57); Mary Madison (Compl., ¶s 189, 190, 197-200, 207; pp. 44, 45, 46); Vernon Henry (Compl., ¶ 299 (a)(iv), 364, 379, 187, 268, 272 n.4; p. 59, 73, 75, 133, 147, 148); Nathan Doss (Compl., ¶s 259, 22, 28, 248, 249, 253, 255; pp. 52, 103, 104, 144, 145); Morris Tyson (Compl., ¶s 165(k)(d)(i), 238, 241, 245-256; pp. 37, 50, 51-52); Dana Woods (Compl., ¶s 299(a), 299(a)(iii), 62; pp. 58, 59, 110).

4

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A plausible claim pleads facts suggesting it is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. at 678. Pleading such facts "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. In contrast, complaints which plead naked assertions, legal conclusions, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," "formulaic recitation[s] of the elements of a cause of action," or facts "that are 'merely consistent with' a defendant's liability, ... 'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. at 678.

**A.     Szplett's Complaint does not plausibly allege Hartford violated § 1981.**

**1. Szplett's reverse discrimination actions fail to state claims for relief against Hartford.**

Szplett asserts he was the victim of "reverse discrimination" because he opposed the "disparate treatment [of] protected class persons." (Compl., pp. 97, 100, 115, 121, 142, 157). The defendants' "reverse discrimination" allegedly manifested itself in five ways that give rise to liability under § 1981: (i) Disparate Treatment (p. 97); (ii) Harassment (p. 100); (iii) Pretext (p. 121); (iv) Hostile Work Environment (p. 142); and (v) Adverse Actions (p. 157).[4]

"Section 1981 prohibits discrimination in the making and enforcement of private contracts." *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005). To state a claim under § 1981 when the contract at issue is not an employment

---

[4] Several of Szplett's theories are not grounds for relief themselves under § 1981 but, rather, are components of other recognized grounds for relief under § 1981. "Harassment," for instance, is a common feature of a hostile-work-environment claim, and "pretext" and "adverse actions" are elements of a *prima facie* case of racial discrimination under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817 (1973). See *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010) (harassment and hostile work environment); *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806-807 (7th Cir. 1999) (*prima facie* elements of racial discrimination under burden-shifting framework).

5

contract, a plaintiff "must allege facts in support of the following propositions: (1) [he] is a member of a racial minority; (2) the [defendant] intended to discriminate on the basis of race; and (3) the discrimination deprived [the plaintiff] of one or more rights enumerated in § 1981, such as the making and enforcing of a contract." *Black Agents & Brokers Agency, Inc.*, 409 F.3d at 837. In a case like Szplett's, in which a Caucasian plaintiff asserts a claim for reverse discrimination, the first element is revised: the plaintiff must allege "background circumstances" that plausibly suggest the defendant had a "reason or inclination to discriminate invidiously against whites ... or evidence that there is something 'fishy' about the facts at hand." *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 820 (7th Cir. 2006); *Mills v. Health Care Service Corp.*, 171 F.3d 450, 454-457 (7th Cir. 1999).

Szplett's Compliant does not allege any of the facts necessary to state a plausible reverse discrimination claim against Hartford under § 1981. The Complaint contains no allegations that plausibly suggest Hartford had any "reason or inclination to discriminate invidiously against whites," like Szplett. Also, Szplett did not allege any facts suggesting Hartford "intended to discriminate on the basis of race" or that discrimination *by Hartford* deprived Szplett of one or more rights enumerated in § 1981. Accordingly, all of Szplett's reverse discrimination actions fail to state claims against Hartford upon which relief can be granted.

**2. Szplett's retaliation action fails to state a claim for relief against Hartford.**

Szplett alleges the defendants retaliated against him in violation of § 1981 because he opposed the allegedly discriminatory employment practices at Kenco. (Compl., ¶s 88-121; pp. 115-121). One of the retaliatory actions taken against him, he alleges, was that "Defendants ... cut

6

off and denied [his] disability" claim.[5] (Compl., ¶ 117; p. 120). To state a claim for retaliation under § 1981, Szplett's Complaint must allege the following: (1) Szplett engaged in protected activity, such as reporting or otherwise opposing discriminatory conduct; (2) he experienced a materially adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

