

**UNITED STATES DISTRICT COURT**

FOR THE NORTHERN DISTRICT OF ILLINOIS

LEONARD A. SZPLETT, an individual,

PLAINTIFF,

vs.

KENCO LOGISTIC SERVICES, LLC, a TENNESSEE LIMITED LIABILITY COMPANY, MARS, INC., The HARTFORD, DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE SPIER, ROBERT COFFEY, TODD MOORE, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DWIGHT CRAWLEY, and KELVIN WALSH

DEFENDANTS.

FILED

AUG 16 2019 YS

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1:19-cv-02500
Judge: Gary Feinerman
Magistrate Judge: Young B. Kim

PLAINTIFF'S RESPONSE TO DEFENDANT HARTFORD'S 12b(6) MOTION TO DISMISS

**NOW COMES** Plaintiff, Leonard A. Szplett, Pro Se, in response to Defendants' Motion(s) to Dismiss and for his good cause shown in support of his response Plaintiff states the following; **THAT**:

Szplett contends that the Hartford is liable for violations of §1981 and that is claims are not preempted under ERISA

***1. Szplett's contends that Hartford was an intrical part to the violations of §1981 enacted upon him by Defendants Mars and Kenco and their other employees and agents. Szplett asserts that a Respondeat Superior relationship exists between The Hartford and Kenco and Mars.***

Defendant Mars employed Kenco who in turn had a business relationship with the Hartford who provided and or managed benefits promised to Szplett through his contractual agreement with Kenco Mars. **[Dkt. 1 pg. 7]**

Plaintiff asserts that the contractual agreement was breached and that the breach was a result of unlawful and impermissible acts rooted and grounded in race discrimination. Kenco suggests that the decision to terminate Plaintiff's benefits was The Hartford's. **Exhibit 1**

Szplett's doctor had not released Szplett to return to work and had indicated that he was expected to be away from work six (6) to twelve (12) months. Defendant Kenco was aware that Plaintiff's doctor had not released him to return to work, but he nor his doctor had provided that information directly to Defendant Kenco.

Consequently, Plaintiff asserts that Defendant Kenco had access to that information or that the Hartford violated HIPPA- Health Insurance Portability and Accountability Act.

Additionally, Kenco and The Hartford during the relevant times have been identified as the Plan Administrator relative to the Short Term Disability herein after "STD" Benefits. **[Dkt. #28-3 pg. 2]** Kenco stated that the Hartford managed the benefits for Kenco. **Exhibit 2**

The conduct of Defendant, The Hartford, suggests that they were the Plan Administrator; as the first point of contact for leave of absence was to be made with The Hartford. Additionally, the remaining correspondence related to Plaintiff's disability was disseminated from The Hartford to Plaintiff.

Plaintiff asserts and believes that The Hartford managed the STD benefits and took directives from Defendant Kenco.

Plaintiff also asserts and believes that Defendant Kenco was self-insured for the STD benefits, just as it was for its Medical and Workman's Compensation Benefits.

Consequently, Plaintiff believes that The Hartford acted in complicity whether knowing or unknowingly with Defendant Kenco and Mars in the violation of §1981 and his protected rights, when it failed to pay Szplett his due benefits.

Moreover, Defendant Kenco, according to Defendant Tammi Fowler, had a pattern and practice of hitting employees in their pocket to convey a punitive message of displeasure through psychological torment and economic sanctions. This pattern and practice was used at the Mars Manteno facility often.

The only persons subjugated to this were African Americans who complained of discrimination or those who opposed discrimination. These persons would include: 1) Nathan Doss-suspended for almost two (2) weeks without pay; 2) Dana Woods[1] for better than a week without pay; 3) Scott Marksteiner for more than a week and then indefinitely; 4) Morris Tyson for more than five (5) days; 5) Keith Elliott two (2) days; Edith McCurry without pay for almost three (3) weeks. Just to name a few in contrast to persons who had actually violated company policy, committed serious and more egregious offenses including attempted murder were not subjected to any discipline let alone these kinds of economic sanctions.

