

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

LEONARD A. SZPLETT, an individual,

PLAINTIFF,

vs.

KENCO LOGISTIC SERVICES, LLC, a TENNESSEE LIMITED LIABILITY COMPANY, MARS, INC., The HARTFORD, DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE SPIER, ROBERT COFFEY, TODD MOORE, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DWIGHT CRAWLEY, and KELVIN WALSH

DEFENDANTS.

**FILED**

AUG 16 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1:19-cv-02500
Judge: Gary Feinerman
Magistrate Judge: Young B. Kim

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S KENCO LOGISTICS, DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE SPIER, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DWIGHT CRAWLEY, and KELVIN WALSH'S 12b(6) MOTION TO DISMISS

**NOW COMES** Plaintiff, Leonard A. Szplett, Pro Se, in response to Defendants' Motion(s) to Dismiss and in support of his response Plaintiff states the following; THAT:

1.  Plaintiff contends that his claims under 42 USC 1981 and the underlying torts, as well as, 18 U.S.C. §1962(c) & (d) were timely filed on April 12, 2019 as this was the third (3rd) year, eleventh (11th) month and twenty-nine (29th) day.

2.  **Plaintiff's 42 U.S.C. 1981 and RICO claims have four (4) year statute of limitations.**

**The trigger of the clock**

Plaintiff had taken an approved medical leave of absence in late October of 2014, as a form of constructive discharge from his duties as the HR/Accounting Manager at the Mars Manteno facility. The medical leave of absence was due to work related stress stemming from the hostile work environment charged with racial animus.

While out on medical leave, Plaintiff was paid short term disability benefits. Plaintiff was informed that Kenco had lost its contract with Mars. He was also informed that "they" had decided to keep Plaintiff on as a paid employee until March 29, 2015. Plaintiff also asserts that the letter indicated that he was entitled to severance pay[1]. Szplett was allegedly retained by Defendant Kenco because he had not applied to continue working at the Mars Manteno facility with the new management company Xcel.[2] [Dkt. 1 pg. 109 ¶ 55 & 56]

On or about April 14, 2015, Plaintiff received a letter from the Hartford dated April 8, 2015 and metered with postage April 9, 2015 stating that Plaintiff's benefits were being retroactively denied as of February 28, 2015. **Exhibit 1 & [Dkt. #28-1 pg.2]**

---

[1] The severance agreement required Plaintiff to waive all claims against Defendant Kenco and to help with HR matters.

[2] Plaintiff contends that he was never informed on how to continue his employment at the Mars Manteno facility and therefore, was not afforded the opportunity to apply and continue his employment at the Mars Manteno facility with Xcel. Plaintiff asserts that this was intentional and in retaliation for his failure to act in complicity with Defendants Kenco and Mars. And for his opposition to discriminatory treatment of African Americans and others who opposed discriminatory treatment.

Plaintiff received this denial of benefits just as the time was expiring for him to sign off on the terms and conditions of the proposed severance pay agreement in order to receive the severance pay.

Plaintiff subsequently learned within the next day or so after receiving the denial letter from Hartford that he had been intentionally mischaracterized Defendant Kenco and Mars to the Illinois Department of Human Rights (herein after "IDHR") and the Equal Employment Opportunity Commission (herein after "EEOC.") Szplett had been mischaracterized as never being the HR/Accounting manager. [Dkt. 1 pg. 60 ¶302]

It was at this time that Plaintiff began to suspect that something had gone amiss with Plaintiff's employment and his benefits. It was at this time that Plaintiff realized that he was being coerced, harassed and retaliated against by Defendants Kenco, Mars and their agents and or employees.

As of April 24, 2015, Plaintiff had not received the March salary as indicated. Plaintiff understood that an employer has up to thirty (30) days after the separation of an employee to remit any monies due them. Plaintiff also understood that he could not make any lawful claims for such monies until such time had expired. Plaintiff also understood that he could not be paid both his salary and his disability benefits at the same time. Plaintiff made an inquiry regarding the March salary.

On June 8, 2015, Defendant Jay Elliott on behalf of Defendant Kenco stated that the demand for the March 2015 monies due Szplett was rejected. It was also indicated that it was the insurance company {The Hartford}[3] who stated that Szplett was not disabled enough to be on disability, yet he was not well enough to return to work. **Exhibit 2**

---

[3] The Hartford and Kenco, prior to this litigation, have both been noted as the Plan Administrator for the Short Term Disability Benefits. Consequently, Plaintiff is not clear on who the actual decision maker is, as both entities cannot co-exist as the Plan Administrator. Plaintiff believes that with discovery the actual roles and responsibilities of the Hartford, Kenco and others can be determined.

