UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

LEONARD A. SZPLETT, an individual,

PLAINTIFF,

VS.

KENCO LOGISTIC SERVICES, LLC, a TENNESSEE LIMITED LIABILITY COMPANY, MARS, INC., The HARTFORD, DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE SPIER, ROBERT COFFEY, TODD MOORE, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DWIGHT CRAWLEY, and KELVIN WALSH

DEFENDANTS.

FILED

DEC 11 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Case No. 1:19-cv-02500

Judge Gary Feinerman

Magistrate Judge Young B. Kim

PLAINTIFF'S RESPONSE TO DEFENDANT'S KENCO LOGISTICS, DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE SPIER, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DWIGHT CRAWLEY, and KELVIN WALSH'S MOTION TO DISMISS

**NOW COMES** Plaintiff, Leonard A. Szplett, Pro Se, in response to Defendants' Motion(s) to Dismiss and in support of his response Plaintiff states the following; THAT:

Plaintiff endeavored, believes and hopes that he complied with the Court's order with regards to his amended complaint and that he provided a "short and plain statement of the claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Plaintiff believes that he stated that he was bringing his complaint against the above mentioned Defendants for violations of his civil rights and to remedy the unlawful and discriminatory employment practices that flogged Plaintiff. Plaintiff contended that the causes of action, including any underlying torts, arose out of Section 1981 and RICO claims.

Plaintiff also understood that in this statement "specific facts were not necessary and that the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus,* U.S., 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted); *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992.

Plaintiff further expounds and contends that he was subjected to reverse discrimination because of his association with African Americans and for his failure to act in complicity with his employer Mars, Kenco and their officers, agents and or employees race based stereotyping, civil conspiracies and intentional violation of company and public policy that violated the protected rights of African Americans and or others who opposed such discrimination. Plaintiff asserts that this misconduct was management driven beginning with the highest level of management at the Mars Manteno facility-the General Manager and going up the corporate ladder up to include: Senior Managers, Directors, Vice President(s), Divisional President, Chief Financial Officer, Chief Executive Officer and others.

As a result of the actions of these Defendants and others, Plaintiff experienced a change in terms and conditions of employment, adverse employment decisions, and a racially charged

hostile work environment that led to Plaintiff's medical leave which was effectively a constructive discharge. Plaintiff has also been harassed, coerced, intimidated and maligned.

Based upon Plaintiff's literal understanding of the plain language used, Plaintiff believed that at a minimum, he had to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* U.S., 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

Plaintiff learned that a claim has "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." This "plausibility" standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).*

In applying the above interpretation of "facial plausibility" and the understanding that some of Plaintiff's claims required heightened pleading standards, Plaintiff attempted to meet the Court's order and the other standards such as the plausibility standard in his complaint through the stated facts, the various counts and supporting documentation.

Respectfully, Plaintiff tried to pair up supporting facts for every count that correlated with the requisites to make a viable claim under that statute. i.e. Defendants pointed out in their motion Document #56 page 4 ¶ 2 §3 that Szplett alleges that another employee was left off the witness list for the IDHR. To this point, Plaintiff highlights an instance where ultimately he was being required to act in complicity with a conspiracy to violate an African American employees civil rights by perjuring himself in an investigation before IDHR and EEOC investigator regarding charges of racial discrimination. Plaintiff was told to go the hearing by the General Manager Kelvin Walsh; even prior to being instructed to attend the hearing in April of 2014, Plaintiff's name was submitted as a witness by management and their then counsel in November

of 2013 in a verified position statement. Plaintiff was never interviewed and or questioned by the management of Mars and or Kenco or their counsel relative to this matter.

After this hearing and Plaintiff's resistance to such misconduct, Plaintiff immediately began being ostracized from his duties as the HR Manager. Plaintiff was never again listed as a witness in the other thirty (30) some odd charges that were filed at the IDHR, EEOC or other agencies against the various Defendants in the upcoming months.

Due to Plaintiff's position as the HR Accounting/Manager such misconduct was in direct conflict to the duty of care owed to each employee at the Mars Manteno facility including Plaintiff. Employers have a duty of care to their employees, which means that they should take all steps which are reasonably possible to ensure their health, safety and wellbeing. Plaintiff asserts that this would include a discriminatory and racially hostile free working environment.

Defendants go on to point to Nathan Doss, who in reality raised issues of racial discrimination and disparate pay to human resources and others. After raising these issues Doss was said to have smelled like "weed" by management. Not only was he accused of smelling like weed, but he was humiliated and berated in front of the entire office and others by Mike Manzello the Operations Manager and Valerie Lillie the Quality Coordinator. Doss was forced to go for a drug test or else be fired. Doss was sent with falsified papers stating that he had a worktime accident that facilitated necessitated the drug test. Doss worked the second shift and was not scheduled to work and only came to see if someone could help him locate his hoodie that had been taken when he lasted worked on the weekend. Employee issues are handled by the human resources the department in which Plaintiff managed. Again, another instance where Plaintiff was expected to act in complicity with the various Defendants race based conspiracies

to violate the civil rights of protected class persons and foster the racially charged and animus work environment created by management and their misconduct.

