UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

FILED

DEC 11 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

LEONARD A. SZPLETT, an individual,

PLAINTIFF,

VS.

KENCO LOGISTIC SERVICES, LLC, a TENNESSEE LIMITED LIABILITY COMPANY, MARS, INC., The HARTFORD, DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE SPIER, ROBERT COFFEY, TODD MOORE, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DWIGHT CRAWLEY, and KELVIN WALSH

DEFENDANTS.

Case No. 1:19-cv-02500

Judge Gary Feinerman

Magistrate Judge Young B. Kim

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MARS, INC., ROBERT COFFEY and TODD MOORE'S 12b(6) MOTION TO DISMISS

**NOW COMES** Plaintiff, Leonard A. Szplett, Pro Se, in response to Defendants' Motion(s) to Dismiss in support of his response Plaintiff states the following; **THAT**:

Plaintiff endeavored, believes and hopes that he complied with the Court's order with regards to his amended complaint in that he provided a "short and plain statement of the claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Plaintiff believes that he stated that he was bringing his complaint against the above mentioned Defendants for violations of his civil rights and to remedy the unlawful and discriminatory employment practices that flogged Plaintiff. Plaintiff contended that the causes of action, including any underlying torts, arose out of Section 1981 and RICO claims.

Plaintiff rejects the notion that he failed to state a claim for which relief can be granted because it exceeds what is required under Fed. R. Civ. P. 8(a)(2) but comes short of what is required under Fed. R. Civ. P. 12(b)(6).

Plaintiff understood from the plain reading that according to Fed. R. Civ. P. 8(a)(2) the short plain statement does not require that "specific facts are not necessary and that the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, U.S., 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted); *Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992.

Plaintiff further expounds and contends that he was subjected to reverse discrimination because of his association with African Americans and for his failure to act in complicity with his employer Mars, Kenco and their officers, agents and or employees race based stereotyping, civil conspiracies and intentional violation of company and public policy that violated the protected rights of African Americans and or others who opposed such discrimination. Plaintiff asserts that this misconduct was management driven beginning with the highest level of management at the Mars Manteno facility-the General Manager and others such as Robert Coffey, Todd Moore and others. This management scheme, management at its highest level(s), with the authority to make and execute tangible employment decisions company wide, altered the terms and conditions of Plaintiff's and others employment for unlawful and impermissible reasons that were rooted and grounded in racial bias`s and discrimination. Moreover, the

Seventh Circuit has noted and cautioned the lower courts to view "a supervisor's [conduct] in the workplace as much more serious than a co-worker's." *Soucie v. CITY OF BRAIDWOOD*, No. 17-cv-5235 (N.D. Ill. Mar. 18, 2019) citing *Gates*, 916 F.3d at 638.

As a result of the actions of these Defendants and others, Plaintiff experienced a change in terms and conditions of employment, adverse employment decisions, and a racially charged hostile work environment that led to Plaintiff's medical leave which was effectively a constructive discharge and loss wages. Plaintiff has also been harassed, coerced, intimidated, maligned and subject to quid pro quo's. Additionally, Plaintiff is stating that Defendants have benefited from changing their legal theories and positions in other courts and governmental agencies relative to Plaintiff being or not being the HR Manager including Plaintiff's Title VII claims that are currently under reviewed with the EEOC.

Based upon Plaintiff's literal understanding of the plain language used, Plaintiff believed that at a minimum, he had to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, U.S., 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) as referenced in Defendants memorandum Docket # 62 page 4 ¶2.

Plaintiff learned that a claim has "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." This "plausibility" standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In applying the above interpretation of "facial plausibility" and the understanding that some of Plaintiff's claims required heightened pleading standards, Plaintiff attempted to meet the

Court's order and the other standards such as the plausibility standard in his complaint through the stated facts, the various counts and supporting documentation.

## II. Clarifying the issues

Respectfully, Plaintiff tried to pair up supporting facts for every count that correlated with the requisites to make a viable claim under that statute to clarify who the appropriate Defendants were; what the harm was and correlate the actions of these Defendants to support Plaintiff's claim. Plaintiff's job as the HR Manager required him to be knowledgeable and versed in of all of Defendant Mars and Kenco's rules, regulations, protocols, procedures, policies, forms that at any given time Plaintiff could interpret, apply and enforce them. Moreover, Defendant Kenco and Mars policies require that HR be involved in employee management and that Plaintiff and his assistant maintained the employee files for the Mars Manteno facility since their respective employment. Plaintiff had successfully performed these and other duties for more than thirteen (13) years, without any performance management or disciplinary issues.

