# UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS



LEONARD A. SZPLETT, an individual,

  PLAINTIFF,

VS.

KENCO LOGISTIC SERVICES, LLC, a TENNESSEE LIMITED LIABILITY COMPANY, MARS, INC., The HARTFORD, DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE SPIER, ROBERT COFFEY, TODD MOORE, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DWIGHT CRAWLEY, and KELVIN WALSH

  DEFENDANTS.

Case No. 1:19-cv-02500

Judge Gary Feinerman

Magistrate Judge Young B. Kim

PLAINTIFF'S RESPONSE TO DEFENDANT HARTFORD'S 12b(6) MOTION TO DISMISS

  **NOW COMES** Plaintiff, Leonard A. Szplett, Pro Se, in response to Defendants' Motion(s) to Dismiss and for his good cause shown in support of his response Plaintiff states the following; **THAT**:

  Szplett contends that Defendants the Hartford and Kenco have acted interchangeably during the relevant times prior to this litigation.

  For example, the Hartford sent a letter dated November 12, 2014 stating that they were the plan administrator for the Kenco Group for Plaintiff's disability claim. Throughout the

disability process the Hartford acted in that capacity. Plaintiff and Plaintiff's physician directly corresponded with the Hartford.

As a part of Plaintiff's employment contract with Defendants Kenco Mars, among other consideration outlined in the agreement, was a no cost short term disability benefit to the employees of the Mars Manteno facility. The employee handbook, written and electronic, stated that The Hartford managed the Life and Disability benefits for Defendants Kenco and Mars.

After a complaint has been filed, Defendant Hartford now contradicts itself by presenting information to the court alleging that Defendant Kenco is the plan administrator for the short term disability benefits.

At no time during Plaintiff's employment, did Plaintiff or any other employee receive any expansive or unabridged information electronically or in written form relative to the plan as required by law; or at any time during the relevant times did Plaintiff or any other employee receive any modifications and or amendments to the plan within the prescribed 90 day period. I.e. the benefit amount changed in years 2013, 2014, & 2015.

Plaintiff was the HR/Accounting Manager during the relevant times and would have been amongst the first to know of changes to employee benefits, as he was responsible for informing employee of such changes to their benefits.

It is not reasonable to conceive that both parties would be the plan administrator at the same time.

**Following the money**

In reviewing Plaintiff's financial records, Plaintiff does not have a 1099 from Defendant Hartford to support that the benefit was funded from the Hartford. The disability monies received were reflected on Plaintiff's W-2.

This leads Plaintiff to assert, that Defendants Kenco and Mars had at a minimum some influence, if not control over, how Plaintiff's disability was handled up to and including approval and denial of such benefits.

**Szplett contends that Hartford was an intricate part to the violations of §1981 enacted upon him by Defendants Mars and Kenco and their other employees and agents. Szplett asserts that a Respondeat Superior relationship exists between The Hartford and Kenco and Mars.**

Defendant Mars employed Kenco who in turn had a business relationship with the Hartford who provided and or managed benefits promised to Szplett through his contractual agreement with Kenco Mars. **[Dkt. 1 pg. 7]** Mars bore all the financial cost of operating the Mars Manteno of facility, including that of the employee compensation and benefits. Additionally, Mars paid Kenco a monthly management fee (salary).

Plaintiff asserts that the contractual agreement was breached and that the breach was a result of unlawful and impermissible acts rooted and grounded in race discrimination. Kenco suggests that the decision to terminate Plaintiff's benefits was The Hartford's.

Szplett's doctor had not released Szplett to return to work and had indicated that he was expected to be away from work six (6) to twelve (12) months. Defendant Kenco was aware that Plaintiff's: 1) doctor had not released him to return to work; 2) approximate and or expected return to work date and; 3) the nature of Plaintiff's illness. Neither plaintiff nor his doctor provided that information directly to Defendant Kenco or Mars.

Consequently, Plaintiff asserts that Defendant Kenco and Mars had access to that information or that the Hartford violated HIPPA- Health Insurance Portability and Accountability Act.

