UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD A. SZPLETT, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 2500 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| KENCO LOGISTIC SERVICES, LLC, MARS, INC., THE HARTFORD, DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE SPIER, ROBERT COFFEY, TODD MOORE, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DAVID CRAWLEY, and KELVIN WALSH, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Leonard Szplett, proceeding *pro se*, filed this suit against Kenco Logistics Services, LLC and its employees Kelvin Walsh, Paula Hise, Tammi Fowler, David Jabaley, Mario Lopez, Michael (Mike) Manzello, David Caines, Trace Spier, Jay Elliott, and David (Dwight) Crawley ("Kenco Defendants"); Mars, Inc. and its employees Robert Coffey and Todd Moore ("Mars Defendants"); and Hartford Life and Accident Insurance Company. Doc. 1. Szplett sought and was given leave to file an amended complaint. Docs. 21-22. The court dismissed the amended complaint without prejudice under Civil Rule 8(a)(2) due to its length and disorganization. Doc. 52. Szplett filed a second amended complaint, Doc. 53, which Defendants move to dismiss for failure to state a claim under Rule 12(b)(6), Docs. 55, 58, 61. The motions are granted.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Szplett's briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Szplett as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

The operative complaint is difficult to parse. The relevant facts are set forth as best the court can understand them.

Mars employed Szplett from 2001 until his termination on, at the latest, March 29, 2015. *Id*. at ¶¶ 2-3, 31-36, 89, 124, 493, 604. Szplett was also employed by Kenco, the property manager for the Mars facility where he worked, from April 2013 until his March 29, 2015 termination. *Id*. at ¶¶ 2-3, 6-7. The individual defendants held officer or supervisory positions with either Mars or Kenco. *Id*. at ¶¶ 10-21. Hartford is the third-party administrator for Mars's and Kenco's employee benefits programs. *Id*. at ¶ 22.

Szplett observed during his employment that Mars and Kenco had discriminatory corporate cultures and employment practices. *Id*. at ¶¶ 53-77, 255-276, 303-351, 390-392, 547-560. Szplett complained to management about discrimination, assisted other employees with discrimination issues, and acted as a witness in legal matters. *Id*. at ¶¶ 88, 129-133. As a result, Szplett was subjected to retaliation, including uneven discipline, harsher scrutiny, unwarranted suspensions, reduced overtime opportunities, reductions in duties, disciplinary actions, public humiliation, and psychological warfare. *Id*. at ¶¶ 89, 134-135, 142-145.

The retaliation culminated with his termination, which was made effective March 29, 2015. *Id*. at ¶¶ 89, 604. In late February 2015, Szplett was told that he would be terminated and was given a severance offer under which he would receive his severance pay and March salary if he agreed to waive certain claims that he might have against Defendants. *Id*. at ¶¶ 111-112; 116; 282-283; 688-690. At that time, Szplett's short-term disability benefits were stopped. *Id*. at ¶ 111. It appears that all this occurred while Szplett was on medical leave. *Id*. at ¶¶ 127, 364, 629, 702-703; Doc. 67 at 8-9. Szplett ultimately did not receive his March salary or severance pay. Doc. 53 at ¶¶ 119, 226. The decision to deprive Szplett of his March salary and severance pay became final sometime in April 2015, when he failed to timely accept or deny the severance offer. *Id*. at ¶¶ 116, 690. Szplett received a letter around April 9, 2015 from Hartford stating that his disability benefits had been retroactively denied as of February 28, 2015. Doc. 67 at 9.

In late August 2015, several months after his termination, Szplett learned that he had been demoted while on medical leave. *Id*. at ¶¶ 95, 615, 702. He does not allege that the demotion had any impact on his pay or other terms and conditions of his employment.

As for Hartford, the complaint alleges only that it assisted Mars Defendants and Kenco Defendants in their allegedly discriminatory actions by denying Szplett his benefits. *Id*. at ¶ 78.

