RECEIVED
2020 MAY 20 PM 2: 13
U.S. DISTRICT COURT

**FILED**
5/20/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

LEONARD A. SZPLETT, an individual,

PLAINTIFF,

VS.

KENCO LOGISTIC SERVICES, LLC, a TENNESSEE LIMITED LIABILITY COMPANY, MARS, INC., The HARTFORD, DAVID JABALEY, MARIO LOPEZ, TAMMI FOWLER, PAULA HISE, TRACE SPIER, ROBERT COFFEY, TODD MOORE, JAY ELLIOTT, DAVID CAINES, MICHAEL MANZELLO, DWIGHT CRAWLEY, and KELVIN WALSH

DEFENDANTS

Case No. 1:19 CV-02500

Judge: Gary Feinerman

## PLAINTIFF'S MOTION TO RECONSIDER TO AMEND OR ALTER JUDGMENT

Pursuant to Federal Rule of Civil Procedure 59(e) Plaintiff brings this motion to alter or amend the judgment that was entered on April 22, 2020 by this Honorable Court to dismiss Plaintiff's claim(s) under Fed. R. Civ. P. 12(b)(6))

> Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). The Rule "allows a court to amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 852 (7th Cir. 2010) (internal quotation marks omitted); *see also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (defining a "manifest error" as the "wholesale disregard, misapplication, or failure to recognize controlling precedent."). *Knapp v. EVGEROS, INC.*, No. 15 C 754 (N.D. Ill. Aug. 21, 2017).

## STATUTES AND PRECEDENT

### 28 U.S.C. 1658(a)

On December 1, 1990, Congress enacted a new, catchall statute of limitations for federal actions. Federal Courts Study Committee Implementation Act of 1990, Pub. L. No. 101-650, Tit. III, § 313(a), 104 Stat. 5114. States that, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. 1658(a).

### 42 USC 1981

Section 1981 of Title 42 U.S.C., provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts * * * as is enjoyed by white citizens." 42 U.S.C. 1981(a).). The Civil Rights Act of 1991 (1991 Act), Pub. L. No. 102-166, § 101, 105 Stat. 1071 (42 U.S.C. 1981(b)); see § 3(4), 105 Stat. 1071 amended Section 1981 and prohibited discrimination with respect to "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." (Congress's objective was to "expand[] the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination"); *Rivers* v. *Roadway Express, Inc.*, 511 U.S. 298, 305-308 n.6 (1994).

A Section 1981 claim for racial discrimination relating to the terms or conditions of employment "arises under" the 1991 Act—and thus is subject to Section 1658(a)—under both the dictionary definition of "arise" and the term's common legal meaning.

### The Supreme Court of United States on the Accrual Date of Causes of Action

The discovery rule is implicit in the holding of *Ricks* that the statute of limitations began to run "at the time the tenure decision was made *and communicated* to the employee. *Delaware State College v. Ricks,* 449 U.S. 250, 258 (1980)

"[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action." (brackets and internal quotation marks omitted)). *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (quoting *Rawlings v. Ray,* 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941)), that is, when "the plaintiff can file suit and obtain relief," *Bay Area Laundry, supra,* at 201, 118 S.Ct. 542.

"[A] cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.") *Nasim v. Warden, Maryland House of Correction*, 516 U.S. 1177, 116 S. Ct. 1273, 134 L. Ed. 2d 219 (Supreme Court 1996).

**Seventh Circuit Precedent on the Date of Accrual on Causes of Action**

> Following the guidance of the Supreme Court in both *Urie,* 337 U.S. at 170, 69 S.Ct. at 1024-25, and *Kubrick,* 444 U.S. at 120-21 n. 7, 100 S.Ct. at 358-59 n. 7, this circuit adopted the rule that a cause of action accrues for statute of limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause. ***Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990)** citing *Nemmers v. United States, 795 F.2d 628, 629 (7th Cir.1986); Lancaster v. Norfolk and Western Ry. Co., 773 F.2d 807, 820-21 (7th Cir.1985), cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987); *Drazan v. United States, 762 F.2d 56, 59 (7th Cir.1985); Stoleson v. United States, 629 F.2d 1265, 1268 (7th Cir.1980).*
>
> The Seventh Circuit has ined accrual as "the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date — often the same, but sometimes later — on which the plaintiff discovers that he has been injured. The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the "discovery rule" of federal common law, which is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law) in the absence of a contrary directive from Congress. ***Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990) at 450 citing** *Suslick v. Rothschild Securities Corp., 741*

F.2d 1000, 1004 (7th Cir.1984), overruled on other grounds in *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385 (7th Cir.1990); *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir.1988); *Cullen v. Margiotta,* 811 F.2d 698, 725 (2d Cir.1987); *Nichols v. Hughes,* 721 F.2d 657, 659 (9th Cir.1983); *Trotter v. International Longshoremen's & Warehousemen's Union,* 704 F.2d 1141, 1143 (9th Cir.1983) (per curiam).