Even assuming Szplett's opposition to Kenco's allegedly discriminatory employment practices amounted to protected activity, and that Hartford's denial of Szplett's claim for disability benefits was a materially adverse action, Szplett does not allege any facts suggesting Hartford knew anything about Kenco's alleged employment practices or Szplett's alleged opposition to the same. In the absence of such allegations, Szplett's Complaint does not plausibly allege Hartford retaliated against him when it denied his claim for disability benefits. See, e.g., *Stephens*, 569 F.3d at 788 ("Clearly, a superior cannot retaliate against an employee for a protected activity about which he has no knowledge."). Szplett's retaliation action, therefore, does not state a claim for relief against Hartford.

Szplett's failure allege Hartford engaged in *any* racially discriminatory conduct dooms his § 1981 claims against Hartford. None of the Complaint's allegations plausibly suggest Hartford interfered with Szplett's right to "make and enforce" contracts within the meaning of § 1981. Szplett's § 1981 actions, therefore, do not state claims for relief against Hartford and should be dismissed.

**B.     Szplett's action for intentional infliction of emotional harm fails to state a claim against Hartford.**

Szplett alleges "Defendants" are liable for intentional infliction of emotional distress

---

[5] Szplett does not specifically identify Hartford as a defendant to his retaliation action, but Hartford assumes that is what he intended considering his allegation that Hartford was an administrator for the benefits at issue. (Compl., ¶ 22; p. 7).

("IIED") for, *inter alia*, "intentionally den[ying] Plaintiff['s] disability" benefit claim.[6] (Compl., ¶ 232; p. 140-141). That action fails to state a claim for relief against Hartford because it is based on Hartford's denial of Szplett's disability claim and, therefore, is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Furthermore, Szplett failed to allege facts sufficient to state a plausible claim for intentional infliction of emotional distress.

**1. Szplett's IIED action is preempted by ERISA.**

Szplett complains that his claim for disability benefits was denied and that the denial of that claim "inflicted emotional distress upon [him] and [his] family," for which he seeks compensatory and punitive damages, interest, and reasonable attorney's fees and costs. (Compl., ¶s 232, C, D, E, F; pp. 140, 199-200). Szplett's disability claim was governed by ERISA. Because the causes of action available under ERISA are exclusive, any state-law remedies associated with the denial of benefits are preempted. Szplett's state-law IIED claim, therefore, fails to state a claim for relief and should be dismissed.

By providing disability benefits to its employees, Kenco established an "employee welfare benefit plan" ("Kenco Plan"), as defined by ERISA. 29 U.S.C. § 1002(1). Szplett's IIED action against Hartford is based on Hartford's denial of Szplett's claim for disability benefits under the Kenco Plan. The April 8, 2015 letter by which Hartford denied Szplett's claim is attached hereto as Exhibit A. The disability benefits Szplett sought, and Hartford's obligations in connection with the adjudication of his claim, were defined and governed by an insurance policy and certificate of insurance that Hartford issued to Kenco (the "Plan Documents"). Copies of the Plan Documents

---

[6] Szplett alleges "Defendants" are liable for a host of other actions, including but not limited to opposition to Szplett's claim for unemployment benefits, failing to keep Szplett informed as to future employment opportunities at the Manteno facility, withholding Szplett's severance pay, and demoting Szplett. Because all of those alleged actions relate directly to Szplett's employment, and because Hartford is not alleged to have been Szplett's employer, there is no basis inferring Szplett's complaints about those activities are directed at Hartford. In any event, as Hartford explains in Section C, below, Szplett's failure to allege facts identifying the conduct that gives rise to each defendant's liability means his claims fail to state plausible claims for relief under Fed. R. Civ. P. 8.

are attached hereto as Exhibits B and C, respectively.[7]

ERISA establishes "a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 107 S.Ct. 1549, 1556-1557 (1987). "The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Id.* "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is ... preempted." *Aetna Health Inc. v. Davila*, 124 S.Ct. 2488, 2495 (2004). In short, "where ERISA omits a cause of action" related to employee benefits, "Illinois law cannot fill the void." *Teamsters Local Union No. 705 v. Burlington Northern Santa Fe, LLC*, 741 F.3d 819, 825-26 (7th Cir. 2014).