*The court of Burlington Northern and Santa Fe Railway Co. v. White, 126 S.Ct. 2405 (2006)-* held that withholding pay is a form of retaliation.

*The Burlington court went on to state at 73:*

> A reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former.

[1] Tammi Fowler reprimanded me for paying Dana Woods his PTO (Paid Time Off) while he was on suspension. Our practice had been to pay PTO to an employee when it was requested, as it was there accrued time/money. We had not been instructed otherwise.

> That is to say, an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay. Cf. *Mitchell,* 361 U. S., at 292 ("[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions").

At the time Defendant, The Hartford, issued its denial letter Plaintiff had already been without pay for more than 39 day--two (2) days past the time when the Court of Burlington stated that a many of reasonable employees would find a month without a paycheck to be a serious hardship *id.* 72 and by the time Plaintiff received the notice on April 14, 2015, now Plaintiff's forty-fifth (45th) day without pay and almost the last day(s) to sign off on Defendant Kenco and Mars severance agreement.

Plaintiff believes that it was calculated and orchestrated to coerce and induce him into agreeing to help Defendants Kenco and Mars and their agents and employees avoid liability and culpability by continuing to violate the constitutionally protected rights of African American employees and those who opposed the discrimination of African American employees. Plaintiff believes that this was the ultimate Quid Pro Quo, as Defendants Kenco and Mars knew that Plaintiff had been without money since February 28, 2015; which coincidentally was the same time that Defendants presented Plaintiff with the severance pay agreement that would require him to assist them in HR matters related to litigation.

Without fail the termination of the offer for severance and the denial of benefits letter coincided. Plaintiff believes that this was not accidental or coincidental.

***Elements of Fraud-***

Plaintiff asserts that a fraudulent and misleading job posting/description was sent to his doctor on his behalf alleging that Plaintiff performed these duties and tasks and as baseline for his physician to assess his functionality against.

Plaintiff can assert that it was either Defendant Kenco one it employees and or agents including The Hartford who forwarded this document to his physician. It would only stand to reason that it be from this pool, as it was from another Kenco managed site that was unrelated to the Mars Manteno facility and no other Defendant or person would have had access to this documentation.

Furthermore, this is one of the specific reasons that Plaintiff cited to the codified standards of the Food Safety and Modernization Act. This act offers a comprehensive system of the mandated quality management scheme ISO 9001[2] that requires it to be a documented and audit complaint system, differing only slightly the FDA's medical device quality management system-Quality System Regulation (QSR) 21 CFR Part 820.

To date, Plaintiff is clear on exactly who sent and when; however, Plaintiff is clear that physician received it and returned it to, as her findings are referenced in several correspondences from the Hartford and Kenco.

Plaintiff believes that discovery with unearth a number of these lingering questions, such as who did what and time that it occurred. Plaintiff also believes that it will also be able to assign the roles and responsibilities of Defendant Kenco and The Hartford and resolve any

[2] International Organization for Standardization-(ISO) 9001 is defined as the international standard that specifies requirements for a quality management system (QMS). Organizations use the standard to demonstrate the ability to consistently provide products and services that meet customer and regulatory requirements. The ISO 9001 scheme requires a quality policy and it is a written commitment from top management to all stakeholders relative to the standard of care to be exercised with regards to compliance to industry and food safety legislation. The quality policy is not a self-imposed policy or standard of care, but a requisite to compliance to food safety legislation. Therefore, the quality policy, the entire quality management system and the food safety management system establish the prerequisites and requisites for compliance to food safety legislation. Another requisite of the system is that the system is validated, verified and continually improved. The system unequivocally, affirms that the written standards and maximums are adhered to as cited, as well as, documenting and logging any deviations from the written standards for continual improvement. This includes a Document requirement provision that addresses the control of documents and records. i.e. job descriptions-

outstanding issues relative to each of their involvement in the administration of Plaintiff's STD benefits.

Moreover, Plaintiff asserts that it would be prudent to dismiss The Hartford in the face of these unresolved issues and questions.

Plaintiff also looks to the courts for their expertise to draw reasonable inference(s) that the defendant(s) is liable for the misconduct(s) alleged. *Twombly, 550 U.S., at 556, 127 S.Ct. 1955*

Plaintiff also asks that leave be granted him to amend his complaint if there are any noted deficiencies by the court.