On the contrary to the June 8, 2015 statement, Defendant Kenco had posted on its company intranet that the Hartford managed the short term disability benefits[4] for Kenco. **Exhibit 3** Consequently, this would mean that handling of Szplett's claim and benefits would not be unbiased.

Based upon, Plaintiff's immediate past history with Defendants' Plaintiff knew that he had to do something to preserve his rights. Plaintiff filed claims with the IDHR and the EEOC[5] on or about May 11, 2015 against Kenco Mars.

In response to the formal charges of discrimination, it was indicated in the verified response dated August 5, 2015, that Szplett had never been the HR Manager and that Szplett had suffered no reduction in duties. [Dkt. 1 pg. 61 ¶317] Defendant Elliott also indicated in the same verified response that the reason that they hired Lori Varvel was because of all of the charges of discrimination that had been filed against them because of Szplett's failing leadership. This was the first time that Szplett discovered that he had been permanently replaced and the reason(s) why. At no time had it ever been conveyed to Szplett prior to or during his medical leave of absence that he would no longer be the HR Manager and performing those duties.

Furthermore, Plaintiff contends that Defendants Kenco, Elliott, Hise, Spier, Jabaley, Lopez, Fowler, Mars, Coffey, Moore and others intentionally and fraudulently concealed from Szplett their actions and it was not until the Defendants filed their response in August of 2015 that Szplett was made aware of the adverse employment actions that had occurred.

Moreover, Fowler under oath stated that it was at her suggestion that they hire an HR Manager. The reporting structure had Szplett reporting directly to Fowler with a dotted line to the General Manager of the facility. Szplett never received any disciplinary action or

---

[4] Kenco was self-insured for a number of employee benefit plans including health and workman's compensation. Therefore, Plaintiff asserts that Kenco was self-insured for its short term disability benefits.
[5] The claims filed with the EEOC are still under administrative review to date.

performance write-ups from Fowler[6], who was the Senior Manager of Employee Relations nor from anyone else.

Consequently, the first time that Plaintiff became aware that something was going amiss with is employment was no earlier than April 15, 2015 and it was not clear to him until August 5, 2015 that he had actually suffered the adverse employment action of being demoted from the HR Manager's position and that "we" decided to hire Lori Varvel as the HR Manager[7] because of all of the charges of discrimination that had been filed against.

Additionally, it was not until sometime in July of 2018 that Plaintiff learned that Mars, Inc., Robert Coffey, Todd Moore and others had sanctioned and approved the hiring[8] of Lori Varvel bringing some definition to the "we" mentioned in the August 5, 2015 correspondence to the IDHR/EEOC regarding the hiring of Lori Varvel. [Dkt. 1 pg. 352]   It should also be noted that Moore, indicated that there was a desperate need for the HR Manager at the Mars Manteno facility. [Dkt. 1 pg. 352]

On April 12, 2019, Plaintiff filed his case, which is three (3) years, elven (11) months and twenty-nine (29) days since he received the denial letter from the Hartford on Aril 14, 2015 and a day or two after he became aware the intentional mischaracterization of his job title by Kenco and the potential that something adverse had or was occurring to him.   Additionally, it was not until August of 2015 that Plaintiff officially knew that he was demoted and the reason why he had been replaced.   The Seventh Circuit reiterated the rule that the "statute of limitations begins to run . . . when the party *discovers,* or by exercise of *due diligence* would have discovered, that

---

[6] Tammi Fowler during the relevant times lived in and worked in the Chattanooga, TN area.

[7] Mars, Moore, Coffey and others approved the hiring of the HR Manager on September 24, 2014.   Therefore, the discussion to replace Szplett had long been underway prior to Szplett taking a medical leave of absence in late October of 2014.