Defendants also point to Vernon Henry being threatened by Pete Monstwillo. Monstwillo made racially motivated threats to Henry in initially in early 2014, while he was a temporary employee. Against recommendations not to hire Monstwillo as a permanent employee, because of his unashamed and outspoken unapologetically racially motivated behavior, he was hired by the then General and Operations Manager's. Monstwillo's continued racial bullying and even his attempt to physically injure and or kill someone (Henry) was more than foreseeable. Monstwillo did not stop after his initial attempt to kill Henry he called the job repeatedly stating that he was going to kill Henry.

No reasonable steps were taken in regards to the safety, health and wellbeing of Henry and the other employees including Plaintiff. This was not the first time that an incident like this had occurred in recent years. In 2012 there was an employee who became an active shooter inside the warehouse who shot an employee. Other employees could have been harmed including Plaintiff. It could have been like the postal shooting or akin to that of the shooting Gary Martin shooting in Aurora, IL this summer.

Plaintiff asserts that it was Defendants duty as the employer and managers of the Mars Manteno facility to abide by company and public policy by following their own policies, which were to dovetail and be in line with public policy. These and other company policies along with the quality management system of these and other policies are governed by a number of statutes and various regulatory agencies such as OSHA and FDA among others.

Defendants Kenco and Mars have policies on paper that each employee is required to sign off on as term and condition of employment relative to harassment, discrimination, violence and other employment policies but refused to follow them.

Instead Defendants expected Plaintiff to forsake his duties and responsibilities as the HR Manager and act in complicity by participating in their conspiracies and schemes to violate the federally protected rights of the employees; they expected Plaintiff at a minimum to commit perjury or cosign off on falsified documents and records among other things.

Plaintiff was also bombarded with complaints and confronted with angry employees because of the Defendants failure to follow company and public policy. Plaintiff and his assistant were placed in harms danger along with other employees at the Mars Manteno facility. Employees even damaged our personal property including keying our vehicles. Plaintiff contends that this unlawful expectation to act in complicity with their race based stereotypes, conspiracies and schemes along with the lack of reasonable care for Plaintiff's safety, health and well-being was a breach of fiduciary duty to him and breach of their duty of care to him.

Additionally, Defendant Elliott on behalf of other Defendants, indicated on or about August 5, 2015, to the IDHR and EEOC, in a verified position statement, in response to charges filed by Plaintiff in May of 2015 that it was Plaintiff's failing leadership that led to "all the charges of discrimination filed against them" and; as a result of these charges "they" decided to hire Lori Varvel as the HR Manager.

It was at this time in August of 2015 that Plaintiff learned that he had been demoted and that his failure to act in complicity to race based stereotypes, conspiracies and schemes had been a part of a quid pro quo for Plaintiff to retain his position as the HR Manager. It was also at that time Plaintiff learned that his "failing leadership" was the root cause of the discrimination

charges filed against the various Defendants. Plaintiff was never named in any of the charges. Plaintiff had not ever received any negative performance review in his thirteen (13) years of employment at the Mars Manteno facility.

Plaintiff rejects the theory that he cut and paste information relative to other employees and their allegations, but that he was a firsthand factual witness and at times an unwilling participant in these actions. Plaintiff contends that these and other instances were a part of charges of discrimination filed against the various Defendants to which Defendant Elliott made his August 5, 2015 proclamation that it was Plaintiff's failing leadership that led to all the charges being filed and the hiring of Lori Varvel as the new HR Manager. Therefore, it is hard to reject the notion now that these instances are not relevant when in fact these were the instances that allegedly got Plaintiff demoted according to Defendant Elliott.

Plaintiff also rejects the theory that he was not harmed by the various Defendants breaches of fiduciary duty and their duty of care towards Plaintiff. Plaintiff contends that he has suffered irreparable harms such as: 1) a demotion (one of the many adverse employment decisions); 2) economic interference with respect to future employment, denial of benefits (disability and unemployment), and pay-no pay is a form of retaliation- _Burlington Northern and Santa Fe Railway Co. v. White, 126 S.Ct. 2405 (2006)_ ; Section 1981 authorizes retaliation claims. _Humphries v. CBOCS West, Inc._, 474 F.3d 387 (7th Cir. 2007) upheld by _CBOCS West, Inc. v. Humphries,_ 128 S. Ct. 1951, 1961 (U.S. 2008); 3) a constructive discharge in the form of a medical leave of absence; 4) a hostile and racially charged work environment amongst other things. Additionally, the courts have recognized that racism need not be directed at the complainant in order to create a hostile environment 59 Fed.Reg. 11449-50. *See also Patterson v. McLean Credit Union,* 491 U.S. 164, 180, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) and that even

one egregious incident could suffice in creating a hostile work environment. *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944 (7th Cir. 2005) at 950 citing *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir.2000); see also *Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1273 (7th Cir.1991).