Furthermore, in pointing to instance with other employees, as the HR Manager Plaintiff was directly involved and or the responsible person for the remediation of employee issues at the Mars Manteno facility. The misconduct of management created countless issues that were not mentioned, placing Plaintiff in a position time after time to act either in complicity with management's contrived schemes to intentionally discriminate against African Americans and/or those who opposed such treatment.

After opposing such behavior, Plaintiff began being ostracized and limited from performing Plaintiff's assigned duties, creating other employee issues. Employees were not getting resolutions to their issues or complaints. This fanned the flames of the already racially

charged and animus work environment; leaving Plaintiff and his assistant in the path of the fury of the disgruntled and irate employees. This same type of behavior and refusal to address employee issues led to an employee shooting another employee in late 2012. Plaintiff along with these named Defendants and other management were clear that the employees working here at the facility were capable of taking matters into their own hands.

This type of unchecked and unbridled hostile work environment was now openly condoned and fostered by management at the highest level at the facility up to and including the senior management and executive officers. Creating a terror in the workplace and leaving Plaintiff in harm's way as the first line of defense, simply because they failed to follow company and public policy; which Plaintiff asserts is a breach of their fiduciary obligation and duty of care to each employee at the Mars Manteno facility, including Plaintiff.

For example, the Mars Manteno facility is a warehouse that houses and distributes food for human consumption according to the FDA. As a result to be compliant with FDA our primary focus at the warehouse would be food defense.

> Food Defense is the effort to protect the food supply against intentional contamination due to sabotage, terrorism, counterfeiting, or other illegal, intentionally harmful means…. Food Defense differs from Food Safety, which is the effort to prevent unintentional contamination of food products by agents reasonably likely to occur in the food supply (e.g., E. coli, Salmonella, Listeria) https://www.foodprotection.org/resources/food-safety-modernization-act/downloads/2013-03-fsma-article-3.pdf

It has been cited that authorities first granted to the FDA were under the Public Health Security and Bioterrorism Preparedness and Response Act of 2002 (Bioterrorism

Act) (1) as well as several Homeland Security Presidential Directives (HSPDs) and Presidential Policy Directives (PPDs) that initiated key food defense actions, beginning in 2003, which we had been practicing at the facility since 2006. These and other standards are comprised in the Food Safety and Modernization Act also known as "FSMA" that became the warehouse's mandate in 2013 to which we standardized the rules, regulations, processes, procedures, protocols and forms that are audited for compliance.

Defendant Mars as well as Defendant Kenco are audited to these standards. Defendant Mars is audited internally by persons such as Matt Chick and externally by Lloyd's Register to the ISO 22000 standard. Every employee must comply with these standards as a term and condition of their employment. Which simply in short means that we have written documented policies, protocols and procedures for every activity performed at the Mars Manteno warehouse; every policy, procedure and protocol is vetted for accuracy and signed off by management and the employee; any change or deviation from these policies, procedures and protocols are to be documented. These policies include Defendants various employment policies that deal with harassment, discrimination, employee management, discipline, pay hiring and firing among other policies. This scheme also required job descriptions for each position at the facility that were formulated from job analysis. The facility also had work instructions for each position. Additionally, everything is documented on an appendix.

**A paper trail....**

There is a paper trail consisting of written records, procedures for record keeping, storing, and maintaining records, which are audited for compliance. There are both hard and electronic copies of these retained for a minimum of seven (7) years. There is even a

designated person who must meet the FDA requirements to oversee that these records are maintained according to FSMA using the ISO 22000 standard. The entire written and documented system is audited to the ISO 22000 standards internally and externally. Audit findings become a part of the permanent record. This mandated system requires management participation and buy in and is designed to continually improve and eliminates defects, such as inconsistencies in the interpretation and application of policies, procedures, protocols, rules and regulations.

Therefore, management was aware of the policies, procedures, protocols, rules and regulations, as each employee was required to sign off on these various items. These signatures were logged and it was a known requisite to our compliance. Defendants were reckless as they intentionally violated public policy and their own policy by not adhering to them.