Additionally, Kenco and The Hartford during the relevant times have been identified as the Plan Administrator relative to the Short Term Disability herein after "STD" Benefits. **[Dkt. #28-3 pg. 2]** Kenco stated that the Hartford managed the benefits for Kenco.

The conduct of Defendant, The Hartford, suggests that they were the Plan Administrator; as the first point of contact for leave of absence was to be made with The Hartford. Additionally, the remaining correspondence related to Plaintiff's disability was disseminated from The Hartford to Plaintiff.

Plaintiff asserts and believes that The Hartford managed the STD benefits and took directives from Defendant Kenco.

Plaintiff also asserts and believes that Defendant Kenco was self-insured for the STD benefits, just as it was for its Medical and Workman's Compensation Benefits.

Consequently, Plaintiff believes that The Hartford acted in complicity whether knowing or unknowingly with Defendant Kenco and Mars in the violation of §1981 and his protected rights, when it failed to pay Szplett his due benefits.

Moreover, Defendant Kenco, according to Defendant Tammi Fowler, had a pattern and practice of hitting employees in their pocket to convey a punitive message of displeasure through psychological torment and economic sanctions. This pattern and practice was used at the Mars Manteno facility often.

The only persons subjugated to this were African Americans who complained of discrimination or those who opposed discrimination. These persons would include: 1) Nathan Doss-suspended for almost two (2) weeks without pay; 2) Dana Woods[1] for better than a week without pay; 3) Scott Marksteiner for more than a week and then indefinitely; 4) Morris Tyson

---

[1] Tammi Fowler reprimanded me for paying Dana Woods his PTO (Paid Time Off) while he was on suspension. Our practice had been to pay PTO to an employee when it was requested, as it was there accrued time/money. We had not been instructed otherwise.

for more than five (5) days; 5) Keith Elliott two (2) days; Edith McCurry without pay for almost three (3) weeks. Just to name a few in contrast to persons who had actually violated company policy, committed serious and more egregious offenses including attempted murder were not subjected to any discipline let alone these kinds of economic sanctions.

*The court of Burlington Northern and Santa Fe Railway Co. v. White, 126 S.Ct. 2405 (2006)-* held that withholding pay is a form of retaliation.

*The Burlington court went on to state at 73:*

> A reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former. That is to say, an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received back pay. Cf. *Mitchell,* 361 U. S., at 292 ("[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions").

At the time Defendant, The Hartford, issued its denial letter Plaintiff had already been without pay for more than 39 days--two (2) days past the time when the Court of Burlington stated that a many of reasonable employees would find a month without a paycheck to be a serious hardship *id.* 72 and by the time Plaintiff received the notice on April 14, 2015, now Plaintiff's forty-fifth (45th) day without pay and almost the last day(s) to sign off on Defendant Kenco and Mars severance agreement.

Plaintiff believes that it was calculated and orchestrated to coerce and induce him into agreeing to help Defendants Kenco and Mars and their agents and employees avoid liability and culpability by continuing to violate the constitutionally protected rights of African American employees and those who opposed the discrimination of African American employees. Plaintiff believes that this was the ultimate Quid Pro Quo, as Defendants Kenco and Mars knew that Plaintiff had been without money since February 28, 2015; which coincidentally was the

same time that Defendants presented Plaintiff with the severance pay agreement that would require him to assist them in HR matters related to litigation.

Without fail the termination of the offer for severance and the denial of benefits letter coincided. Plaintiff believes that this was not accidental or coincidental.

### *Elements of Fraud-*

Plaintiff asserts that a fraudulent and misleading job posting/description was sent to his doctor on his behalf alleging that Plaintiff performed these duties and tasks and as baseline for his physician to assess his functionality against.

Plaintiff can assert that it was either Defendant Kenco one it employees and or agents including The Hartford who forwarded this document to his physician. It would only stand to reason that it would have come from this pool, as it was from another Kenco managed site that was unrelated to the Mars Manteno facility and no other Defendant or person would have had access to this documentation.