**Discussion**

The complaint attempts to state claims under 42 U.S.C. § 1981, *id*. at ¶¶ 150-399, 478-509 (Counts 1-9, 12); 18 U.S.C. § 1001, *id*. at ¶¶ 400-450 (Count 10); 18 U.S.C. §§ 1503, 1505, 1512, and 1621, *id*. at ¶¶ 451-477 (Count 11); 42 U.S.C. § 1985, *id*. at ¶¶ 478-509 (Count 12); and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *id*. at ¶¶ 654-781 (Count 21); and for defamation, *id*. at ¶¶ 510-528 (Count 13); negligence, *id*. at ¶¶ 529-541 (Count 14); breach of fiduciary duty, *id*. at ¶¶ 542-560 (Count 15); conspiracy to

commit breach of fiduciary duty, *id.* at ¶¶ 561-591 (Count 16); tortious interference with prospective economic advantage, *id.* at ¶¶ 592-605 (Count 17); intentional infliction of emotional distress, *id.* at ¶¶ 606-625 (Count 18); fraudulent concealment of adverse employment actions, *id.* at ¶¶ 626-637 (Count 19); and aiding and abetting, *id.* at ¶¶ 638-653 (Count 20).  Because Szplett and some of the individual defendants are Illinois citizens, *id.* at ¶¶ 1, 10, 19-21, the state law claims fall under the court's supplemental jurisdiction, 28 U.S.C. § 1367(a), not under the diversity jurisdiction, 28 U.S.C. § 1332(a).

**I.      Claims with a One- or Two-Year Statute of Limitations**

The last allegedly wrongful action identified in the complaint occurred in April 2015, Doc. 53 at ¶¶ 116, 691, and the latest point at which Szplett alleges he discovered relevant misconduct is August 2015, *id.* at ¶¶ 95, 615.  Szplett filed this suit on April 12, 2019.  Doc. 1.

Szplett's § 1985 (Count 12), defamation (Count 13), negligence (Count 14), and intentional infliction of emotional distress (Count 18) claims are subject to statutes of limitations of two years or less.  *See Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 923 (7th Cir. 2003) ("Illinois imposes a one-year statute of limitations on all defamation actions that begins to run when the defamatory statement was published."); *Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001) ("[I]n Illinois, a two-year statute of limitations applies to claims brought under §§ 1983 and 1985."); *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003) ("[T]he applicable statute of limitations for intentional infliction of emotional distress is two years, because the tort is a form of personal injury."); 735 ILCS 5/13-202 ("Actions for damages for an injury to the person … shall be commenced within 2 years next after the cause of action accrued … .").  The portion of the complaint addressing negligence, Doc. 53 at p. 90, refers to 735 ILCS 5/13-205, which provides for a longer statute of limitations, but that statute does not

4

govern negligence claims. *See* 735 ILCS 5/13-205 ("[A]ctions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued."). Because the wrongs alleged by Szplett occurred more than two years before he filed this suit, and because his tolling argument (addressed on the merits below) would extend the commencement of the limitations period to August 2015 at the latest, those claims are dismissed as time-barred.