### The Seventh Circuit on Accrual Dates With Respect to Civil Rights Claims

The accrual date of a civil rights cause of action i.e. §1981, §1983, & §1985 is a question of federal law that is *not* resolved by reference to state law." *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006); *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). Certain aspects of section civil rights claims, including accrual dates, are "governed by federal rules conforming in general to common-law tort principles." *Id.* Under those common-law tort principles, claims accrue when a plaintiff has a complete and present cause of action. *Id.*; citing *McDonough v. Smith*, 139 S. Ct. 2149 at 2155 (2019). **Savory v. Cannon, 947 F.3d 409 (7th Cir. 2020).**

### Seventh Circuit on Stare Decisis

We (the Seventh Circuit) do not take lightly suggestions to overrule circuit precedent. As the Supreme Court has stated, "no judicial system could do society's work if it eyed each issue afresh in every case that raised it." *Planned Parenthood v. Casey,* ___ U.S. ___, ___, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992) (plurality opinion). This practical necessity is the reason that "the doctrine of *stare decisis* is of fundamental importance to the rule of law"; it "promotes stability, predictability, and respect for judicial authority." *Hilton v. South Carolina Pub. R.R. Comm'n,* 502 U.S. 197, ___, 112 S.Ct. 560, 563-64, 116 L.Ed.2d 560 (1991) (citations omitted). Indeed, "a respect for precedent is, by definition, indispensable" to the rule of law. *Casey,* ___ U.S. at ___, 112 S.Ct. at 2808. We therefore shall not disturb precedent absent "special justification." *Arizona v. Rumsey,* 467 U.S. 203, 212, 104 S.Ct. 2305, 2310-11, 81 L.Ed.2d 164 (1984); *see also Hilton,* 502 U.S. at ___, 112 S.Ct. at 564 (stating that "we will not depart from the doctrine of *stare decisis* without some compelling justification"). **Chicago Truck Drivers Union Pension v. Steinberg, 32 F.3d 269 at 272 (7th Cir. 1994).**

**The Seventh Circuit further says**:

> The Supreme Court has stated that "there is a strong presumption of continued validity that adheres in the judicial interpretation of a statute." *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 424, 106 S.Ct. 1922, 1930-31, 90 L.Ed.2d 413 (1986); *see also Illinois Brick Co. v. Illinois,* 431 U.S. 720, 736, 97 S.Ct. 2061, 2069-70, 52 L.Ed.2d 707 (1977) (stating that "considerations of *stare decisis* weigh heavily in the area of statutory construction"). Indeed,

>> the burden borne by the party advocating abandonment of an established precedent is greater where the Court is asked to overrule a point of statutory construction. Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done.

> *Patterson v. McLean Credit Union,* 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989); *see also Hilton,* 502 U.S. at ____, 112 S.Ct. at 564 (same); *Holder v. Hall,* ___ U.S. ___, ___, 114 S.Ct. 2581, 2629, 129 L.Ed.2d 687 (1994) (separate opinion of Stevens, J.) (noting "the well-established principle that *stare decisis* has special force in the statutory arena") *Id.*

**Critical Dates and Facts**

The management driven hostile and animus work environment began in July of 2013. (DE[1] #54 ¶'s 50, 127,154 & 156) From July of 2013 onward, Plaintiff was forced and expected to participate in a contrived disciplinary actions and terminations of numerous African American employees, where company and public policy were not followed.  This expectation for Plaintiff to act in complicity with his employer and its agents (DE# 53 ¶ 42) in their various schemes to violate person's civil rights has gone as far as April 11, 2019, post his employment. (DE# 53 ¶ 55) Despite Plaintiff's rejection and unwillingness to participate in such schemes and violate the law, Defendant Kenco on behalf their employer Defendant Mars and their various employees, (DE# 53 ¶ 42) used Plaintiff to further their schemes to violate aggrieved former employees protected rights, when it

---

[1] DE will be constituted as the abbreviation for Docket Entry in this matter henceforth.

identified Plaintiff as the HR Manager to the Southern District of Illinois and Appellate court on

June 21, 2018 and on April 11, 2019 respectively. (DE# 53 ¶ 436)  This position is in stark contrast

to these same Defendants' position regarding Plaintiff not being the HR Manager in the

administrative proceedings before the EEOC[2].  After due diligence, Plaintiff filed a complaint with

the IDHR and EEOC in May of 2015.

What prompted Plaintiff to file his May 2015, complaint with the IDHR and EEOC was a

sequence of events that occurred to Plaintiff post-employment. 1) Plaintiff did not receive his March

compensation (DE# 53 ¶ 82) and 2) on April 15, 2015 it was communicated to Plaintiff, by mail, in a

letter dated April 8, 2015, that his short term disability had been denied retroactive to February 28,

2015. (DE# 53 ¶ 116) Plaintiff also learned in mid-April of 2015 that Defendants Kenco on behalf of

our employer Defendant Mars and their other agents and employees had begun mischaracterizing

Plaintiff as other than the HR Manager.  (DE# 53 ¶ 636)

### *Plaintiff did not receive his March compensation*

Under the WARN (Workers Adjustment and Retraining Notification) Act Plaintiff was due some

form of compensation for the month of March, whether it was his regular salary or his disability

benefit.  (DE# 53 ¶'s 89, 119-120, 359, 408-410) Defendants' undated February 2015 letter stated

that Plaintiff was entitled to his March salary. Plaintiff expected and relied on his March

compensation.  However, Plaintiff never received any compensation for the month of March 2015.

Plaintiff's employer(s) foreclosed Plaintiff's opportunity to have received unemployment by

notifying him after the fact that he was not entitled to any form of his March compensation.  March

29, 2015 was Plaintiff's termination date.  Plaintiff's employer(s) technically had thirty (30) days to

remit to him any monies due him; the last day to do so would have been April 29, 2015.