Congress could have included in its civil enforcement scheme a remedy for benefit denials that "inflict[] emotional distress upon [a plan participant] and [his] family," but it elected not to do so. Szplett is not entitled through his IIED action to supplement the remedies ERISA provides for the denial of a claim for benefits. Because allowing Szplett to pursue his IIED action would impermissibly "duplicate, supplement, or supplant" the exclusive remedies ERISA provides, that action is preempted by ERISA. Accordingly, the action fails to state a claim for relief and should

---

[7] Hartford acknowledges that "[a]s a general rule, on a Rule 12(b)(6) motion, the court may only consider the plaintiff's complaint." See *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). But "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Id.* In those instances, the documents "may be considered by a district court in ruling on the motion to dismiss." *Id.* Szplett's Complaint refers to the existence of the Kenco Plan, his right to disability benefits under it, Hartford's obligations in connection with the adjudication of Szplett's rights, and the denial of Szplett's claim for benefits. The Plan's governing documents and the letter denying Szplett's claim, therefore, are central to Szplett's claims against Hartford and may be considered in ruling on Hartford's Motion to Dismiss.

9

be dismissed.

### 2. Szplett's Complaint does not allege facts sufficient to state a plausible IIED claim.

To state an IIED claim under Illinois law, a plaintiff must allege facts suggesting: (1) "the conduct involved [is] truly extreme and outrageous; (2) "the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) "the conduct must in fact cause *severe* emotional distress." *Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir. 2016). Szplett has not alleged facts sufficient to support the first or third elements of an IIED claim.

To qualify as "extreme and outrageous conduct," a defendant's behavior "must go beyond all bounds of decency and be considered intolerable in a civilized society." *Cairel*, 821 F.3d at 835. The Plan Documents declared that Hartford was the "claims fiduciary for benefits under the Policy" and that it had "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." Ex. C, p. 27. Hartford's denial letter confirms it did nothing more than perform its contractual obligations when it denied Szplett's disability claim. Ex. A, pp. 1-4. There is nothing remotely extreme or outrageous about such conduct, and Szplett does not allege any facts suggesting otherwise. Finally, Szplett does not allege any facts suggesting the "emotional distress" he experienced as a result of Hartford's denial of his disability claim was "severe." In fact, in a pleading that is otherwise chock-full of improper conclusory allegations, Szplett does not even allege the conclusion that his emotional distress was "severe."

Szplett's IIED action should be dismissed for failure to state a claim for relief against Hartford because it is preempted by ERISA and because Szplett did not allege facts to support the elements of an IIED action.

**C.     Szplett's causes of action all fail to satisfy the pleading standards of Rules 8 and 9 of the Federal Rules of Civil Procedure.**

**1. Rule 8 demands more than alleging multiple defendants are collectively responsible for the conduct at issue; a plaintiff must allege which defendants are responsible for what conduct.**

Szplett alleges the following causes of action in addition to those discussed above: (1) Obstruction of Justice; (2) Defamation of Character; (3) Negligence; (4) Breach of Fiduciary Duty; (5) Conspiracy to Commit Breach of Fiduciary Duty; (6) Tortious Interference with Prospective Economic Advantage; (7) Civil Conspiracy; (8) Fraudulent Concealment; (9) Aiding and Abetting; (10) "The Estoppels;" and (11) "Quid Pro Quo." All of Szplett's causes of action fail to state claims for relief because each of them improperly lumps all fifteen defendants together without describing which defendants are responsible for what conduct.

Rule 8 demands that when causes of action are asserted against multiple defendants, the allegations of a complaint must identify the conduct giving rise to each defendant's liability. "Liability is personal" and "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). The Seventh Circuit in *Bank of America, N.A. v. Knight*, affirmed the dismissal of claims against multiple defendants because the plaintiff failed to plead facts identifying what each defendant allegedly did wrong. 725 F.3d at 818. The plaintiff alleged a scheme to defraud but, according to the district court, the allegations failed to state claims for relief because they improperly "lump[ed] all of the defendants together, never describing which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct." *Knight*, 875 F. Supp.2d 837, 851 (N.D. Ill. 2012). The decision in the district court was based on Rule 9(b)'s heightened pleading standard for actions sounding in fraud, but the Seventh Circuit went further. It declared that claims "based on a theory of collective responsibility" among multiple the defendants violated not only the

11

heightened pleading standard in Rule 9 but also the less restrictive pleading standard in Rule 8. *Knight*, 725 F.3d at 818 ("A contention that 'the defendants looted the corporation' – without any details about who did what – is inadequate" under Rule 8); *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (a complaint that merely "assemble[s] some collection of defendants and then make[s] vague, non-specific allegations against all of them as a group" does not state a plausible claim for relief). Accordingly, "[a] complaint based upon a theory of collective responsibility must be dismissed." *Knight*, 725 F.3d at 818.