**Wherefore,** Plaintiff prays to this Honorable court that Defendant, The Hartford's motion to dismiss be denied and if there are any noted deficiencies in Plaintiff's case that Plaintiff be granted leave to amend his complaint to correct those deficiencies. And any arguments that Defendants failed to raise with Plaintiffs' claims are waived. *See Steen v. Myers,* 486 F.3d 1017, 1020-21 (7th Cir. 2007) (absence of discussion in brief amounts to abandonment of argument).

Respectfully Submitted this 13 Day of August 2019 by:

Leonard Szplett
Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com

CERTIFICATE OF SERVICE

Please take notice that on August 13, 2109 I, Leonard A. Szplett, hereby do, certify that I did file a RESPONSE TO DEFENDANT HARTFORD 12b(6) MOTION TO DISMISS with the NORTHERN DISTRICT OF ILLINOIS in the foregoing matter of Case No. 1:19 CV-02500 and have served the persons identified on the docket's service list through Notice of Electronic Filing generated by the Court's CM/ECF system through the Clerk's Office.

Respectfully Submitted this 13 Day of August 2019 by:

Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com



**MANAGEMENT SERVICES, LLC**
**2001 Riverside Drive, Chattanooga, TN 37406**

June 8, 2015

**Exhibit 1-Hartford 12b(6) response**

VIA ELECTRONIC MAIL ONLY

Jordan TraVaille Hoffman, P.C.
jthoffmanlaw@gmail.com

Re: Leonard Szplett

Dear Mr. Hoffman:

I am in receipt of your June 7, 2015, letter regarding a "second demand for the monies owed" to Mr. Szplett. As it was in my May 8 letter to you, the demand is again rejected.

Whether or not Mr. Szplett is entitled to short or long term disability benefits is not Kenco's decision. That decision is made by The Hartford. I assume from your letter that The Hartford denied Mr. Szplett's application for benefits in whole or in part. However, that does not mean that Mr. Szplett was able to return to work. Indeed, when Kenco inquired about Mr. Szplett's return to work (toward the end of January 2015, after Mr. Szplett exhausted his FMLA leave), his doctor represented that Mr. Szplett could not work "in any capacity," and that he would be restricted from performing his job functions for "6-12 months." Enclosed is a copy of the Physician's Statement from Mr. Szplett's doctor for your review.

Instead of terminating Mr. Szplett at that time, Kenco allowed Mr. Szplett to stay out on leave in case the diagnosis or prognosis improved. At the same time, since he wasn't working, Kenco did not pay Mr. Szplett. To Kenco's knowledge, Mr. Szplett's condition did not change through the date of his separation.

Respectfully submitted,

Jay Elliott
Counsel for Kenco Logistics Services, LLC
2001 Riverside Drive
Chattanooga, TN 37406
Jay.Elliott@KencoGroup.com
Work: (423) 643-3398

Exhibit 2- Hartford 12b(6) response

KENCOGROUP.COM KENCOTOYOTALIFT.COM





KENCO

SEARCH

WHO WE ARE LOCATIONS HUMAN RESOURCES CAREER OPPORTUNITIES EMPLOYEE RECOGNIT

Home » HR/Payroll » Benefits - new » Benefit Offerings » Life and Disability

BEST PRACTICES
KENCO OPERATING SYSTEM
COMMUNICATION
COMPANY DIRECTORY
HUMAN RESOURCES
INDUSTRIAL ENGINEERING
INFORMATION TECHNOLOGY
KENCO ACCOUNTING
QUALITY
REAL ESTATE/MAINTENANCE
RISK MANAGEMENT
LEARNING & DEVELOPMENT
TRANSPORTATION
OPERATIONAL EXCELLENCE TRAINING INITIATIVE

Powered by SiteNow® from Williams Web

# Life Insurance & Disability

## Base Life Insurance

**Employees**

- Kenco provides this benefit **at $0 cost to you.**
- Each Employee has coverage in the amount of 1 times your annual earnings *($300,000 Maximum)*

**Dependents**

- Kenco provides, **at $0 cost to you**, a dependent life plan for eligible employees.
- This is a plan with a $2,000 benefit for spouse and each enrolled dependent child
- Dependent information must be listed at time of enrollment by employee.