[8] Prior to obtaining this information Plaintiff believed that Varvel was brought in minimize any business interruptions due to his absence.   This thought would have been in line with the immediate past practice of Defendant Kenco and Mars in bringing David Jabaley in as the acting General Manager in a seamless transition to replace the former General Manager Kelvin Walsh who had been terminated until the vacancy could be filled.

he has been *injured* and who *caused* the injury." *In Johnson v. EG&G DEFENSE MATERIALS, INC., No. 2: 09-CV-751 TS (D. Utah June 24, 2010) citing Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990).*

Furthermore, it is well established that post employment claims of retaliation are actionable and courts have defined retaliation as a form of discrimination *Jackson v. Birmingham Board of Education,* 544 U.S. 167 (2005). Additionally, the 1991 amendments to section 1981 permit employees to sue for post contract formation/modification conduct, including discriminatory termination.

Defendant(s) also stated in their motion to dismiss that Plaintiff's termination date was March 29, 2015 and that was the trigger date. Defendant(s) did not offer any evidence or authority to support such a contention. *"When* a statement is unsupported, and unsupported statements, whether in oral argument, or in briefs do not count. "*Sommerfield v. City of Chicago,* 613 F. Supp. 2d 1004 (N.D. Ill. 2009); *In re: Payne,* 431 F.3d 1055, 1060 (7th Cir.2005),

*Therefore, Plaintiff's claims are timely filed pursuant to* 42 U.S.C. 1981 and RICO. The underlying torts arising out of Plaintiff's race based claims are timely filed as well. For example, last year in July of 2018, Plaintiff learned other defamatory statements about Plaintiff. These statements were made by Defendant Tammi Fowler during the course of litigation in the matter of *McCurry v. Kenco et al. 16 cv 2273.* These remarks were untrue, negligent and caused Plaintiff additional emotional distress. Moreover, the remaining claims that are subject to the five (5) year statute of limitations are clearly without question timely filed and the claims without designated statute of limitations, such as 42 USC 1985 are subject to the statute of limitations of the underlying tort, which is four (4) years.

Arguendo, if the March 29, 2015 date was the trigger, then it was not until after receiving Defendants motion to dismiss that Plaintiff became aware that there was something unlawful or

impermissible surrounding the actual day of Plaintiff's termination. Plaintiff could only deduce that an unlawful or impermissible act occurred on that day, as that would be the only thing that could trigger the statute of limitations to begin. If that should be the case, Defendants concealed that Plaintiff was injured, until it submitted its motion to dismiss. Prior to this Plaintiff had no knowledge that he was injured or who injured him on that date. This revelation clearly triggers the discovery rule and squarely places Plaintiff in a posture to pursue claims against the Defendants that are statutorily complaint, such as claims: of retaliatory discharge or whistleblower or breach of contract.

3.      ***Defendant's Kenco, Lopez, Walsh, Jabaley, Hise, Spier, Manzello etc.... suggest that all of Plaintiff's claims arise from Kenco's Responses to IDHR or EEOC Charges and that the information from those matters are privileged.***

The cases cited in support of this contention by these Defendants are cases dealing with claims of defamation and are distinguishable from Plaintiff's claims of race based discrimination under 42 U.S.C. 1981, RICO and other state law claims.

Furthermore, these Defendant's did not point to any specific evidence or cite to any authority to support the contention that Plaintiff cannot use statements made by these Defendants and others made under oath or in the course of an investigation or proceeding in other matters before judicial and quasi-judicial forums.

Plaintiff concurs with the holding in the court of <u>*Sommerfield v. City of Chicago*, 613 F. Supp. 2d 1004 (N.D. Ill. 2009)</u> *that when* a: "Statement is unsupported, and unsupported statements, whether in oral argument, *In re: <u>Payne,</u>* <u>431 F.3d 1055, 1060 (7th Cir.2005),</u> or in briefs do not count."

As a matter of precedence, Section 1981 discrimination claims are analyzed in the same manner as claims brought pursuant to Title VII of the Civil Rights Act. <u>*Montgomery v. Am.*</u>

*Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).   Often times Section 1981 and Title VII claims are raised in the same complaint and are analyzed in the same manner.

Consequently, it can be easily inferred that the same set of facts for the analysis are used in both Section 1981 and Title VII claims with regards to race based claims of discrimination. This would have been the case for Plaintiff however; Plaintiff's EEOC complaint(s) are still under review with the EEOC.  Moreover, this same inconsistent information, theories and documentation at bar have been presented to the EEOC for its review and to date has not been rejected by the agency.