Defendants have used Plaintiff and his position as the HR Manager sometimes as shield and sometimes a sword, while sometimes discounting or minimizing Plaintiff and his position and at other times affirming that Plaintiff was the HR Manager in an attempt to prevail on their most current litigation.

**Plaintiff again rejects the notion that his claims are time-barred.**

Plaintiff contends that his claims under 42 USC 1981 and the underlying torts, as well as, 18 U.S.C. §1962(c) & (d) were timely filed on April 12, 2019 as this was the third (3rd) year, eleventh (11th) month and twenty-nine (29th) day.

**Plaintiff's 42 U.S.C. 1981 and RICO claims have four (4) year statute of limitations.**

**Plaintiff contends that postemployment actions are actionable.** The term "make and enforce contracts" in § 1981 "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b)

Plaintiff references and incorporates all responses previously made to Defendants arguments in their motion to dismiss relative to Plaintiff's claims being time-barred. Additionally, Plaintiff contends that *even if* Defendants contentions are true relative to a February 26, 2015 notice date or a March 29, 2015 termination date, Plaintiff was under doctor's care for work related stress, to which Defendants corroborate his leave in their current motion (Docket #56 page 6 footnote #2).

Plaintiff was under so much stress that he was off work and not expected to return to work for another six (6) to twelve (12) months and medicated to the point that his mental capacity was diminished and was not at point where he had the total presence of mind to reasonably understand, contemplate and assimilate what was actually occurring to him.

Even if those dates are trigger dates, Plaintiff contends that he did not become aware that there was a possibility that a wrong had occurred until he a series of incidents occurred beginning around April 14, 2015 when Plaintiff: 1) Received the Hartford's letter date April 8, 2015 metered with postage on April 9, 2015 retroactively denying Plaintiff's benefits back to February 28, 2015. The correspondence stated that Plaintiff could return back to work. Plaintiff later found out several weeks later that this was in the absence of any medically supported evidence by any physician, including Plaintiff's and or Defendants' physician. Therefore, Plaintiff had no idea until after his doctors visit several weeks later that something had gone amiss with his disability and that in fact his physician had not released him to return to work; 2) Receipt of information around April 15, 2015 that Plaintiff had been mischaracterized by Defendant Kenco other than the HR Manager; 3) after a legal review of the severance agreement it was determined by Plaintiff would have to assist Defendants HR litigation and waive his rights to any claims in order to obtain severance and; 4) By April 29, 2015 Plaintiff had confirmation that he would not be paid his March salary as stated and provided by the WARN ACT.

Therefore, Plaintiff contends that the earliest time that he could have possibly known that he was harmed or suffered harm was around April 15, 2015, but that Plaintiff did not have a better and full understanding until the end of April and the beginning of May of 2015 that he had been harmed. "[A] cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."), cert. denied, *Nasim v.*

*Warden, Maryland House of Correction*, 516 U.S. 1177, 116 S. Ct. 1273, 134 L. Ed. 2d 219 (Supreme Court 1996).

Last but not least, Plaintiff was not informed until August of 2015 by way of a position statement that he had been demoted and Lori Varvel was hired as the new HR Manager. Additionally, in *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990), this court stated that: "Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date — often the same, but sometimes later — on which the plaintiff discovers that he has been injured."

Plaintiff also looks to the court for its expertise to draw reasonable inference(s) that the defendant(s) is liable for the misconduct(s) alleged. *Twombly, 550 U.S., at 556, 127 S.Ct. 1955*

Plaintiff asserts that he consulted the local rules and reviewed a number of federally filed cases to comply to the best of his understanding how to draft his complaint and if there are any deficits or deficiencies it was not because Plaintiff did not try to exercise the proper due diligence and did the best that he could to balance the literal meanings of all of the required standards need to have a viable complaint. Plaintiff streamlined his complaint to the best of his knowledge and ability. Plaintiff also once again asks that leave be granted him to amend his complaint if there are any noted deficiencies by the court.

**Wherefore,** Plaintiff prays to this Honorable court that Defendants Kenco, Hise, Walsh, Crawley, Caines, Jabaley, Lopez, Fowler, Manzello, and Spier motion to dismiss be denied and if there are any noted deficiencies in Plaintiff's case that Plaintiff be granted leave to amend his complaint to correct those deficiencies and that any arguments not raised by Defendants be forfeited.

Respectfully Submitted this 2 Day of December 2019 by:

*Leonard Szplett*

Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com

CERTIFICATE OF SERVICE

Please take notice that on December 2, 2109 I, Leonard A. Szplett, hereby do, certify that I did file a RESPONSE TO DEFENDANTS KENCO LOGISTICS, DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE SPIER, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DWIGHT CRAWLEY, and KELVIN WALSH'S 12b(6) MOTION TO DISMISS with the NORTHERN DISTRICT OF ILLINOIS in the foregoing matter of Case No. 1:19 CV-02500 and have served the persons identified on the docket's service list through Notice of Electronic Filing generated by the Court's CM/ECF system through the Clerk's Office.

Respectfully Submitted this 2 Day of December 2019 by:

*Leonard Szplett*

Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com