Defendants intentionally discriminated against Plaintiff when they did not follow: their change in document policy, their performance management policy, their hiring and termination policy, their anti-harassment and employment policies, and when they did not provide Plaintiff's actual job description to his physician. Defendants breached their fiduciary obligation and duty of care to Plaintiff.

**Therefore**, Plaintiff rejects the notion that his SAC should be stricken in its entirety as scandalous because of allegedly having an effect of confusing issues and that its length and complexity is an undue burden to Defendants and renews his previous position taken in his August 13, 2019 response to Defendants motion to dismiss.

III.     **Plaintiff rejects the notion that he did not comply with the Court's order.**

Plaintiff admits that his complaint maybe in artfully pled and perhaps may be inferior to that of a skilled and or trained professional in law. Plaintiff tried to use relevant and industry terms to best describe the chains of events, the standards and governance relative to this matter before the court. However, by no means did Plaintiff take lightly what the Court ordered Plaintiff streamlined his complaint. Plaintiff spent most of his time trying to fully grasp the nuisances of each cause of action and its requisites needed to make it a viable cause of action and for fear of leaving out an essential element there may have been some redundancy. Plaintiff respects that there are administrative requisites and did the best he could to adhere to them. Additionally, Plaintiff had a concern of being confronted with Defendants theory that Plaintiff failed to meet the Fed. R. Civ. P. 12(b)(6) standard Document #62 page 4 ¶2 by not providing enough facts, as Plaintiff could not find any information to make a baseline of what constitutes enough facts. Any errors and omissions were not done in malice or in contempt or disrespect to this Court and Plaintiff prays that if there are noted compliance issues that he be given the opportunity to correct them.

Plaintiff also looks to the courts for their expertise to draw reasonable inference(s) that the defendant(s) is liable for the misconduct(s) alleged. *Twombly, 550 U.S., at 556, 127 S.Ct. 1955*

IV. *Plaintiff again rejects the contention that his claims under 42 USC § 1981 are Time-barred by the Four-Year Statute of Limitations.*

Plaintiff contends that his claims under 42 USC 1981 and the underlying torts, as well as, 18 U.S.C. §1962(c) & (d) were timely filed on April 12, 2019.

**Plaintiff's 42 U.S.C. 1981 and RICO claims have four (4) year statute of limitations.**

Defendants grossly misstate the fact that Plaintiff only alleges claims for retaliation prior to his termination. [Dkt.#33 pg. 12 ¶2]. Plaintiff has repeatedly alleged that his due benefits and pay that he did not receive extended past his termination date and that it was not until after April 14, 2015 that he began to realize that something was going wrong with his employment and his benefits. And that it was not until April 28, 2015 that Plaintiff's claim for not being paid was fully ripe. And it was not until after August 5, 2015 that Plaintiff learned that he had been demoted while he was out on a medical leave of absence and that it was because of all the charges of discrimination that were filed that Lori Varvel was hired [Dkt. 1 pg. 61 ¶317]

Defendants highlight on several occasions that Plaintiff's termination date was a point of trigger for the statute of limitations to begin to run although, Defendants did not cite to an authority to support the contention that retaliatory acts post termination are not actionable [Dkt. #33 pg. 12 ¶2] (*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997); *See also Abdullahi v. Prada USA Corp.*, 520 F.3d 710, 712 (7th Cir. 2008). Defendants did not point to any authority to contradict the contention that: 1) cumulative or continuing violation doctrine does not apply to this matter *Turley v. Rednour*, 729 F.3d 645, 654 (7th Cir.2013) (Easterbrook, C.J., concurring) and; that The continuing violation doctrine has the effect of preserving discrimination claims based on incidents that occurred outside of the limitations period if those incidents were part of a larger discriminatory "practice" that continued into the limitations period. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). The doctrine protects victims of discrimination or of other wrongdoing who may not recognize violations as legally actionable until future incidents demonstrate a pattern. *See Dasgupta v. Univ. of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir.1997) ("A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because

its character as a violation did not become clear until it was repeated during the limitations period.") or; 2) "*a* series of wrongful acts [does or does not] create a series of claims"- *Heard v. Sheahan, 253 E3d 316,318 (7th Cir. 2001)* and/or; 3) that § 1981 does or does not "include the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). For Szplett among other things was his inability to enjoy of all his benefits, privileges, terms, and conditions of his contractual relationship.