Furthermore, this is one of the specific reasons that Plaintiff cited to the codified standards of the Food Safety and Modernization Act. This act offers a comprehensive system of the mandated quality management scheme ISO 9001[2] that requires it to be a documented and

---

[2] International Organization for Standardization-(ISO) 9001 is defined as the international standard that specifies requirements for a quality management system (QMS). Organizations use the standard to demonstrate the ability to consistently provide products and services that meet customer and regulatory requirements. The ISO 9001 scheme requires a quality policy and it is a written commitment from top management to all stakeholders relative to the standard of care to be exercised with regards to compliance to industry and food safety legislation. The quality policy is not a self-imposed policy or standard of care, but a requisite to compliance to food safety legislation. Therefore, the quality policy, the entire quality management system and the food safety management system establish the prerequisites and requisites for compliance to food safety legislation. Another requisite of the system is that the system is validated, verified and continually improved. The system unequivocally, affirms that the written standards and maximums are adhered to as cited, as well as, documenting and logging any deviations from the written standards for continual improvement. This includes a Document requirement provision that addresses the control of documents and records. i.e. job descriptions-

audit complaint system, differing only slightly the FDA's medical device quality management system-Quality System Regulation (QSR) 21 CFR Part 820. This system requires that each positon at the regulated facility have a written and documented job description.

To date, Plaintiff is clear on exactly who sent and when; however, Plaintiff is clear that physician received it and returned it to, as her findings are referenced in several correspondences from the Hartford and Kenco.

Additionally, Plaintiff was not paid commensurate with the benefit amount that he was alleged to have been entitled to during the relevant times. Due the ambiguity in the roles of the Defendants it is hard to discern exactly who failed to pay Plaintiff correctly or rephrased as who defrauded Plaintiff out of his due monies and kept the money for their unjust enrichment.

Publicly traded companies such as Defendant Hartford are held to standards like Sarbanes Oxley. An undue enrichment of this kind for Defendant Hartford would mean an inaccuracy in their accounting and reporting with regards to their financial performance. This would have an impact on all stake holders, including their shareholders, the Securities Exchange Commission and the Internal Revenue Service amongst other stakeholders.

Plaintiff believes that discovery with unearth a number of these lingering and open ended questions, such as who did what and time that it occurred. Plaintiff also believes that it will also be able to assign the roles and responsibilities of Defendants Kenco, Mars and The Hartford and resolve any outstanding issues relative to each of their involvement in the administration of Plaintiff's STD benefits.

Moreover, Plaintiff asserts that it would not be prudent to dismiss The Hartford in the face of these unresolved issues and questions.

Plaintiff also looks to the courts for their expertise to draw reasonable inference(s) that the defendant(s) is liable for the misconduct(s) alleged. *Twombly, 550 U.S., at 556, 127 S.Ct. 1955*

Plaintiff also asks that leave be granted him to amend his complaint if there are any noted deficiencies by the court.

**Wherefore,** Plaintiff prays to this Honorable court that Defendant, The Hartford's motion to dismiss be denied and if there are any noted deficiencies in Plaintiff's case that Plaintiff be granted leave to amend his complaint to correct those deficiencies. And any arguments that Defendants failed to raise with Plaintiffs' claims are waived. *See Steen v. Myers, 486 F.3d 1017, 1020-21 (7th Cir. 2007)* (absence of discussion in brief amounts to abandonment of argument).

Respectfully Submitted this 2 Day of December 2019 by:

*Leonard Szplett*
Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com

## CERTIFICATE OF SERVICE

Please take notice that on December 2, 2019 I, Leonard A. Szplett, hereby do, certify that I did file a RESPONSE TO DEFENDANT HARTFORD 12b(6) MOTION TO DISMISS through the US Mail with the NORTHERN DISTRICT OF ILLINOIS in the foregoing matter of Case No. 1:19 CV-02500 and have served the persons identified on the docket's service list through Notice of Electronic Filing generated by the Court's CM/ECF system through the Clerk's Office.

Respectfully Submitted this 2 Day of December 2019 by:

*Leonard Szplett*

Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com