## II. Claims for Which There Is No Private Right of Action

The complaint purports to bring claims (Counts 10-11) under several criminal statutes that do not confer a private right of action. *See GwanJun Kim v. Grand Valley State Univ.*, 2017 WL 8294004, at *1 (6th Cir. Dec. 22, 2017) ("18 U.S.C. § 1621 … does not create a private right of action."); *Lee v. U.S.A.I.D.*, 859 F.3d 74, 78 (D.C. Cir. 2017) ("18 U.S.C. § 1001 … does not create a private cause of action."); *Farzan v. Bridgewater Assocs., LP*, 699 F. App'x 57, 58 (2d Cir. 2017) ("[O]bstruction of justice is a criminal charge, not a private cause of action."); *Greenblatt v. Klein*, 634 F. App'x 66, 69 (3d Cir. 2015) ("[T]here is no private cause of action under 18 U.S.C. § 1001."); *Fuller v. Unknown Officials from the Justice Dep't Crime Div.*, 387 F. App'x 3, 4 (D.C. Cir. 2010) ("[T]here is no private cause of action for perjury, 18 U.S.C. § 1621 … ."); *Rowland v. Prudential Fin., Inc.*, 362 F. App'x 596, 596 (9th Cir. 2010) ("Dismissal of Rowland's claim[] brought under [18 U.S.C. § 1512] was proper because th[at] statute[] do[es] not provide a private right of action."); *Banks v. Kramer*, 2009 WL 5526780, at *1 (D.C. Cir. Dec. 30, 2009) ("Appellant alleges violations of 18 U.S.C. §§ 1001, 1503, 1505, 1621, and 241, but there is no private right of action under these criminal statutes."); *Andrews v.*

*Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) ("18 U.S.C. §§ … 1001 … and 1503 … are criminal statutes that do not provide for a private right of action and are thus not enforceable through a civil action."). Those claims accordingly are dismissed.

Szplett's fraudulent concealment claim (Count 19) purports to rest on a statute, 735 ILCS 5/13-215, that creates no cause of action. The statute instead provides a basis for extending the statute of limitations on certain claims where the defendant engaged in "affirmative acts or representations calculated to lull or induce a claimant into delaying filing of his or her claim, or to prevent a claimant from discovering a claim." *Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1009 (Ill. 2007). Because Szplett alleges only that Defendants did not tell him that he had been replaced, Doc. 53 at ¶¶ 628-630, the statute does not extend the limitations period for any of his claims. *See Orlak*, 885 N.E.2d at 1009 (holding that "[m]ere silence on the part of the defendant is insufficient" to justify applying section 13-215).

### III.     Fiduciary Duty, Tortious Interference, and Aiding and Abetting Claims

Szplett's breach of fiduciary duty claim (Count 15), conspiracy to commit breach of fiduciary duty claim (Count 16), a portion of the tortious interference with prospective economic advantage claim (Count 17), and aiding and abetting claim (Count 20) are dismissed on the merits. As to the fiduciary duty claim, Szplett does not plead any facts establishing that Mars, Kenco, or the individual defendants owed him a fiduciary duty, *see Patel v. Boghra*, 2008 WL 2477695, at *6 (N.D. Ill. June 18, 2008) ("An employer does not owe an employee a fiduciary duty simply because they have entered into an employer/employee relationship together.") (citing *Gross v. Univ. of Chi.*, 302 N.E.2d 444, 454 (Ill. App. 1973)), and the complaint alleges nothing suggesting that Hartford was implicated in any alleged breach of fiduciary duty. Because the breach of fiduciary duty claim fails, so too does the conspiracy claim. *See Anderson*

6

*v. Aon Corp.*, 2008 WL 4865574, at *7 (N.D. Ill. June 16, 2008) ("Under Illinois law, … a civil conspiracy claim cannot survive without a separate, predicate tort.") (citing *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994)).

Szplett appears to allege that his firing constituted tortious interference with his employment. But because he alleges that Mars and Kenco were his employers, Doc. 53 at ¶¶ 2-3, they cannot be liable for tortious interference with his employment. *See Ali v. Shaw*, 481 F.3d 942, 945 (7th Cir. 2007) ("[O]nly when the actions of a *third party* cause an employer to decide to fire an at-will employee, the third party might be liable in tort.") (emphasis added); *Trahanas v. Nw. Univ.*, 2017 WL 2880879, at *7 (N.D. Ill. July 6, 2017) ("Although a person can have a reasonable expectation in continuing their employment, the tortfeasor cannot be a supervisor or the employer—it must be a third party interfering with a relationship.").