---

[2] Plaintiff asks the Court to take judicial notice of these inconsistent positions taken by Defendant(s) relative to Plaintiff.

Consequently, April 30, 2015, would have been the first day that Plaintiff had a right to legal action, as well as, complete and present understanding that he was not being paid March compensation.

### *Severance*

Defendants' undated February 2015 letter also made mention that Plaintiff was being offered severance and he had forty-five (45) days to review the separate enclosed severance agreement. (DE# 53 ¶ 111) Plaintiff's health precluded him from immediately reviewing or having the document reviewed. However, as Plaintiff improved, Plaintiff sought legal counsel to review the severance agreement in early April. After the document review, it was then that Plaintiff learned that he would have to waive his rights to any legal actions against his employer and that he would also have to help Defendants with their impending HR litigation to receive his severance. Plaintiff understood that as the former HR/Accounting Manager that severance's typically accompanied a waiver of some sort and that is position as the HR/Accounting Manager involved HR matters and the litigation of such. However, it was not until much later that Plaintiff had full and complete understanding of what that document meant.

Severance was not offered to all the employees at the Mars Manteno facility during the relevant time. Severance did not encompass March's compensation and was additional for those it was offered to. The severance pay was mutually exclusive of the March compensation.

### *Compensation Inquiries*

In April of 2015, Plaintiff began inquiring about his March compensation. Plaintiff understood that he could not collect compensation from his employer in two (2) forms. i.e. regular pay or disability benefits. Plaintiff's first demand for his March compensation was rejected in May of 2015 and his second demand was rejected in June of 2015. It was at that time that Plaintiff learned that he was not paid for the month of March because he did not work. (DE# 53 ¶ 696) No one under Kenco's management worked at the Mars Manteno facility in March of 2015. (DE# 53 ¶ 409) Those

persons who were not hired to continue employment at the Mars Manteno facility were given compensation for March. This would include Harold Bell, Anthony Marquez, Russell Schpitts, Valerie Lilly and others.

After Plaintiff's second rejection for March's compensation occurred in June 2015, Plaintiff filed a wage claim with the Illinois Department of Labor for his March compensation under the WARN Act wage claim #15-001523. (DE#53 ¶'s 439 & 698) It was at this point that Plaintiff definitely knew that he had been adversely affected by Defendants post-employment decisions.

### *Discovery of adverse employment actions*

From Plaintiff's due diligence in filing his May 2015 compliant with the IDHR and EEOC, Plaintiff learned **in August of 2015**, and *only then,* that Plaintiff had been demoted from his position of HR Manager, while out on medical leave of absence. (DE#53 ¶'s 95, 129, 568, 615 & 699) He also learned that his employer accused him of being responsible for all the charges of discrimination that were filed against them. (DE #53 ¶ 699) Plaintiff contends that these were adverse employment decisions and that Defendants have actively concealed the wrong(s) perpetrated against Plaintiff until well after his termination, until he was informed of such in August of 2015. (DE# 53 ¶ 96, pg. 106 & DE# 67 pg. 10) Defendants active concealment would include information provided to the IDHR and EEOC though 2016 up to and including 2019, when Defendant Kenco motioned this court to disregard information given to other judicial forums and other courts by them referencing Plaintiff.

In late August of 2015, Plaintiff came to the realization that he had been aggrieved, as well as, of the implications of the severance agreement its timing and the timing of the denial of his compensation and benefits due and owing to him that led him to believe that Defendants Kenco, Mars and their agents had contrived a scheme to coerce Plaintiff into cooperating with their schemes to continue to violate his and other former employees protected rights and obstruct justice. Plaintiff

realized that he was being "hit in the pocket[3]." Plaintiff subsequently learned that Defendants Kenco and Mars had been actively recruiting for his replacement month(s) prior to his medical leave. He also learned that he was paid less than his replacement. His replacement had less duties and responsibilities; performed less work and; was less qualified to perform the work than he. (DE# 53 ¶ 365) Plaintiff also learned that they represented to the IDHR and EEOC that his replacement Lori Varvel was an HR Manager, when in fact they hired her as a HR Generalist, which in fact is not the equivalent of an HR Manager. (DE# 53 ¶'s 366 & 419) It was at this time that Plaintiff understood that he had been engaged in a conspiracy and a *quid pro quo* for his benefits and compensation due and owing to him. (DE# 53 ¶'s 287, 481, 495 & 710)

Plaintiff also subsequently learned in 2018, as the litigation went on with other former employees, that Defendant(s) and or their agents and or employees had made other amatory statements to governmental agencies regarding Plaintiff, as well as, under oath as recently as 2017.

Plaintiff also points out that Defendants' did not point to: 1) a specific day and time that Plaintiff should have known that he was aggrieved; 2) having informed Plaintiff at any time prior to August 2015 that he was or had been replaced as the HR Manager; 3) postemployment adverse actions as not being actionable; 4) these adverse actions as not being part of a continuing violation of Plaintiff's rights or an extension of the hostile and animus work environment at the Mars Manteno facility.