The claims in *Weddle v. Smith & Nephew, Inc.*, No. 14 C 9549, 2016 WL 1407634 *1 (N.D. Ill. April 11, 2016), failed for the same reasons. Following surgery for a fractured ankle, the plaintiff asserted products liability claims against three manufacturers of surgical implant equipment. *Weddle*, 2016 WL 1407634 *1. The plaintiff "alleged adequately that *someone's* product failed," but her allegations that the defendants were collectively responsible for her injuries was deficient because it failed to notify each defendant of what it allegedly did wrong. *Weddle*, 2016 WL 1407634 *2-3 ("Weddle's allegation that 'fractured rod hardware' means that Smith and/or Howmedica and/or DePuy manufactured a defective product is merely a statement of the possible scenarios; it does not state a plausible claim against any of the three manufacturers."); *see also RehabCare Group East, Inc. v. CC Care, LLC*, Case No. 15 C 10876, 2016 WL 2595108 *6 (N.D. Ill. May 4, 2016) (allegations that the undifferentiated "Defendants" made certain promises or representations did not state a plausible claim for relief because the complaint did not give any one defendant sufficient notice of the basis for the plaintiff's promissory estoppel claim against it). Because it was "impossible to discern" from the allegations in the *Weddle* complaint "whether all, some, or none of the defendants' products failed," the complaint failed to state plausible claims for relief against any one of the defendants and was

12

dismissed.

Each of Szplett's remaining causes of action suffers from the "collective pleading" deficiencies that were fatal to the complaints in *Knight* and *Weddle*. Szplett's action for Breach of Fiduciary Duty provides the clearest illustration of the problems his collective-pleading approach creates. Szplett alleges in the first paragraph of his count that "Defendants had a duty of care to Plaintiff and other protected class persons to which they breached and failed to adhere." (Compl., ¶ 182; p. 132). According to paragraph 182, therefore, *all fifteen defendants* owed and breached duties of care to Szplett. The remaining paragraphs of that count flesh out the duty and breach assertions in the first paragraph, at least for some of the defendants. They identify the duties Kenco and Mars allegedly owed to Szplett, and they identify specific acts and omissions that four of the individual defendants allegedly committed that breached those duties. (Compl., ¶s 183-202; pp. 132-135). Beyond Szplett's collective allegation as to the duties "Defendants" owed, Hartford is not identified in any of the paragraphs of the count.

It is not clear whether Szplett actually intends to assert an action for Breach of Fiduciary Duty against Hartford. It seems more likely, based on Szplett's failure to allege any fiduciary duty owed or breached by Hartford, that he intends to assert that claim only against Kenco, Mars, and the individual defendants. But Hartford should not have to guess, and the pleading standards Rule 8 establishes mean it does not have to. First, Szplett's allegation that all "Defendants" had and breached unspecified duties of care is the sort of unadorned, legal conclusion that this Court need not accept as true for purposes of a Rule 12(b)(6) motion. But even if such allegations were not legal conclusions, Rule 8's prohibition on the types of collective pleading found throughout Szplett's Complaint means Szplett's actions fail to state claims for relief.

The confusion caused by Szplett's collective-pleading approach is compounded by his

13

practice of incorporating into other actions "all the preceding paragraphs of [the] Complaint as if fully set forth herein." (Compl., ¶s 9, 88, 146, 174, 224, 229, 240, 284, 317, 332, 385; pp. 100, 115, 125, 130, 139, 140, 142, 151, 157, 160, 171). The effect is that a defendant must not only wonder whether its conduct is implicated by the vague, collective allegations set forth in one specific cause of action, it also must wonder whether the vague, collective allegations in the preceding causes of action expose it to liability in the actions that follow.