## Optional Life Insurance

**The Basics**

- You have the opportunity through payroll deduction, to purchase Term Life insurance that can supplement the employer paid Base Life coverage.
- The cost is based on your age.
- Supplemental life insurance is also available for dependent children.

**Benefit Amounts**

- Each eligible **employee** may elect coverage up to 5x their annual salary (maximum $500,000) in $10,000 increments.
- Your **spouse** may elect coverage in $10,000 increments, not to exceed 50% of the employee's coverage amount (maximum $250,000). Employee enrollment required for spouse eligibility.
- Employees who enroll within the first 120 days of hire are eligible for the Guaranteed Issue Amount, up to $150,000 for employees and up to $50,000 for spouses.

## Using Y

For gener
Insurance
**The Hart**
www.ther
1-800-54

To file or
Short-Ter
contact
The Hartf
www.ther
1-800-54

## Resour

Life and D

**Life & Di**
**Documer**

- Employees who enroll after 120 days of hire will be required to complete the Hartford's personal health application and will be subject to an approval process through the Hartford. Contact your site HR administrator for details.

request.
HR Admir
Benefits.a
@kencog
copy

Eligibility

## Short-Term Disability

### The Basics

- Kenco provides all eligible employees with a Short Term Disability benefit, at $0 cost to the employee.
- This plan will provide you with 60% of your basic weekly earnings or the maximum amount based on job classification as noted in the Plan Summary.
- Benefits are paid for a duration up to 26 weeks or until no longer disabled.
- The Elimination Period, a period of continuous disability which must be satisfied before an employee is eligible to receive benefits, is 14 days for injury and 14 days for illness.
- Maternity leave is covered as any other illness.
- *Pre-existing exclusions are applicable and may disqualify claim approval. Check with benefits.administration@kencogroup.com for details.*

## Questic

Contact tl
your site

benefits.a
@kencog

### Filing a Claim

Your disability program is managed by The Hartford. If you will be away from work for more than 14 days due to your own accident or illness, you should file a claim with the Hartford.

**Step 1: Know when it's time to file**

- If your absence is scheduled, such as an upcoming hospital stay, call The Hartford prior to your last day of work.
- If your absence is unscheduled, please call at your earliest convenience (within 3 days of the absence).

**Step 2: Have this information ready**

- Name, address, phone number, and other key identification information
- Name of your department and last day of active full-time work
- Your manager's name and phone number
- The nature of your claim
- The name, address, phone & fax numbers of the physician who is treating you

**Step 3: Call the Hartford or visit their website**

- 1-800-549-6514
- Operating hours are from 8am - 8pm CT, Monday - Friday
- You can also file a claim online at TheHartfordAtWork.com

## Long-Term Disability

**The Basics**

- Kenco offers a Long Term Disability plan.
- This plan will provide you with 60% of your basic monthly earnings or the maximum amount based on job classification as noted in the Plan Document.
- Benefits are payable to Social Security retirement age or until you are no longer disabled.
- The Elimination Period, a period of continuous disability which must be satisfied before an employee is eligible to receive benefits, is 180 days.
- Partial disabilities are covered.
- For details about waiting period, monthly benefit amounts, pre-existing exclusions and other details see your HR administrator to request a Long-Term Disability Plan document.
- Employees who enroll after 120 days of hire will be required to complete the Hartford's personal health application and will be subject to an approval process through the Hartford. Contact your site HR administrator for more information.

---

This is only intended to offer an outline of benefits. All details and contract obligations of plans a contract/insurance documents, including any disclosures by the health reform law, the Patient Pı Act (PPACA). In the event of conflict between this information and the group contract/insurance ( contract/insurance documents will prevail. Please contact the Benefits Department at benefits.administration@kencogroup.com for further information.

This page was last updated on Mon Aug 4, 2014.

Powered by SiteNow® from Williams Web