Title VII cases requires issue exhaustion prior to going to court. The classic version of the exhaustion requirement generally necessitates a party to go through all the stages of an administrative adjudication before going to court. This ensures that the agency action being challenged is the final agency position and that the agency has had the opportunity to bring its expertise to bear and to correct any errors it may have made at an earlier stage. It also allows for the resolution of disputes before they come to court, thus avoiding potentially unnecessary additions to court dockets.

"Administrative law does this by requiring proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). Citing  Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002) at 1024 (emphasis in original).*

Conversely, as required, Defendant(s) did not make any corrections and or raise any issue relative to the verified and position statements or the supporting evidence submitted to the

regulatory agencies used during the administrative process[9] to correct any information submitted that it may have found was incorrect. Plaintiff believes that Defendant(s) waived the issue in respect to administrative and judicial competency to challenge the information that it submitted on its behalf to prevail as somehow now privileged and or inaccurate. Defendant should not be allowed to prevail on its failure to raise the issue or its inconsistent positions or theories, by using its positions, theories and supporting evidence sometime as a shield and other times as a sword.

The essence of this undermines the entire integrity of the judicial process. The courts have instituted an equitable doctrine of judicial estoppel to "prohibit parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (internal quotations marks and citations omitted); see also Cannon-Stokes v. Potter, 453 F.3d 446, 448 (7th Cir. 2006) ("By making [litigants] choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying." (quoting Chaveriat v. Williams Pipe Line Co.,11 F.3d 1420, 1428 (7th Cir. 1993)).*

Additionally, Plaintiff is in privity to the matters and had been cited specifically by name, title and position before the IDHR, EEOC, District and Seventh Circuit Appellate Courts by these and other Defendants and consequently believes that it is only just that he be able to bring these consistently inconsistent statements to the courts attention.

Moreover, the Seventh Circuit has reasoned in *Donley v. Stryker Sales Corp.*, 906 F.3d 635 (7th Cir. 2018) at 638 that an employer's EEOC response would not be excluded when offered as an admission of a party opponent. See Fed. R. Evid. 801(d)(2); citing *Starks v. George Court Co., 937 F.2d 311, 314 n.2 (7th Cir. 1991)* (using EEOC response as evidence of

---

[9] Defendants highlight and reference their favorable outcomes in the matters of Tyson, Henry and Madison, but seek to classify as privileged the same information from the Tyson, Henry and Madison matters that it used to bring about the favorable outcome that it touts. Interestingly enough Defendants intentionally omit the McCurry matter where Defendants such as Kenco, Walsh, Fowler, Lopez, Varvel, Jabaley, and others just recently stated to the 7th Circuit Appellate Court on April 11, 2019 in case No. 18-3206 that Szplett was the HR Manager. Defendants had also cited Szplett's as the HR Manager as an undisputed fact in its motion for Summary Judgement against McCurry 16- CV-2273 . Plaintiff asks the court to take judicial notice of these highly undisputable facts.

inconsistencies in employer's reasoning); *E.E.O.C. v. C.G. Schmidt, Inc.,* 670 F. Supp. 2d 858, 868-69 (E.D. Wis. 2009) (illustrating how inconsistent and shifting explanations in employer's position statements to EEOC may require denial of summary judgment).

Plaintiff also asserts and believes that the information cannot be privileged as is publicly available in court filings and is also available under The **Freedom of Information Act** (**FOIA**), 5 U.S.C. § 552 from the IDHR and EEOC[10].

### *4.* **Defendants also raised issue with Plaintiff's complaint and its construction**

Plaintiff understood that his complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2), to which he provided. [Dkt. 1 pg. 2 ¶2] Plaintiff also understood that "specific facts were not necessary and that the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus,* U.S., 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted); *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992.

Plaintiff also understood that at a minimum, he had to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* U.S., 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

A claim has "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." This "plausibility" standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).*

---

[10] The records obtained and referenced by Plaintiff were authenticated business records from these agencies.