Moreover, there is "the 'standard rule'" for limitations periods. *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U. S. 409, 418 (2005). Ordinarily, a "'limitations period commences when the plaintiff has a complete and present cause of action.'" *Ibid.* "[A] cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U. S. 192, 201 (1997). "And only after he has a complete and present cause of action does a limitations period ordinarily begin to run." Cf. *Mac's Shell Service, Inc. v. Shell Oil Products Co.*, 559 U. S. 175, 189– 190 (2010)

Plaintiff maintains that it was not until after April 28, 2015, when Defendants Kenco and Mars failed to pay Plaintiff his March salary[1]; 2) coupled with being made aware on April 14, 2015 that he was denied his disability benefits;[2] 3) Plaintiff also learned several days later that he had been intentionally mischaracterized by Defendant Kenco, as other than the HR Manager of

---

[1] Defendant Kenco and Mars had up to thirty (30) days after termination to pay Plaintiff any monies due. Plaintiff asserts that any claim would have been ripe prior to April 28, 2015. Additionally, Plaintiff was not notified until May 8, 2015 that he would not receive his March salary.

[2] Defendants Mars, Kenco and the Hartford were aware that Plaintiff was not released to return to work by his doctor. Also in pre-litigation during the relevant times Kenco and The Hartford have interchangeably been the plan administrator for Plaintiff's disability benefits. Plaintiff stopped receiving Short Term Disability on February 28, 2019 and it was more than a month before he was notified that his benefits were terminated. Plaintiff's doctor had not released him to return to work and had several weeks earlier estimated that he would be out six (6) to twelve (12) months.

the Mars Manteo facility in the matter of Edith McCurry v. Kenco et al. that Plaintiff realized that something was wrong.

These acts were beyond Plaintiff's termination date of March 29, 2015. It is "highly doubtful" that Congress intended a time limit on pursuing a claim to expire before the claim arose *Johnson v. United States*, 544 U. S. 295, 305 (2005).

After the culmination of these events, it occurred to him that he was being coerced, harassed, and retaliated against for refusing to help Defendants Kenco and Mars continue to violate the constitutionally protected rights of African Americans and other employees of the Mars Manteo facility as a term and condition to receive his severance pay-- a Quid Pro Quo.

This would have effectively made Plaintiff act in complicity with Defendants Mars, Kenco and their employee's and/or their agent's race-based stereotypes regarding African Americans. Even to the extent that Plaintiff would have had to perjury himself; conspire, aid and abet these Defendants and others in the continued violation of the protected rights of African American employees and those who opposed the discriminatory treatment of African Americans by avoiding culpability and liability.

Shortly thereafter in May of 2015, Plaintiff filed formal charges with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission[3]. Defendants filed a response to these charges on August 5, 2015 and it was at this time, for the very first time, that Szplett learned that he had been replaced and demoted because of all the charges of discrimination filed against them and that it was due to his failing leadership. Plaintiff then later learned sometime later in July 2018 that Defendants had actively begun looking for his replacement in September of 2014, prior to his medical leave of absence due to

---

[3] Plaintiff's pending claims with the EEOC are currently under review.

hostile work environment [Dkt. 1 pg. 325-353]. This information was concealed from Szplett and it had not discovered until well past Szplett's March 29, 2015 termination date.

As the years and months passed by and Plaintiff became privy to a number of quasi-judicial and judicial matters, Plaintiff had an opportunity to witness these and other named Defendants use Plaintiff, his role and title for their benefit to escape and avoid liability and culpability for the intentional discrimination of African Americans and those who opposed discriminatory treatment of African Americans. These Defendants were upper management to Corporate Suite Executives of Mars and Kenco.

Additionally, these Defendants acted willfully in concert with a reckless abandonment for public and company policies to create and sustain a hostile work environment charged with racial animus. These Defendants and others presented patently false and misleading information and documents to regulatory agencies, such as OSHA, EEOC, the IDHR, Administrative Law Judges, District Courts and the Seventh Circuit Appellate Court as late April 11, 2019. At times Defendants used the information as sword and at other times as a shield; and sometimes used the information as sword and a shield simultaneously to fit their immediate needs.