The question is far more uncertain for Szplett's tortious interference claims against Lopez, Jabaley, Hise, Moore, Coffey, and Fowler. "An action for tortious interference cannot be maintained against a plaintiff's supervisor for actions undertaken in the supervisor's professional capacity and in furtherance of her duties unless the supervisor acted for the purpose of furthering her own interests or out of a desire to harm the plaintiff." *Thakkar v. Station Operators Inc.*, 697 F. Supp. 2d 908, 930 (N.D. Ill. 2010). Because the parties did not brief the issue, it is not clear whether Szplett has alleged that the individual defendants acted with the purpose or desire required to state a tortious interference claim. And because, as explained below, the court is dismissing all Szplett's federal claims, the court must decide whether to retain or relinquish its supplemental jurisdiction over this portion of Szplett's tortious interference claim. "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining [supplemental] state claims." *Williams v. Rodriguez*,

7

509 F.3d 392, 404 (7th Cir. 2007); *see also Dietchweiler ex rel. Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016).  That general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim[s] [are] to be decided." *Williams*, 509 F.3d at 404; *see also RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012).  Substantial judicial resources have not yet been committed to this claim, Illinois law provides Szplett one year to refile the claim in state court if its limitations period expired while the case was pending here, *see Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009) (citing 735 ILCS 5/13-217), and—by contrast to Szplett's other state law claims—it is not clearly apparent whether his tortious interference claim against the individual defendants should be dismissed.  Accordingly, the court relinquishes its supplemental jurisdiction over that portion of his tortious interference claim.

Szplett alleges not that Hartford tried to oust him from his job, but that it "interfered with [his] ability to receive … short term disability benefits."  Doc. 53 at ¶ 598.  Putting aside whether such conduct could serve as a basis for a tortious interference claim, Hartford rightly observes, Doc. 59 at 4-6—and Szplett does not dispute—that a tort claim based on the denial of disability benefits is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a).  *See Di Joseph v. Standard Ins. Co.*, 776 F. App'x 343, 347 (7th Cir. 2019) ("State-law civil claims involving employee retirement and welfare benefits (including disability insurance) governed by ERISA are completely preempted by ERISA, with only a few narrow exceptions.") (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)).

Szplett's aiding and abetting claim purports to rely on the Illinois statute governing legal malpractice, 735 ILCS 5/13-214.3.  That statute has no relationship to his claims, and Szplett

8

does not attempt to draw any connection. Indeed, "there is no tort of aiding and abetting under Illinois law." *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 452 (7th Cir. 1982). Rather, "aiding and abetting is a theory for holding the person who aids and abets" others in committing a tort "liable for the tort itself." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). Without any other actionable tort, aiding and abetting cannot serve as a theory of liability for any defendant.

## IV.     Section 1981 and RICO Claims

The statute of limitations for Szplett's § 1981 (Counts 1-9, 12) and RICO (Count 21) claims is four years. *See Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 891 (7th Cir. 2016) ("Section 1981 claims must be filed within four years of the alleged discriminatory act."); *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009) ("The statute of limitations for a civil RICO cause of action is a fairly generous four years. It begins to run when the plaintiffs discover, or should, if diligent, have discovered, that they had been injured by the defendants."). Because Szplett filed this case on April 12, 2019, more than four years after his March 29, 2015 termination, those claims can survive dismissal only if he (i) offers a basis for tolling the statute of limitations or (ii) points to post-termination conduct within the limitations period that provides a basis for liability. He makes no effort to do so in contesting Hartford's motion, and unsuccessfully attempts to do so in contesting Mars Defendants' and Kenco Defendants' motions.

Szplett offers no response to Hartford's argument that Counts 4-6 and 8-9 contain no allegations that implicate it. Doc. 59 at 8-9. Nor does Szplett respond to Hartford's argument that his benefits-related § 1981 claims (Counts 1-3) accrued when his benefits were terminated around April 9, 2015, and that those claims are therefore untimely. *Id.* at 4. He thereby forfeits

9

any response to those arguments, and thus those claims. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted); *see also Boogaard v NHL*, 891 F.3d 289, 294-96 (7th Cir. 2018) (affirming the district court's holding that the plaintiffs forfeited their claims by failing to respond to the defendant's argument under Rule 12(b)(6) that they failed to state a claim). Because Szplett's remaining claims are either not directed at Hartford or already disposed of above, the complaint states no claim against Hartford.