Plaintiff also points out that he raised issues regarding fraud, fraudulent concealment, and equitable estoppel among other issues in his twenty plus count complaint. (DE #53)

---

[3] Tammi Fowler, Senior Manager of Employee Relations, told Plaintiff and his counterpart, in September of 2014, that they (the company) used the tactic of "hitting them (employees) in the pocket" as a means of economic sanctions to bring conformity to the company's culture. DE #53 ¶'s 205, 209, 211, 288, & 289

Plaintiff has also stated that is claims before the EEOC are still pending and that he was hopeful to have the matter resolved prior to the expiration of his rights under §1961, §1962 and§ 1981 that he could file them together. However, that was not the case. (DE# 74)

## STANDARD

When a Defendant charges noncompliance with the statute of limitations, "[d]ismissal under Rule 12(b)(6) [is] irregular, for the statute of limitations is an affirmative defense." *United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir.2004). "Complaints need not anticipate and attempt to plead around defenses," *id, CHICAGO BLDG. DESIGN v. Mongolian House, Inc.*, 770 F.3d 610 at 613 7th Cir. 2014).

> To warrant dismissal on limitations grounds under Rule 12(b)(6), "the plaintiff must affirmatively plead himself out of court; the complaint must `plainly reveal [] that [the] action is untimely under the governing statute of limitations.'" *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.,* 770 F.3d 610, 614 (7th Cir. 2014) (alterations in original) (quoting *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005)); *see also Savory v. Cannon,* 2017 WL 5971999, at *1 (N.D. Ill. Dec. 1, 2017) (citing additional cases); *Arce v. Chi. Transit Auth.,* 2015 WL 3504860, at *8 (N.D. Ill. June 2, 2015).... In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC,* 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Cook County's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.,* 714 F.3d 1017, 1019-20 (7th Cir. 2013). *County of Cook, Illinois v. Wells Fargo & Co., 314 F. Supp. 3d 975 2 995 (N.D. Ill. 2018).*

## SUMMARY OF THE ARGUMENT

Plaintiff is hopeful that this court will follow precedent and the "judicial tradition" that strongly affirms that a court in a civil case should be able to correct a mistake in response to a timely motion for reconsideration, thereby avoiding an unnecessary appeal." *United States v. Dieter*, 429 U.S. 6, 8 (1976). Plaintiff is using this tool to reargue previously articulated positions to correct error(s) made in the interpretation of critical dates and facts that led to his discovery of the irreparable harms caused to Plaintiff by Defendants that triggered when the statute of limitations began to run.

## ARGUMENT

Plaintiff believes that Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank* v. *Germain*, 503 U.S. 249, 254 (1992). Plaintiff also believes that, the Court "give[s] the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams* v. *Taylor*, 529 U.S. 420, 431 (2000) (internal quotation marks omitted). And last, when a "statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' " *United States* v. *Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); accord *Barnhart* v. *Sigmon Coal Co.*, 534 U.S. 438, 450 (2002).

Consequently, based upon the statute enacted by Congress- statute **28 U.S.C. 1658(a)** that defines the statute of limitations as **four (4) years** for relevant statutes and interpreting it in its literal and plain language, Plaintiff believes that the a **four (4) year** statute of limitations exists for applicable statutes. Plaintiff also believes that a Section 1981 claim for racial discrimination relating to the terms or conditions of employment "arises under" the 1991 Act—and thus is subject to Section 1658(a)—Plaintiff also believes that § 1961 & §1962 are also subject to Section 1658(a).

Plaintiff also believes that accrual dates, are "governed by federal rules conforming in general to common-law tort principles." Under those common-law tort principles, claims accrue when a plaintiff has a complete and present cause of action. *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) citing *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006); *Wallace v. Kato*, 549 U.S. 384, 388 (2007) and *McDonough v. Smith*, 139 S. Ct. 2149 at 2155 (2019). Based upon that contention Plaintiff believes that it was in August of 2015 that he had a complete and present cause of action.

Plaintiff has repeatedly asserted that the first inkling that something was going awry was on April 15, 2015, (DE# 53 ¶'s 116 & 691) when it was communicated to him, by mail, by the Hartford, in a letter dated April 8, 2015 (DE#48 footnote 1) [4]that his disability had been terminated retroactive to February 28, 2015. When Plaintiff was able to get the next available appointment with this doctor, a few weeks later, Plaintiff confirmed that he had indeed not been released by his doctor to return to work. Plaintiff realized that an adverse decision had been made contrary to his doctor's orders absent any evidence medical or otherwise to support this decision.

Plaintiff has repeatedly asserted that Defendants Kenco and Mars failed to pay him his March compensation. (DE#53 ¶'s 82, 89, 172 & 226) The last day to lawfully have paid Plaintiff was April 29, 2015. By not paying Plaintiff by that day, Defendants made an adverse decision by actively violating the WARN Act and treating Plaintiff differently than it had its other employees who were paid their March compensation. i.e. Anthony Marquez, Russell Schpitts, Harold Bell and others.[5] (DE# 53 ¶ 408-410)

Plaintiff has repeatedly stated that he did not learn of his demotion from his position as HR/Accounting Manager until August of 2015, (DE#53 ¶'s 95, 129, 568, 615 & 699) when it was

---

[4] Plaintiff verified the envelope as has only having a postage meter mark of April, 9, 2015 and no evidence of a US Post mark. DE #67 pr. 9
[5] These were persons who had not engaged in protected activity.