It is "impossible to discern" from the allegations in Szplett's Complaint which defendants are alleged to be responsible for what conduct. Szplett's causes of action, therefore, fail to state plausible claims for relief and should be dismissed.

### 2. Szplett's assertions that he was "defrauded" out of his disability benefits do not state claims for relief against Hartford.

Szplett alleges several times in his Complaint that he was "defrauded out of disability benefits" by "Defendants." (Compl., ¶s 5, 6(c), 299, 323; pp. 98, 99, 154, 158). The allegations form part of each of the following claims asserted by Szplett: (1) Disparate Treatment; (2) Civil Conspiracy; and (3) Adverse Actions.[8] The allegations are further incorporated into each of the following actions by reference: (1) Harassment; (2) Retaliation; (3) Obstruction of Justice; (4) Negligence; (5) Tortious Interference with Prospective Economic Advantage; (6) Intentional Infliction of Emotional Distress; (7) Hostile Work Environment; (8) Aiding and Abetting; (9) Quid Pro Quo. (Compl., ¶s 9, 88, 146, 174, 224, 229, 240, 332, 385; pp. 100, 115, 125, 130, 139, 140, 142, 160, 171).

Rule 9(b) requires a party alleging an action sounding in fraud to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). An action sounds in fraud if it is premised

---

[8] Szplett makes similar allegations in paragraphs 456 and 459, pp. 186-187, but those allegations fall under Szplett's RICO claim, which he specifies is not asserted against Hartford. (Compl., p. 175).

14

upon a course of allegedly fraudulent conduct. *Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir.2007). Pleading fraud with particularity requires a plaintiff to "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839-40 (7th Cir. 2018). If the fraud is based on an alleged misrepresentation, for instance, a plaintiff must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014).

Szplett's Complaint fails to allege with particularity the facts necessary to state a plausible claim that he was defrauded out of his disability benefits. Szplett alleges the *"what"* of the alleged fraud: "Defendants provided Szplett's physician with an intentionally false and misleading job description." (Compl., ¶ 6(c); p. 99). But he utterly fails to allege any of the remaining facts required to state a plausible claim premised on fraud. Specifically, Szplett fails to allege what about the job description was "false and misleading," which of the defendants provided the job description to Szplett's physician, when it did so, and how it did so. Szplett's failure to plead those facts with particularity means his actions sounding in fraud fail to state claims upon which relief can be granted. Accordingly, those claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Szplett's Complaint does not allege plausible causes of action against Hartford. This Court, therefore, should dismiss those actions for failure to state claims upon which relief can be granted.

By: /s/ Joseph R. Jeffery
*Counsel for The Hartford*

Donald A. Murday
dmurday@cmn-law.com
Joseph R. Jeffery
jjeffery@cmn-law.com
CHITTENDEN, MURDAY & NOVOTNY LLC
303 W. Madison Street, Suite 1400
Chicago, Illinois 60606
(312) 281-3600

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2019, I electronically filed the foregoing Hartford's Memorandum of Law in Support of its Motion to Dismiss, with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system which sent notification of such filing to the following CM/ECF registered participants:

| | |
|---|---|
| Jody Wilner Moran, Esq. | Thomas R. Davis, Esq. |
| Julia P. Argentieri, Esq. | Kimberly J. Overbaugh, Esq. |
| Jackson Lewis, P.C. | Harmon & Davies, P.C. |
| 150 N. Michigan Avenue | 2306 Columbia Aveue |
| Suite 2500 | Lancaster, PA 17603 |
| Chicago, IL 60601 | tdavies@h-dlaw.com |
| jody.moran@jacksonlewis.com | koverbaugh@h-dlaw.com |
| julia.argentieri@jacksonlewis.com | |

I further certify that a copy of the foregoing has been served by e-mail and U.S. Mail, postage prepaid to the following non-ECF participant:

Leonard A. Szplett
3421 W. 1500 NW Road
Kankakee, IL 60901
Stkbnd2000@aol.com


/s/ Joseph R. Jeffery
CHITTENDEN, MURDAY & NOVOTNY LLC
303 West Madison Street, Suite 1400
Chicago, Illinois 60606
(312) 281-3600 (phone)
(312) 281-3678 (fax)
jjeffery@cmn-law.com