With that understanding and the understanding that some of his claims required heightened pleading standards, Plaintiff attempted to establish in his complaint that: 1) he was in privity to the Defendants and other employees and agents of Kenco and Mars, as well as, other Plaintiff's and Complainant's in other employment matters before the IDHR, EEOC, District and Seventh Circuit Courts, as well as, other unnamed employees at the Mars Manteno facility; 2) Defendants such as Kenco, Mars, Walsh, Fowler, Lopez, Manzello, Jabaley and others benefited in various judicial forums in using Plaintiff and Plaintiff's position as the HR Manager and. This benefit allowed Defendants to avoid culpability and liability for the unlawful and impermissible acts of overt and covert discrimination in their various forms. This benefit was a detriment to the African American employee's and employees who opposed the discriminatory treatment of African American employees, such as Plaintiff; 3) Defendants and others planned, assisted, encouraged, carried out and furthered their schemes through contrivance, deception, malice and animus; 4) Defendants at the management and executive level(s) created and maintained a hostile work environment charged with racial animus and that Defendant Kenco and Mars executive management, other managers and management team(s) engaged in and knowingly permitted discrimination, racial slurs and epithets, retaliation, wrongful terminations, harassment, and racially motivated acts of potentially fatal harm to African American employees when "it knew about the discriminatory conduct and failed to stop it;" or other racially motivated acts that led to fatalities. It has also been established that racism need not be directed at the complainant in order to create a hostile environment. 59 Fed.Reg. 11449-50. *See also Patterson v. McLean Credit Union,* 491 U.S. 164, 180, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); 5) Defendants and others were negligent per se in violating the civil rights of its protected class employees and acted with a reckless or callous indifference to these federally protected rights; 6) Defendants intentionally interfered with and obstructed justice and its administration towards Plaintiff and

other protected class persons; 7) Defendants provided patently false and misleading information to various governmental and regulatory agencies and judicial forums, such as the district courts and appellate court of the seventh circuit; 8) Defendants breached their fiduciary obligation intentionally and furthered their concerted schemes of deceit, malice and reckless indifference using contrivance with the intent to violate the civil rights of the protected class persons; 9) Defendants were acting in the scope of their employment with the approval of their employers Defendants Kenco and Mars and that all of the Defendants are liable- *RESTATEMENT (SECOND) OF AGENCY (1957), quoted in Ellerth, 524 U.S. at 756, and in Faragher, 524 U.S. at 793;* and that a Respondeat Superior relationship existed between Mars, Kenco and their employees and agents; 10) Defendants perfected their plan(s) to knowingly violate persons protected rights by hiring a Jay Elliott, an attorney, and allowing him to make statements and participate in investigatory proceedings without any firsthand knowledge; 11) Plaintiff was promised employment and benefits under certain conditions and he reasonably relied on that promise to his detriment. As a requisite to Plaintiff's employment, Defendants required Plaintiff to sign the offer letter of employment and various employment policies and an employee handbook or other policy statement that created enforceable contractual rights governed by the traditional requirements for contract formation. Plaintiff believes these actions created a promissory estoppel existed; 12) Plaintiff had engaged in protected activity, suffered pre and post adverse employment actions, coercion, harassment, and various forms of retaliation and; 13) Defendants expected Plaintiff to act in complicity with their unlawful and contrived schemes to violate the protected rights of African Americans and those who opposed discriminatory treatment of African Americans; 14) Plaintiff's medical leave of absence was a form of constructive discharge due to creation of a hostile work environment by Defendants that was charged with racial animus; 15) no pay was a form of retaliation- *Burlington Northern and Santa*

_Fe Railway Co. v. White, 126 S.Ct. 2405 (2006)-_ and; 16) Plaintiff provided enough information through factual occurrences and supporting documentation to make his claims plausible.

Plaintiff also knows that, while there is no 'magic number' of incidents that indicate a hostile work environment, courts have recognized before that an unambiguously racial epithet falls on the 'more severe' end of the spectrum. Cerros v. Steel Tech., Inc., 288 F.3d 1040, 1047 (7th Cir. 2002) and that even one egregious incident could suffice in creating a hostile work environment. _Cerros v. Steel Technologies, Inc._, 398 F.3d 944 (7th Cir. 2005) at 950 citing _Hostetler v. Quality Dining, Inc.,_ 218 F.3d 798, 808 (7th Cir.2000); see also _Daniels v. Essex Group, Inc.,_ 937 F.2d 1264, 1273 (7th Cir.1991).

Plaintiff also looks to the court for its expertise to draw reasonable inference(s) that the defendant(s) is liable for the misconduct(s) alleged. _Twombly, 550 U.S., at 556, 127 S.Ct. 1955_

Plaintiff also asks that leave be granted him to amend his complaint if there are any noted deficiencies by the court.