*V.     Plaintiff's claims in Counts XIII, XIV, and XVIII are not Time-Barred by the Applicable Statute of Limitations prescribed by Illinois Law.*

Defendant Mars mistakenly states that Plaintiff did not file charges against Mars at the IDHR and EEOC. Defendant Elliott on behalf of Kenco informed the IDHR and EEOC to the contrary. Plaintiff properly named Mars. Furthermore, this is not a Title VII case and there is no administrative prerequisite needed to bring a section 1981 claim.

Additionally, there is a Respondeat Superior relationship that existed between Mars, Kenco and their employees and agents. Consequently, because Kenco was an agent for Mars,

Kenco had an obligation to inform Mars of the impending litigation, but apparently chose not to. If Kenco failed to notify Mars or Kenco deterred the agency from pursuing Mars then those actions were at the hands of Mars' agent Kenco.

For argument sake, it seems unreasonable that Mars would be aware of all of charges of discrimination filed as stated by Defendant Jay Elliott and acknowledge in an email between Defendants Robert Coffey and Todd Moore of Mars and Defendant David Jabaley of Kenco and others that there was a desperate need for an HR Manager and underwrite this cost and not be aware that Plaintiff filed a charge of discrimination.

Even if Plaintiff had not named Defendant Mars, The exception, under *Eggleston v. Chi. Journeyman Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981), should be applied because Mars was still provided with adequate notice though its agent Defendant Kenco to have an opportunity to participate in conciliation proceedings.

With respect to count XVIII Defendants again make another misstatement that Plaintiff avers to the last cause of action being April 8, 2015. Plaintiff stated that the most recent cause of action came to Plaintiff's attention in July of 2018 and the standard rule on the statute of limitations does not ordinarily start to run until "only after he has a complete and present cause." Cf. *Mac's Shell Service, Inc. v. Shell Oil Products Co.*, 559 U. S. 175, 189– 190 (2010)

Additionally, Defendants recited the statutes most favorable to them but failed to address the statute relative to (735 ILCS 5/13-208) that states "If the defendant (the person who made the statement) was (or is) out of the state for any period of time beginning on the date the statement was made, the time of the defendant's absence won't be counted as part of the one-year filing period." Nor did Defendant provide any case law to refute that this statute was not applicable.

Plaintiff references and incorporates all responses previously made in his August 13, 2019 response to Defendants arguments in their motion to dismiss relative to Plaintiff's claims being time-barred by the Applicable Statute of Limitations prescribed by Illinois Law.

In addition, Defendants only raised issues of timeliness as its affirmative defense to Plaintiff's allegations and did not respond to Plaintiffs' allegations in its legal memoranda, and thus Plaintiff asserts that since his claims are not time-barred that Mars, Inc., its agents, and employees that include Kenco and their employees, Todd Moore and Robert Coffey remain Defendants to Plaintiffs' claims and that they have waived any future arguments. *See Steen v. Myers*, 486 F.3d 1017, 1020-21 (7th Cir. 2007) (absence of discussion in brief amounts to abandonment of argument).

Plaintiff also looks to the court for its expertise to draw reasonable inference(s) that the defendant(s) is liable for the misconduct(s) alleged. *Twombly, 550 U.S., at 556, 127 S.Ct. 1955*

**Wherefore,** Plaintiff prays to this Honorable court that Defendants MARS, INC., TODD MOORE, and ROBERT COFFEY'S MOTION TO DISMISS be denied and if there are any noted deficiencies in Plaintiff's case that Plaintiff be granted leave to amend his complaint to correct those deficiencies and it also be noted that Defendants have waived any future arguments.

Respectfully Submitted this 2nd Day of December 2019 by:

*Leonard Szplett* (signature)
Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com

## CERTIFICATE OF SERVICE

Please take notice that on December 2, 2019 I, Leonard A. Szplett, hereby do, certify that I did file a RESPONSE TO DEFENDANTS MARS, INC., TODD MOORE, and ROBERT COFFEY'S 12b(6) MOTION TO DISMISS with the NORTHERN DISTRICT OF ILLINOIS by U.S. Mail in the foregoing matter of Case No. 1:19 CV-02500 and have served the persons identified on the docket's service list through Notice of Electronic Filing generated by the Court's CM/ECF system through the Clerk's Office.

Respectfully Submitted this 2nd Day of December 2019 by:

*Leonard Szplett*
Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com