Szplett appears to assert two new grounds for liability in his brief opposing Hartford's motion: (1) that Hartford is liable under a respondeat superior theory for the actions of Mars Defendants and Kenco Defendants, Doc. 69 at 3-6; and (2) that Hartford engaged in fraud when an unspecified person—who may or may not have been associated with Hartford—forwarded an incorrect job description to his physician, causing his benefits to be denied, *id.* at 6-8. Respondeat superior is a doctrine by which an employer may "be vicariously liable for an employee's torts" when the torts are "committed within the scope of the employment." *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989). As Hartford rightly notes, Doc. 71 at 5, Szplett does not allege that Hartford employed any of the other defendants, which means that Hartford cannot be held liable on a respondeat superior theory.

10

Szplett's other new argument against Hartford rests on an allegation of fraudulent conduct, so it must "meet the heightened pleading requirements of Rule 9(b)." *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 589 (7th Cir. 2017). "Rule 9(b) requires the [plaintiff] to 'state with particularity the circumstances constituting fraud.'" *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting Fed. R. Civ. P. 9(b)). "That means that [the plaintiff] must specifically allege the who, what, when, where, and how of the fraud." *Ibid.* (internal quotation marks omitted). Because Szplett acknowledges he does not know "who sent [what] and when," Doc. 69 at 7, he cannot meet that requirement.

In opposing Kenco Defendants' motion, Szplett appears to argue that the statute of limitations should be tolled because, at the time he was fired, he was "under doctor's care for work related stress" and "his mental capacity was diminished" such that he could not "reasonably understand, contemplate and assimilate what was actually occurring to him." Doc. 67 at 8-9. Szplett does not make clear on what theory his condition would excuse his untimely filing, but the court construes it as an argument either to apply an exception to the discovery rule or to give him the benefit of equitable tolling. Neither argument persuades.

A limited "exception" to the discovery rule arises "where the very injury of which a plaintiff complains prevents him or her from being aware of that injury." *Barnhart v. United States*, 884 F.2d 295, 298 (7th Cir. 1989). Even assuming—quite generously—that Szplett's "work related stress" stemmed from the injuries alleged in this case, that stress did not "prevent" him from being aware of his injury. The standard for applying the exception turns on the plaintiff's "awareness or ability to comprehend" his injury, and has generally been applied in extraordinary cases involving comas or lobotomies. *Id.* at 298-99 (collecting cases). That is far afield from the condition Szplett alleges.

11

Nor does Szplett's condition provide a basis for equitable tolling. "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Knauf Insulation, Inc. v. S. Brands, Inc.*, 820 F.3d 904, 908 (7th Cir. 2016) (internal quotation marks omitted). Because "equitable tolling permits deferral of suit until the tolling event ceases and requires diligent action thereafter," Szplett's unexplained years-long delay in filing this suit bars his reliance on the doctrine. *Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 379 (7th Cir. 2010) (holding, where the plaintiff "waited more than four years after" the claimed tolling period ended, that the plaintiff had "been anything but diligent and cannot use equitable tolling to justify the untimely filing"). Nor does suffering from "work related stress," without further explanation, suggest that Szplett was "prevent[ed] … from managing his affairs and thus from understanding his legal rights and acting upon them," as required for equitable tolling. *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996).