stated by Defendant Kenco[6], in a verified position statement to the IDHR and EEOC, dated August 5, 2015, that Plaintiff was replaced because of all the cases of discrimination filed against them and that "we" decided to hire Lori Varvel because of his failed leadership. (DE# 53 ¶ 93 & 140) Plaintiff has intimated and asserted that he did not know he was aggrieved until August of 2015 and that Defendants had concealed this information from him. (DE# 53 ¶ 96 & pg. 106, DE# 67 pg. 10) It was at that time that he had a complete and present understanding of what was occurring and what had occurred to him. *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) Additionally, Plaintiff has mentioned that he did not learn of other persons who aggrieved him and comprised the "we" in deciding to hire his replacement Lori Varvel until 2018. (DE# 53 ¶ 140)

Plaintiff has repeatedly asserted that Defendants Kenco and the Hartford have acted interchangeably as the administrator. Correspondence, dating back as far as 2013, and as recent as 2015 issued from the Hartford stated that they were the administrator pre-litigation. Exhibit A Contrarily, now the Hartford states that Kenco is the administrator and supports this contention with an exhibit attached to its motion. (DE #28-3 pg. 28-29) The attached exhibit states that the administrator has sole authority and has no notice requirements. Ironically, these same refrains are cited in The Hartford's motion to dismiss...that they are and were solely responsible etc.… These two (2) dichotomies present a conflict and are further exacerbated by the fact Defendants Kenco and Mars were the payee's of Plaintiff's disability payments, just as they had been the payee's of Plaintiff's wages. (DE# 53¶ 43-44) This is reflected on Plaintiff's 2014 and 2015 W-2 forms. Furthermore, Plaintiff asserts that the interchangeableness of two (2) entities during the same relevant time and one entity being the payee causes a bias and a structural conflict in the handling of claims. As the former HR/Accounting Manager since 2001, Plaintiff had been responsible for

---

[6] At all times Defendant Kenco was acting on behalf of its employer Defendant Mars, Inc. and their agents and employees.

overseeing and the accounting of the Mars Manteno budget, which at times had been in excess of

$26 million dollars for the operational cost(s) alone. (DE#53 ¶ 31-32)

Consequently because of Plaintiff's job functions and duties, Plaintiff is extremely familiar with

every line item on the budget and what makes up that line item. (DE# 53¶ 43-44) Plaintiff

intricately knows the ebb and flow of the monies in and out of the Mars Manteno facility during the

relevant times and again rejects the assertion that his allegations are not correct with regards to the

Hartford and Kenco's interchangeableness. (DE# 53 ¶'s 101, 107, 169, & 427-429) & DE# 69

Exhibit A

Plaintiff apologizes to the Court for not having been sophisticated enough to anticipate the

nuances that were fatal to his federal causes of action being stricken and time barred, but is hopeful

that these explanations bring clarification and amended judgment in Plaintiff's favor.

**In summary,** Plaintiff contends that the first possible date that he could have known

something was going awry was April 15, 2015 and it was not until after a series of other incidents

occurred and Plaintiff's due diligent efforts culminating in August of 2015 that he had a complete

and present knowledge of what had and was occurring to him. *Fries v. Chicago & Northwestern*

*Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990) Furthermore, Plaintiff contends that Defendants

have not pointed to any evidence to contradict that Plaintiff should have known that he had been

aggrieved or case law to support their contention or contradict the discovery rule applicability or the

federal rules that conform to the common-law-principles or that contradicts that postemployment

actions are not actionable (*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997); *See also Abdullahi v.*

*Prada USA Corp.,* 520 F.3d 710, 712 (7th Cir. 2008).  The Supreme Court has made clear that

retaliation can consist of actions outside the workplace, *see Burlington N. and Santa Fe Ry. Co.*

*v. White,* 548 U.S. 53, 63-64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Plaintiff agrees with the

holding of the Seventh Circuit that unsupported statements do not count in oral arguments or briefs. _Woolard v. Woolard,_ 547 F.3d 755 (7th Cir.2008) Additionally, Defendants have been silent to a number of the issues raised by Plaintiff.[7] Additionally, Plaintiff reincorporates his previous responses to the Defendants' 12(b)(6) motions to dismiss in DE#'s 67, 68 & 69.

Plaintiff also contends that he was aggrieved and suffered irreparable harms of economic losses, personal and professional standing, deprivation of civil rights, as well as, mental and physical harms.

Plaintiff also contends that the date of filing of his matter, April 12, 2019, squarely falls within the statute of limitations outlined in the plain language of **28 U.S.C. 1658(a)** and within the plain language of the Seventh Circuit Appellate Court and United States Supreme Court's definition of an accrual date in regards to his §1961, §1962, §1981 and other four (4) year statutory claims that are subject to **28 U.S.C. 1658(a)**.

**Wherefore** for the aforementioned reasons, Plaintiff prays that this Honorable Court reconsider its decision and amend its April 22, 2020 decision (DE# 80) with an order reinstating Plaintiff's matters that were stricken and reinstate Plaintiff's case before the court.

Respectfully Submitted this 20 Day of May 2020 by:

Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com

---

[7] Plaintiff requested in his response to Defendants' motion to dismiss that any arguments that they did not raise would be waived as future arguments.