**Wherefore,** Plaintiff prays to this Honorable court that Defendants Kenco, Hise, Walsh, Crawley, Caines, Jabaley, Lopez, Fowler, Manzello, and Spier motion to dismiss be denied and if there are any noted deficiencies in Plaintiff's case that Plaintiff be granted leave to amend his complaint to correct those deficiencies and that any arguments not raised by Defendants be forfeited.

Respectfully Submitted this 13 Day of August 2019 by:

Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com

## CERTIFICATE OF SERVICE

Please take notice that on August 13, 2109 I, Leonard A. Szplett, hereby do,

certify that I did file a RESPONSE TO DEFENDANTS KENCO LOGISTICS,

DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE

SPIER, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DWIGHT

CRAWLEY, and KELVIN WALSH'S 12b(6) MOTION TO DISMISS with the

NORTHERN DISTRICT OF ILLINOIS in the foregoing matter of Case No. 1:19

CV-02500 and have served the persons identified on the docket's service list

through Notice of Electronic Filing generated by the Court's CM/ECF

system through the Clerk's Office.

Respectfully Submitted this 13 Day of August 2019 by:

Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com



THE
HARTFORD

The Hartford - Group Benefits Claims
PO Box 14306
Lexington, KY 40512-4306



Presort
First Class Mail
ComBasPrice

U.S. POSTAGE ≫ PITNEY BOWES

ZIP 32751 $ 000.38
02 1W
0001387945 APR 09 2015

April 8, 2015

Leonard A. Szplett
3421 W. 1500 N. Rd
Kankakee, IL 60901

Policy Holder:     Kenco

2  CROWNSB  60901

Exhibit 1-Kenco 12b(6)
response



**KENCO** **MANAGEMENT SERVICES, LLC**
2001 Riverside Drive, Chattanooga, TN 37406

June 8, 2015     **Exhibit 2-Kenco12b(6) response**

<u>VIA ELECTRONIC MAIL ONLY</u>

Jordan TraVaille Hoffman, P.C.
jthoffmanlaw@gmail.com

Re:     <u>Leonard Szplett</u>

Dear Mr. Hoffman:

I am in receipt of your June 7, 2015, letter regarding a "second demand for the monies owed" to Mr. Szplett. As it was in my May 8 letter to you, the demand is again rejected.

Whether or not Mr. Szplett is entitled to short or long term disability benefits is not Kenco's decision. That decision is made by The Hartford. I assume from your letter that The Hartford denied Mr. Szplett's application for benefits in whole or in part. However, that does not mean that Mr. Szplett was able to return to work. Indeed, when Kenco inquired about Mr. Szplett's return to work (toward the end of January 2015, after Mr. Szplett exhausted his FMLA leave), his doctor represented that Mr. Szplett could not work "in any capacity," and that he would be restricted from performing his job functions for "6-12 months." Enclosed is a copy of the Physician's Statement from Mr. Szplett's doctor for your review.

Instead of terminating Mr. Szplett at that time, Kenco allowed Mr. Szplett to stay out on leave in case the diagnosis or prognosis improved. At the same time, since he wasn't working, Kenco did not pay Mr. Szplett. To Kenco's knowledge, Mr. Szplett's condition did not change through the date of his separation.

Respectfully submitted,

Jay Elliott
Counsel for Kenco Logistics Services, LLC
2001 Riverside Drive
Chattanooga, TN 37406
Jay.Elliott@KencoGroup.com
Work:  (423) 643-3398

**Exhibit 3- Kenco 12b(6)
response**

KENCOGROUP.COM    KENCOTOYOTALIFT.COM

# KENCO

## THE KENCO CONNECTION

SEARCH

WHO WE ARE    LOCATIONS    HUMAN RESOURCES    CAREER OPPORTUNITIES    EMPLOYEE RECOGNIT

Home » HR/Payroll » Benefits - new » Benefit Offerings » Life and Disability

BEST PRACTICES

KENCO OPERATING SYSTEM

COMMUNICATION

COMPANY DIRECTORY

HUMAN RESOURCES

INDUSTRIAL ENGINEERING

INFORMATION TECHNOLOGY

KENCO ACCOUNTING

QUALITY

REAL ESTATE/MAINTENANCE

RISK MANAGEMENT

LEARNING & DEVELOPMENT

TRANSPORTATION

OPERATIONAL EXCELLENCE
TRAINING INITIATIVE

Powered by SiteNow® from
Williams Web

# Life Insurance & Disability

## Base Life Insurance

### Employees

- Kenco provides this benefit **at $0 cost to you**.
- Each Employee has coverage in the amount of 1 times your annual earnings *($300,000 Maximum)*

### Dependents

- Kenco provides, **at $0 cost to you**, a dependent life plan for eligible employees.
- This is a plan with a $2,000 benefit for spouse and each enrolled dependent child
- Dependent information must be listed at time of enrollment by employee.