Szplett also argues that he did not learn until August 2015 that he had been demoted at some point prior to his termination. Doc. 67 at 6, 10; Doc. 68 at 9. But Szplett does not allege that his pay, duties, or benefits were altered as a result of this alleged demotion, or that any tangible action whatsoever was taken as to his employment. It is not clear, therefore, how that "demotion" (or at least what Szplett refers to as a demotion) could give rise to any cause of action. Having failed to make any argument that the "demotion" is actionable, Szplett forfeits it as a basis for opposing dismissal. *See G & S Holdings LLC*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721; *see also Boogaard*, 891 F.3d at 294-96.

12

Szplett also alleges that around April 15, 2015, he learned that Kenco had mischaracterized his job title during another individual's administrative proceedings. Doc. 67 at 9; Doc. 53 at ¶¶ 636, 691. Szplett does not provide the date on which the mischaracterization occurred, and neither his complaint nor his briefs make clear whether he offers that mischaracterization as a basis for tolling the statute of limitations or as an injury that occurred within the limitations period. But that uncertainty is immaterial. Because Szplett does not allege any consequence stemming from the alleged mischaracterization, which apparently took place during the course of a different individual's administrative proceedings before the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, Doc. 53 at ¶¶ 636, 691, the mischaracterization cannot provide the basis for any claim, let alone one within the relevant statute of limitations.

In addition to arguing for tolling, Szplett appears to argue that three events occurring after his termination and within the limitations period provide grounds for liability: the denial of his disability benefits, his March pay, and his severance pay. Doc. 67 at 9. Szplett claims that he was denied disability benefits, at the latest, around April 9, 2015—outside the four-year limitations period, as he filed suit on April 12, 2019. *Ibid*. Szplett contends that, because he learned from his doctor weeks after his termination that he had not been released to return to work, he could not have brought his disability-related claims earlier because he did not know they were based on mistaken health information. *Ibid*. But Szplett's briefs do not explain how Kenco or Mars could be liable for *Hartford's* decision to deny his disability benefits.

As for being denied March pay and severance, Szplett admits that the denial was communicated to him in an ultimatum in February, when he was informed that he would not receive either unless he agreed to severance conditions that he ultimately did not accept. Doc. 53

13

at ¶¶ 111-112, 116, 283, 688. Even if those decisions took effect some weeks later, the statute of limitations began running when the adverse decision was communicated to him, not when he felt its effects. *See Librizzi v. Children's Mem'l Med. Ctr.*, 134 F.3d 1302, 1306 (7th Cir. 1998) ("Suppose the employer says: 'Your job ends 12 months from today; start looking for work.' Does the statute of limitations begin to run immediately, or does the claim accrue only when the paychecks stop? … [I]t begins on the date the employee learns about the adverse decision—when the federal law was (or was not) violated—rather than when the financial consequences of the decision are felt.").

Szplett also briefly appears to advance something like a continuing violation argument in his response to Mars Defendants' motion. Doc. 68 at 9-10. But even if such an argument theoretically could apply here, it would require some actionable event within the limitations period that was a continuation of the prior violations. *See Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 898 (7th Cir. 2015) ("Under the 'continuing violation' doctrine, a … plaintiff may recover for otherwise time-barred conduct that is part of a single, ongoing unlawful employment practice if at least one related act occurs during the limitations period."). The foregoing discussion establishes that no such event exists. Accordingly, Szplett's § 1981 claims are time-barred. And because he does not argue that his RICO claim rests on any distinct conduct within the limitations period, it is time-barred as well.

## Conclusion

Defendants' motions to dismiss are granted. The court relinquishes jurisdiction over Szplett's tortious interference with prospective business advantage claims against Lopez, Jabaley, Hise, Moore, Coffey, and Fowler. The dismissal of Szplett's other claims is with prejudice, as he already amended his complaint after the first dismissal and does not request

leave to further amend or suggest how another amendment might cure the defects identified by the present motions to dismiss. *See Haywood*, 887 F.3d at 335 ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in … dismissing a complaint with prejudice … when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint."). Judgment will be entered in favor of Defendants and against Szplett.

April 22, 2020                                      _____
                                                                  United States District Judge