## CERTIFICATE OF SERVICE

Please take notice that on May 20, 2020 I, Leonard A. Szplett, hereby do, certify

that I did file a <u>MOTION TO RECONSIDER TO AMEND OR ALTER JUDGMENT</u>

<u>PURSUANT TO RULE 59(e)</u> with the NORTHERN DISTRICT OF ILLINOIS in the

foregoing matter of Case No. 1:19 CV-02500 and have served the persons

identified on the docket's service list through Notice of Electronic Filing

generated by the Court's CM/ECF system through the Clerk's Office.

Leonard Szplett
3421 W. 1500 NW RD.
Kankakee, ILL 60901
815-212-3125
Stkbnd2000@aol.com

EXHIBIT A



**THE HARTFORD**

05/29/2013

Morris J Tyson
P.O. Box 291
Kankakee, IL 60901

Re: Leave ID 910513904547
Kenco

Dear Morris J Tyson:

We are writing to you in response to the request for leave that was submitted to The Hartford on 05/21/2013. The information in your file indicates that you needed to take leave beginning 05/21/2013 for Employee Health Condition.

The status of your request for leave is as follows:

| Plans | From | Through | Eligibility | Ineligible Reason |
|-------|------|---------|-------------|-------------------|
| Family Medical Leave Act | 05/21/2013 | 08/05/2013 | Eligible | |
| Short Term Disability | 05/21/2013 | 08/05/2013 | Pending Determination | |

*If the Eligibility field above displays "Eligible", please be aware that this term indicates you have met the minimum eligibility requirements for leave under the FMLA, state or local law leave(s) as noted. However a decision has not yet been made regarding the approval or denial of the absence itself.*

Once we obtain the necessary information from your health care provider to support your leave request, we will make a determination to approve or deny your request for Short-Term Disability (STD) benefits. If we determine that your STD benefits are payable, the leave plans for which you are eligible as indicated above will run concurrent with the STD approval period provided you have leave time remaining.

Based on the circumstances of your request for leave, the deadline for you to provide the requested information to The Hartford is 06/19/2013.

Kenco will receive a notice that advises them of your request for a leave of absence. You will need to keep in contact with your employer and The Hartford and notify both of us if the dates of your leave change, you need to extend your leave, or if there are any other changes to your leave status. You may be required to re-certify your leave as appropriate.

Please be advised that failure to provide the requested information to The Hartford may prevent us from making a decision regarding your request for leave. As a result, you may lose the protections afforded to you under any leave plans noted in the table above.

207746_910513904547_20130529_0045878513.pdf

Hartford Eligibility EE

03/2013

For specific details regarding your rights under the Family and Medical Leave Act (FMLA), please review the "Notice of FMLA Rights & Responsibilities," which is enclosed.

The Hartford will provide you with any further communications regarding the status of your STD claim under separate cover.

If you have any questions regarding this information, please contact The Hartford at TN **Monday through Friday from 8:00 a.m. to 8:00 p.m. Central Time.** Hearing impaired employees should use the state relay service.

Sincerely,

The Hartford
Hartford Comprehensive Employee Benefit Services Company and/or
Hartford Life and Accident Insurance Company
Administrator of the Kenco Employee Benefit Plan

The Hartford Leave Management
P.O Box 14285
Lexington, KY 40512-4285
Toll Free Fax: 877-588-4817

Notification CC:
Morris Tyson
Edith McCurry
NoContact@hartfordlife.com
Len Szplett
NoContact@hartfordlife.com
Suzanne.Moore@kencogroup.com

Enclosures:
No Enclosures



ILLINOIS DEPARTMENT OF
# Human Rights

JB Pritzker, Governor
James L. Bennett, Director


## MORRIS TYSON v. KENCO LOGISTIC SERVICES
## IDHR CHARGE NO.: 2015CA2692


Enclosed are true and correct copies of documents from the Illinois Department of Human Rights file, made and kept in the ordinary course of business, regarding the above-referenced charge filed with the Department.


KEISHA T. NELSON
FREEDOM OF INFORMATION OFFICER

*December 10, 2019*

DATE:


**SUBSCRIBED and SWORN to before me**

**This** *10* **day of** *December* **2019.**

_____
**NOTARY PUBLIC**

PATRICIA ALMARAZ
Official Seal
Notary Public – State of Illinois
My Commission Expires Sep 18, 2021


100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (217)785-5125, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr



**THE HARTFORD**

10/27/2014

Leonard A Szplett
3421 W. 1500 N. Rd
Kankakee, IL 60901

Re: Leave ID 345275058974
Kenco

Dear Leonard A Szplett:

We are writing to you in response to the request for leave that was submitted to The Hartford on 10/27/2014. The information in your file indicates that you needed to take leave beginning 10/22/2014 for Employee Health Condition.

The status of your request is as follows:

| Company Policy and/or State/ Federal Law | Leave Type | From | Through | Eligibility Status* | Ineligible Reason |
|---|---|---|---|---|---|
| Family Medical Leave Act | Continuous Leave | 10/22/2014 | 11/02/2014 | Eligible | |

*If the Eligibility field above displays "Eligible", please be aware that this term indicates you have met the minimum eligibility requirements for leave under the FMLA, state leaves, and/or company specific leave plans as noted. However a decision has not yet been made regarding the approval or denial of the absence itself.

Please have your health care provider complete the enclosed Certificate of Health Care Provider (CHCP) form to support your leave request. Once we receive the requested Certificate of Health Care Provider form, we will make a determination to approve or deny your request for leave. The deadline for you to provide the requested information to The Hartford is 11/17/2014. For your convenience, you or your health care provider's office can fax the form to us at 877-588-4817, or it can be mailed using the address listed at the end of this letter.