## Optional Life Insurance

### The Basics

- You have the opportunity through payroll deduction, to purchase Term Life insurance that can supplement the employer paid Base Life coverage.
- The cost is based on your age.
- Supplemental life insurance is also available for dependent children.

### Benefit Amounts

- Each eligible **employee** may elect coverage up to 5x their annual salary (maximum $500,000) in $10,000 increments.
- Your **spouse** may elect coverage in $10,000 increments, not to exceed 50% of the employee's coverage amount (maximum $250,000). Employee enrollment required for spouse eligibility.
- Employees who enroll within the first 120 days of hire are eligible for the Guaranteed Issue Amount, up to $150,000 for employees and up to $50,000 for spouses.



Using Y

For gener
Insurance
**The Hart**
www.the
1-800-549

To file or
Short-Ter
contact
The Hartf
www.the
1-800-549

Resour

Life and D

**Life & Di
Documer

- Employees who enroll after 120 days of hire will be required to complete the Hartford's personal health application and will be subject to an approval process through the Hartford. Contact your site HR administrator for details.

## Short-Term Disability

### The Basics

- Kenco provides all eligible employees with a Short Term Disability benefit, at $0 cost to the employee.
- This plan will provide you with 60% of your basic weekly earnings or the maximum amount based on job classification as noted in the Plan Summary.
- Benefits are paid for a duration up to 26 weeks or until no longer disabled.
- The Elimination Period, a period of continuous disability which must be satisfied before an employee is eligible to receive benefits, is 14 days for injury and 14 days for illness.
- Maternity leave is covered as any other illness.
- *Pre-existing exclusions are applicable and may disqualify claim approval.  Check with benefits.administration@kencogroup.com for details.*

### Filing a Claim

Your disability program is managed by The Hartford.  If you will be away from work for more than 14 days due to your own accident or illness, you should file a claim with the Hartford.

### Step 1:  Know when it's time to file

- If your absence is scheduled, such as an upcoming hospital stay, call The Hartford prior to your last day of work.
- If your absence is unscheduled, please call at your earliest convenience (within 3 days of the absence).

### Step 2:  Have this information ready

- Name, address, phone number, and other key identification information
- Name of your department and last day of active full-time work
- Your manager's name and phone number
- The nature of your claim
- The name, address, phone & fax numbers of the physician who is treating you

### Step 3:  Call the Hartford or visit their website

- 1-800-549-6514
- Operating hours are from 8am - 8pm CT, Monday - Friday
- You can also file a claim online at TheHartfordAtWork.com

request.
HR Admir
Benefits.a
@kencog
copy

Eligibility

Questic

Contact tl
your site

benefits.a
@kencog

Long-Term Disability

**The Basics**

- Kenco offers a Long Term Disability plan.
- This plan will provide you with 60% of your basic monthly earnings or the maximum amount based on job classification as noted in the Plan Document.
- Benefits are payable to Social Security retirement age or until you are no longer disabled.
- The Elimination Period, a period of continuous disability which must be satisfied before an employee is eligible to receive benefits, is 180 days.
- Partial disabilities are covered.
- For details about waiting period, monthly benefit amounts, pre-existing exclusions and other details see your HR administrator to request a Long-Term Disability Plan document.
- Employees who enroll after 120 days of hire will be required to complete the Hartford's personal health application and will be subject to an approval process through the Hartford. Contact your site HR administrator for more information.

---

This is only intended to offer an outline of benefits. All details and contract obligations of plans a
contract/insurance documents, including any disclosures by the health reform law, the Patient Pr
Act (PPACA). In the event of conflict between this information and the group contract/insurance (
contract/insurance documents will prevail. Please contact the Benefits Department
at benefits.administration@kencogroup.com for further information.

This page was last updated on Mon Aug 4, 2014.

Powered by SiteNow® from Williams Web