The Hartford may need to contact your health care provider if clarification of the completed CHCP form is needed. We will only contact your health care provider if you have given us permission to do so.

Kenco will receive a notice that advises them of your request for a leave of absence. You will need to keep in contact with your employer and The Hartford and notify both of us if the dates of your leave change, you need to extend your leave, or if there are any other changes to your leave status. You may be required to re-certify your leave as appropriate.

Please be advised that failure to provide the requested information to The Hartford may prevent us from making a decision regarding your request for leave. As a result, you may lose the protections afforded to you under any leave plans noted in the table above.

For specific details regarding your rights under the Family and Medical Leave Act (FMLA), please review the "Notice of FMLA Rights & Responsibilities," which is enclosed.

As part of your Hartford Disability and Leave program you are entitled to HealthChampion[SM] which is a service that offers unlimited access to Benefit Specialists and nurses for administrative support to address medical care and health insurance claims concerns. Service includes: guidance on health insurance claims and billing support, explanation of benefits, cost estimates/fee negotiation, information related to conditions and available treatments, and support to help prepare for medical visits. Best of all, you can access the GuidanceConsultants 24 hours a day, seven days a week via a toll-free line: 1-800-96-HELPS (1-800-964-3577). Administrative and clinical specialists may also refer employees to EstateGuidance, EAP services and other work-life resources.

If you have any questions regarding this information, please contact The Hartford at 800-863-5166, Monday through Friday from 8:00 a.m. to 8:00 p.m. Central Time. Hearing impaired employees should use the state relay service. For your convenience, you may visit us online at www.thehartfordatwork.com to report intermittent absences, request a new leave, and check your leave status and balance of time remaining for your leave.

Sincerely,

The Hartford
Hartford Comprehensive Employee Benefit Services Company and/or
Hartford Life and Accident Insurance Company
Administrator of the Kenco Employee Benefit Plan

The Hartford Leave Management
P.O Box 14285
Lexington, KY 40512-4285
Toll Free Fax: 877-588-4817

Enclosures:
Employee Rights and Responsibilities
CHCP Employee SHC

207746_345275058974_20141027_0000050797.pdf

Hartford Eligibility EE



**THE
HARTFORD**

## Kenco FMLA Rights & Responsibilities

**Your Responsibilities under the FMLA**

1. You will be required, if applicable, to furnish certification to support your leave request. If required, you must furnish certification by 11/17/2014, or request for leave may be denied.

2. While on leave, you may be required to furnish us with periodic reports of your status and intent to return to work. If the circumstances of your leave change and you are able to return to work earlier than the date indicated on the form, you are required to notify The Hartford two (2) days prior to the date you intend to report to work.

3. You may be required to furnish re-certification relating to a serious health condition as allowed in the FMLA regulations. (825.308).

4. You will be required to substitute paid sick time or vacation time for unpaid FMLA. Paid sick time or vacation time will run concurrent with your FMLA and will not extend the length of your FMLA. Your supervisor can verify the amount of sick or vacation time available.

5. Contact Suzanne Moore at 1-423-643-3415 to make arrangements to continue to make your share of the premium payments on your health insurance to maintain health benefits while you are on leave if required.

**Your Rights under the FMLA**

1. You have a right under the Kenco policy to 12 weeks of unpaid leave in a "rolling" 12-month period measured backward from the date of any FMLA leave usage for the reasons stated above.

   If you are requesting a future leave, your FML eligibility will also be checked again upon the first date that you are absent from work due to this leave reason. At that time, if you do not meet the minimum FMLA eligibility requirements, your leave request will be denied and an updated notification of the determination will be mailed to you. If you are eligible for leave upon the first absence reported, that absence will establish your FMLA eligibility leave year.

2. You have the right to up to 26 weeks of unpaid leave in a single 12-month period to care for a covered service member with a serious injury or illness. This single 12-month period will begin on the first day of your leave.

3. Employee health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work (825.209(a)). If you do not return to work following FMLA Leave for a reason other than: (1) the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA Leave; or (2) other circumstances beyond your control, you may be required to reimburse Kenco for your share of health insurance premiums paid on your behalf during your FMLA leave.

4. You must be reinstated to the same or an equivalent job with the same pay, benefits, and terms and conditions of employment on your return from leave.

5. Once we obtain the information from you specified above, we will inform you, within 5 business days, whether your leave will be designated as FMLA leave and count towards your FMLA leave entitlement.



**THE
HARTFORD**

01/27/2015

Edith Mccurry
6239 S. 13110 E. Rd
Pembroke Township, IL 60958

Re: Insured ID 9004534048
Re:  Leave ID 929338914060
Kenco

Dear Edith Mccurry:

Thank you for recently contacting The Hartford. This letter contains information regarding the approval of your
request for a Leave of Absence as well as your Short Term Disability Benefits (STD). Please review this letter
thoroughly as the approval dates and additional information needed may vary between Leave of Absence and
STD. Family and Medical Leave Act (FMLA), state leaves and/or company specific leaves may run
concurrently with an approved STD claim.

### Leave of Absence Information

The table below provides information regarding the approval status of your Leave of Absence under the Family
and Medical Leave Act (FMLA), state leaves, and/or company specific leave plans and STD. The approval
dates as well as the amount of time counted against your leave entitlement are noted in the table.

The determination of your request is as follows:

| Company Policy and/or State/ Federal Law | Leave Type | From | Through | Status | Denial Reason | Hours as of today* | | Hours as of the leave end date** | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Used | Remaining | Used | Remaining |
| Family Medical Leave Act | Continuous Leave | 01/05/2015 | 02/01/2015 | Approved | | 136 hour(s) / 3.4 week(s) | 344 hour(s) / 8.6 week(s) | 160 hour(s) / 4 week(s) | 320 hour(s) / 8 week(s) |
| Short Term Disability | Continuous Leave | 01/05/2015 | 02/01/2015 | Approved | | | | | |

*"Hours as of today" Used and Remaining include absence hours reported through the date of this letter. Please note that for any future
approved leaves, the time shown will reflect the amount of time used as of the leave start date. "Hours as of today" exclude absences
reported during leave exhaust, ineligible, denied, and suspend periods. This means hours remaining as of the leave end date are
available for approved leaves.

**"Hours as of the leave end date" Used and Remaining include hours for absences that have been requested (approved and pending
determination) as of the date of this letter. "Hours as of the leave end date" exclude absences reported during leave exhaust, ineligible,
denied, and suspend periods. This means hours remaining as of the leave end date are available for approved leaves.

**What you need to do:**
Communication requirements:

207746_929338914060_20150127_0000058460.pdf

**EXHIBIT**

6

Determination EE

07/2014 KENCO001482

Kenco will receive a notice that advises them of your request for a leave of absence. You will need to keep in contact with your employer and The Hartford and notify both of us if the dates of your leave change, you need to extend your time out of work, or if there are any other changes to your leave status.

Leave recertification:

You may be required to re-certify your leave as appropriate. If recertification is needed, we will send you an additional form for your health care provider to complete and return to our office to certify additional time away from work.

Return to Work Requirements:

Please note in order to be restored to employment, you will be required to provide a simple written statement from your health care provider to your employer indicating your fitness for duty.

What happens to your pay:

You will be required to substitute paid sick time or vacation time for unpaid FMLA. Paid sick time or vacation time will run concurrent with your FMLA and will not extend the length of your FMLA. Your supervisor can verify the amount of sick or vacation time available.

## Short Term Disability (STD) Information:

Based on review of the information submitted, your date of disability is 01/05/2015. After satisfying your plan's elimination period, your disability benefits begin on 01/19/2015 and have been approved through 02/01/2015.

Our records indicate you are eligible for 60% of your current weekly earnings, which is a gross benefit of $394.62 per week. Other income benefits such as State Disability, Workers' Compensation and Salary Continuance can impact your net benefit. Please refer to your employer's group plan for a complete listing of Other Income Benefits. Your payment will be sent separately.

If your disability extends beyond 02/01/2015, we will need an update from your healthcare provider ("provider"). To submit an update, your provider can call us directly or we can send a request to your provider on your behalf. Let us know if you need our assistance by calling our toll free number.

You also have the option to access medical update forms directly. To access forms, follow these instructions:
- Go to: https://www.thehartfordatwork.com/thaw/.
- Register as a new user or enter your secure user ID and password.
- Select Access Forms.
- Download and print an Attending Physician's Statement of Continued Disability.*
- Follow the contact information on the form to return the update to us once completed by your provider.

*Use the Attending Physician's Statement of Continued Disability for Mental Health if applicable.

For your STD the medical update should explain what prevents you from working, including but not limited to specific restrictions, limitations, exam findings, test results and your ongoing treatment plan. To avoid delays, please be aware that an *out of work* note generally does not provide enough detailed information to allow an extension of disability benefits.

Additionally, The Hartford has dedicated clinical resources to help employees return to work with accommodations while recovering from a disability. They can partner with you, your provider(s) and your employer to attempt to assist with a medically safe return to work plan. If at any time you feel capable of performing some of your job demands, please contact us.

For specific details regarding your rights under the Family and Medical Leave Act (FMLA), please review the "Kenco Notice of FMLA Rights & Responsibilities," which is enclosed.

As part of your Hartford Disability and Leave program you are entitled to **HealthChampion**[SM] which is a service that offers unlimited access to Benefit Specialists and nurses for administrative support to address medical care and health insurance claims concerns. Service includes: guidance on health insurance claims and billing support, explanation of benefits, cost estimates/fee negotiation, information related to conditions and available treatments, and support to help prepare for medical visits. Best of all, you can access the GuidanceConsultants 24 hours a day, seven days a week via a toll-free line: 1-800-96-HELPS (1-800-964-3577). Administrative and clinical specialists may also refer employees to EstateGuidance, EAP services and other work-life resources.

If you have any questions regarding this information, please contact The Hartford at 800-863-5166, Monday through Friday from 8:00 a.m. to 8:00 p.m. Central Time. Hearing impaired employees should use the state relay service. For your convenience, you may visit us online at www.thehartfordatwork.com to report intermittent absences, request a new leave, and check your leave status and balance of time remaining for your leave.


Sincerely,

The Hartford
Hartford Comprehensive Employee Benefit Services Company and/or
Hartford Life and Accident Insurance Company
Administrator of the Kenco Employee Benefit Plan


The Hartford Disability Claim Office
PO Box 14306
Lexington, KY 40512-4306

Enclosures:
No Enclosures